## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

THE WILLIAM POWELL COMPANY,

      Plaintiff,

v.

NATIONAL INDEMNITY COMPANY, et al.,

      Defendants.

Case No. 1:14-cv-00807

District Judge Susan J. Dlott

Magistrate Judge Karen L. Litkovitz

---

## PLAINTIFF THE WILLIAM POWELL COMPANY'S MOTION TO COMPEL AND FOR SANCTIONS

---

Plaintiff The William Powell Company ("Powell") moves for an order pursuant to Federal Rule of Civil Procedure Fed. R. Civ. P. 37(a) compelling defendant OneBeacon Insurance Company ("OneBeacon") to produce documents that it has refused to collect and produce, and that it has improperly withheld on privilege claims. Because the Court has already ordered OneBeacon to complete its document production and OneBeacon has failed to do so, Powell also moves for an order pursuant to Federal Rules of Civil Procedure 37(a) and (b) requiring OneBeacon to pay Powell's expenses incurred in obtaining the withheld discovery. A memorandum in support is attached.

Respectfully submitted,

/s/  *Daniel J. Buckley*

Daniel J. Buckley (0003772), *Trial Attorney*
Joseph M. Brunner (0085485)
Katie G. Barnes (0085257)
David F. Hine (0085568)
Vorys, Sater, Seymour and Pease LLP
301 East Fourth Street
Suite 3500, Great American Tower
Cincinnati, OH 45220
Tel:     (513) 723-4002
Fax:     (513) 852-7819
Email: djbuckley@vorys.com
         jmbrunner@vorys.com
         kgbarnes@vorys.com
         dfhine@vorys.com

*Counsel for Plaintiff The William Powell Company*

## TABLE OF CONTENTS AND SUMMARY OF THE ARGUMENT

TABLE OF AUTHORITIES ......................................................................................................... v

I.      PRELIMINARY STATEMENT ................................................................................. 1

II.     BACKGROUND .......................................................................................................... 2

        A.      Powell Serves Its Discovery Requests Nearly A Year Ago,
                Which OneBeacon Initially Ignores ............................................................... 2

        B.      While Powell Attempts To Work With OneBeacon, OneBeacon
                Delays And Misses Deadlines ......................................................................... 3

        C.      The Court Orders OneBeacon To Complete Its Document
                Production And Provide A Privilege Log, Which OneBeacon
                Does Not Do .................................................................................................... 5

        D.      The Court Develops A Plan To Work Through The Issues,
                Which OneBeacon Opposes And Resists Every Step Of The
                Way .................................................................................................................. 6

        E.      OneBeacon Again Fights The Court's Orders And Refuses To
                Engage In The Procedures The Court Envisioned ........................................... 8

        F.      Although The Telephone Depositions Revealed That
                OneBeacon's Document Collection Efforts Were Inadequate,
                OneBeacon Still Refused To Search And Collect From
                Additional Custodians ..................................................................................... 9

        G.      After Several Extensions, OneBeacon Provides A Sham
                Privilege Log ................................................................................................... 11

        H.      Powell Tries One More Time To Work With OneBeacon, Is
                Rebuffed, And Files This Motion ................................................................... 11

III.    LAW AND ARGUMENT ........................................................................................... 12

        A.      OneBeacon Has Failed To Produce Documents Responsive To
                Powell's RFPs And The Court Should Issue An Order
                Compelling Production .................................................................................... 12

                1.      Rule 37(a) authorizes the Court to issue an order
                        compelling discovery, and treats incomplete responses
                        as a failure to respond ........................................................................ 12

Rule 37(a)(1) permits parties to file a motion for an order compelling discovery, including production of documents. Evasive or incomplete document productions constitute a failure to respond under the Rule.

2.    Limiting responses to one custodian and specific claims
      ignores the Court's statements and the actual requests......................12

Powell issued its document requests nearly a year ago. OneBeacon has ignored, delayed, and resisted production ever since.

a.    Limiting the search to only Ms. Michaud was
      improper ...................................................................................13

When responding to Powell's document requests, OneBeacon searched and collected documents from a single custodian only. Affidavit and deposition testimony have established that OneBeacon's document production has omitted multiple categories of relevant documents and custodians, which constitutes a failure to produce under Rule 37(a). Powell is entitled to an order compelling production of additional documents.

b.    Limiting the search to documents involving
      specific asbestos cases was inappropriate ................................14

When collecting and producing documents, OneBeacon has only produced documents regarding the specific handling of individual asbestos claims and has withheld documents discussing and relating to Powell's account generally. This limitation is improper and is contrary to multiple statements from the Court to that effect. Powell is entitled to an order compelling production of documents discussing and relating to Powell's account generally.

c.    The discovery Powell seeks is proportional to the
      needs of the case........................................................................15

The recent proportionality amendments to Rule 26(b)(1) must be considered by all parties and the Court, *Wilmington Trust Co. v. AEP Generating Co.*, No. 2:13-cv-1213, 2016 U.S. Dist. LEXIS 28762, at *6-7 (S.D. Ohio Mar. 7, 2016), but the burden of proof remains with the objecting party, *Carr v. State Farm Mut. Auto Ins.*, 312 F.R.D. 459, 469 (N.D. Tex. 2015). The discovery Powell seeks is proportional to the needs of the case because the substantive and monetary issues at stake in the case are significant, the discovery is important and Powell has no access to it, and because comparison of the parties' resources weighs in Powell's favor.

3.    The unsupported privilege claims amount to a failure to
      respond....................................................................................18

a.    The log does not provide sufficient information to
      support the claimed privilege.....................................................18

Parties seeking to withhold relevant documents on claims of privilege must substantiate that claim with enough information to permit the reviewing court to judge the claim. *In re Search Warrant Executed at Law Offices of Stephen Garea*, No. 97-4112, 1999 U.S. App. LEXIS 3861, at *7 (6th Cir. Mar. 5, 1999); *Cooey v. Strickland*, 269 F.R.D. 643, 649 (S.D. Ohio 2010). Failure to properly assert the privilege can waive it. *Brown v. Tellermate Holdings, Ltd.*, No. 2:11-cv-1122, 2013 U.S. Dist. LEXIS 48278, at *9 (S.D. Ohio Apr. 3, 2013). OneBeacon has had several attempts to produce a satisfactory log, but still

OneBeacon's privilege log does not identify critical information such as authors and recipients and even the privilege being claimed, and does not describe the documents with sufficient detail. OneBeacon's failure to provide a sufficient log waives any privilege these documents may have had and the Court should order their production.

b.      OneBeacon has withheld documents that are not entitled to protection. ................................................................22

i.      OneBeacon has inappropriately withheld as privileged dozens of communications with third-parties..........................................................22

Privileged may be waived by voluntarily disclosing the information in question to a third party. *Futhey v. United Transp. Union Ins. Ass'n*, 2015 U.S. Dist. LEXIS 55335, at *4 (N.D. Ohio Apr. 28, 2015); *United States v. Suarez*, 2014 U.S. Dist. LEXIS 63687, at *16 (N.D. Ohio May 8, 2014). OneBeacon has withheld as privileged hundreds of communications with third parties such as other insurers, reinsurance entities, and IT suppliers. Privilege has been waived over these documents, and the Court should order their production.

ii.      OneBeacon has inappropriately withheld hundreds of documents that are discoverable pursuant to *Boone v. Vanliner Ins. Co.*, 91 Ohio St.3d 209 (Ohio 2001)...........................................................................24

In *Boone v. Vanliner* the Ohio Supreme Court determined that in bad faith cases the insured is entitled to discover claims file materials that predate denials of coverage, and the Sixth Circuit and this Court have consistently found that any document that predates the denial of coverage is discoverable. *In re Professionals Direct Ins. Co.*, 578 F.3d 432, 442 (6th Cir. 2009); *Decker v. Chubb Nat'l Ins. Co.*, No. 1:15-cv-88, 2015 U.S. Dist. LEXIS 139824 (S.D. Ohio Oct. 14, 2015). OneBeacon's privilege log contains hundreds of entries that predate the denial of coverage for the relevant underlying asbestos claim, and the Court should order their production.

4.      Powell is entitled to its reasonable expenses incurred in making this motion ...............................................................26

Rule 37(a)(5) requires a Court to order payment of expenses, including attorneys' fees, related to a granted motion to compel, unless the opposing party's conduct was substantially justified. There is no justification for OneBeacon's continued efforts to provide discovery, and Powell is entitled to its expenses and fees.

B.      OneBeacon Has Failed To Comply With The Court's August 2, 2016 Order Requiring A Complete Document Production, And Powell Should Be Awarded Its Costs And Fees Caused By That Failure ................................................................................26

1.      Under Rule 37(b) the Court can order payment of
        attorneys' fees and expenses for failure to comply with a
        court order ............................................................................................... 26

Rule 37(b)(2) empowers a court to punish failure to obey court orders to provide discovery, and requires the court to order payment of expenses and attorneys' fees caused by the failure unless it was substantially justified.

2.      OneBeacon's failure to comply with the Court's August
        2, 2016 Order has caused Powell to incur significant
        costs and expenses ................................................................................. 27

On August 2, 2016 the Court ordered OneBeacon to complete its document production by August 19th. There is no debate that OneBeacon failed to do so and continued to produce documents, even up to the present, that should have been searched for, collected, and produced by the August 19th deadline. As a result of OneBeacon's failure to follow the Court's Order, Powell has incurred expenses and fees associated with procuring affidavit and deposition testimony, appearing for court hearings, and filing this motion. Powell is entitled to an award of its expenses and fees caused by OneBeacon's failure.

III.    CONCLUSION .......................................................................................... 28

iv

# TABLE OF AUTHORITIES

## Cases

*Allard v. Figgie (In re Trans-Industries)*, Case No. 1:10-MC-101, 2011
   U.S. Dist. LEXIS 37911 (N.D. Ohio Mar. 28, 2011)......................................... 19

*Avis Rent A Car Sys., LLC v. City of Dayton, Case No. 3:12-cv-399,*
   *2013 U.S. Dist. LEXIS 100918 (S.D. Ohio. July 18, 2013*................................ 18, 21

*Banks v. Office of the Senate Sergeant-at-Arms & Doorkeeper*, 226
   F.R.D. 113 (D.D.C. 2005) ................................................................................. 19

*Boone v. Vanliner Ins. Co.*, 91 Ohio St. 3d 209 (Ohio 2001)................... 11, 22, 24, 25, 26

*Bratka v. Anheuser-Busch Co.*, 164 F.R.D. 448 (S.D. Ohio 1995)................................ 28

*Brown v. Tellermate Holdings, Ltd.*, Case No. 2:11-cv-1122, 2013 U.S.
   Dist. LEXIS 48278 (S.D. Ohio Apr. 3, 2013) .......................................... 19, 28

*Carr v. State Farm Mut. Auto Ins.*, 312 F.R.D. 459 (N.D. Tex. 2015) ........................ 16

*Chubb Custom Ins. Co. v. Grange Mut. Cas. Co.*, No. 2:07-cv-1285, 2012
   U.S. Dist. LEXIS 54305 (S.D. Ohio Apr. 17, 2012) ...................................... 25

*Cooey v. Strickland*, 269 F.R.D. 643 (S.D. Ohio 2010) ............................................ 18, 19

*Decker v. Chubb Nat'l Ins. Co.*, Case No. 1:15-cv-88, 2015 U.S. Dist.
   LEXIS 139824 (S.D. Ohio Oct. 14, 2015)........................................................ 25

*Falana v. Kent State Univ.*, 2012 U.S. Dist. LEXIS 173114 (N.D. Ohio
   Dec. 6, 2012)...................................................................................................... 24

*Futhey v. United Transp. Union Ins. Ass'n*, 2015 U.S. Dist. LEXIS
   55335 (N.D. Ohio Apr. 28, 2015) .................................................................... 23

*In re Professionals Direct Ins. Co.*, 578 F.3d 432 (6th Cir. 2009)............................. 25, 26

*In re Search Warrant Executed at Law Offices of Stephen Garea*, Case
   No. 97-4112, 1999 U.S. App. LEXIS 3861 (6th Cir. Mar. 5, 1999) ........................... 18

*In re Universal Services Fund Tel. Billing Practices Litig.*, 232 F.R.D.
   669 (D. Kan. 2005)............................................................................................ 19

*Little Hocking Water Ass'n v. E.I. du Pont de Nemours & Co.*, Case No.
   2:09-cv-1081, 2013 U.S. Dist. LEXIS 22213 (S.D. Ohio Feb. 19, 2013)................... 21

*Mayer v. Allstate Vehicle & Prop. Ins. Co.*, 2016 U.S. Dist. LEXIS
61881 (S.D. Ohio May 10, 2016)........................................................... 25

*National Union Fire Ins. Co., P.A. v. Midland Bancor*, 159 F.R.D. 562
(D. Kan. 1994)........................................................................................ 20

*Oracle America, Inc. v. Google, Inc.*, 2015 U.S. Dist. LEXIS 163956
(N.D. Cal. Dec. 3, 2015)......................................................................... 16

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14-CV-
4394, 2016 U.S. Dist. LEXIS 120131 (S.D.N.Y. Aug. 31, 2016)........... 16

*U.S. v. BDO Seidman, LLP*, 492 F.3d 806 (7th Cir. 2007)........................... 24

*U.S. v. Moss*, 9 F.3d 543 (6th Cir. 1993)..................................................... 23

*U.S. v. Suarez*, 2014 U.S. Dist. LEXIS 63687 (N.D. Ohio May 8, 2014)............. 23, 24

*Wilmington Trust Co. v. AEP Generating Co.*, No. 2:13-cv-1213, 2016
U.S. Dist. LEXIS 28762 (S.D. Ohio Mar. 7, 2016).................................. 16

**Statutes**

Fed. R. Civ. P. 26(b)(1).......................................................................... 15, 16

Fed. R. Civ. P. 26(b)(5)(A)...................................................................... 16, 18

Fed. R. Civ. P. 26(d)(2)................................................................................ 2

Fed. R. Civ. P. 37(a) ............................................................................... 1, 12

Fed. R. Civ. P. 37(a)(1)................................................................................ 12

Fed. R. Civ. P. 37(a)(3)(B).......................................................................... 12

Fed. R. Civ. P. 37(a)(4)................................................................................ 12

Fed. R. Civ. P. 37(a)(5)................................................................................ 26

Fed. R. Civ. P. 37(a)(5)(A).......................................................................... 26

Fed. R. Civ. P. 37(b) .................................................................................... 1

Fed. R. Civ. P. 37(b)(2)(A).......................................................................... 26

Fed. R. Civ. P. 37(b)(2)(C).......................................................................... 27

Fed. R. Civ. P. 8(a)(2).................................................................................. 6

Fed. R. Civ. P. advisory committee's note (2015 Amendment) ................................ 15, 16

S.D. Ohio Civ. R. 37.1 ........................................................................................................ 12

## MEMORANDUM IN SUPPORT

### I.   PRELIMINARY STATEMENT

Powell has worked to resolve this discovery dispute and obtain a complete document production from OneBeacon for nearly a year. The parties have conferred dozens of times. OneBeacon has agreed to numerous production dates that it later ignored the Court has held informal conferences for months, and ordered that production should have been accomplished over four months ago. Still OneBeacon has refused to search, collect, and produce multiple categories of documents from multiple custodians, has not produced documents and communications that concern the general administration and handling of Powell's account, and withholds documents from production on improper privilege claims. All of the materials requested are proportionate to the needs of the case.

In short, OneBeacon has violated a Court order, produced documents it knew Powell had, and misrepresents the existence of documents and emails. Its privilege log is unintelligible. It is no accident that the delays continue as the April expert disclosure deadline looms. The Court should order OneBeacon to produce the following documents:

1. emails Graham Loxley receives on a monthly basis containing financial data regarding Powell's account;

2. emails and agendas associated with quarterly meetings between Resolute employees and Graham Loxley;

3. emails among John Matosky, Graham Loxley, and Stuart McKay discussing Powell's account;

4. responsive, nonduplicative documents contained on Resolute's shared network spaces, including the Rapid system and the V drive, that have not been searched;

5. responsive, nonduplicative documents from custodians whose documents have not been searched (Clayton Budlong, Greg Gaines, David Gold, Peter Dinunzio, David Warren, Kevin Hannemann, Adrian Van);

6. communications and other documents concerning Powell's account generally that OneBeacon has withheld from production, including documents from

1

Darilyn Michaud, Tom Ryan, Brooke Green, and the custodians identified above; and

7. documents inappropriately withheld from production due to incomplete and specious privilege claims.

Because OneBeacon's failure to properly respond to Powell's discovery requests is unjustified, the Court should order OneBeacon to pay Powell's costs and fees associated with its lengthy and persistent efforts to obtain this discovery.

## II.  BACKGROUND

### A.  Powell Serves Its Discovery Requests Nearly A Year Ago, Which OneBeacon Initially Ignores

Powell served its First Set of Requests for Production ("RFPs") on February 18, 2016. (*See* Ex. A, Powell First Req. Prod.). Generally, Powell sought production of OneBeacon's internal and external email and other written communications regarding its administration and defense of the asbestos claims brought against Powell; as well as OneBeacon's applicable contractual agreements; policies and procedures for administering, defending against, and settling claims; and documents related to coverage decisions. Pursuant to Fed. R. Civ. P. 26(d)(2) Powell served its RFPs before the Rule 26(f) conference to give OneBeacon adequate time to collect and prepare its production.

The parties held the Rule 26(f) conference on February 25, 2016 (*see* Doc. 51), which set OneBeacon's response date as March 28, 2016. ***OneBeacon did not respond at all***— no documents, no written responses, and no request or motion for extension. Although the Court held the Preliminary Pretrial Conference on March 31, 2016 (*see* March 29, 2016 Minute Entry) and ordered the parties to proceed with discovery, ***still*** OneBeacon refused has to provide documents or written responses.

**B.    While Powell Attempts To Work With OneBeacon, OneBeacon Delays And Misses Deadlines**

It was not until April 13th that OneBeacon even acknowledged Powell's RFPs—but then claimed it needed more time to respond (without offering any firm deadline by which it would do so). (Ex. B, Decl. of Joseph M. Brunner ("Brunner Decl.") ¶ 3, exhibit 1 p. 6). Powell informed OneBeacon its responses and production were a month overdue, and requested production by April 29, 2016. (*Id.* p. 5-6). All OneBeacon could offer were "preliminary responses." (*Id.* p. 4-5). Powell thus reiterated its request for complete responses and production by April 29. (*Id.* p. 3-4). On April 28, OneBeacon informed Powell that its e-discovery vendor was just "gearing up to start the process of collecting the documentation now," and claimed that its unexplained delay in collecting and providing written responses was "not offensive." (*Id.* p. 2). Because there were still no responses, documents, or firm dates by which Powell could expect the discovery, Powell asked to meet and confer before approaching the Court. (*Id.* p. 1-2).

The parties conferred telephonically on May 3, 2016. (*See id.* ¶ 4, exhibit 2). Based on OneBeacon's representation that it would complete its production completed by May 31st, Powell agreed to not contact the Court. (*Id.*). But on May 27th, and ***contrary to its promise***, ***OneBeacon informed Powell that it would not have the complete production ready on May 31st***. It claimed that its e-discovery vendor would only have the "first production" ready on June 2nd. (*Id.* ¶ 5, exhibit 3).

On June 2, 2016, OneBeacon finally served its written responses (albeit more than two months after they were due) and made its "first production." (Ex. C, OneBeacon RFP Resp.). OneBeacon's production, however, was hardly a production at all. While the production totaled 34,479 pages, ***27,982 of those pages*** were documents OneBeacon had

3

already produced to Powell in the state court coverage action.[1] (Ex. B, Brunner Decl. ¶ 6). The balance mostly consisted of irrelevant engineering and manufacturing documents from the underlying asbestos cases. OneBeacon did not produce a single email. (*Id.* ¶ 6).

On June 9th, Powell catalogued these deficiencies in writing and insisted on production by June 14th. (Ex. D, Decl. of David F. Hine ("Hine Decl.") ¶ 3, exhibit 1). OneBeacon did not respond until June 13th, and then ***admitted it knew that no emails had been produced*** (despite OneBeacon's prior representations to have their entire production complete by May 31st) ***but had declined to so inform Powell***. (*Id.* ¶ 4, exhibit 2 p. 5). OneBeacon said it "hoped" to be finished reviewing the outstanding emails by July 1, but declined to give a production date. (*Id.* p. 1).

As June dragged on with no commitment from OneBeacon, Powell again expressed its intention to contact the Court (Ex. B, Brunner Decl. ¶ 8, exhibit 5 p. 2-4). OneBeacon said it wished to talk (*id.* p. 1), and the parties conferred on June 27th. (*Id* ¶ 9). OneBeacon represented to Powell that it would complete its document production, including production of all emails, by July 8th, and that it would provide a privilege log by July 31st. (*Id.*; *see also* Ex. D, Hine Decl. ¶ 5, exhibit 3 p. 2-3). Based on these representations, Powell again agreed not to involve the Court.

OneBeacon made a production on July 8th that once again fell short of its representations. This production contained emails from a single custodian only, Darilyn Michaud, which spanned a limited four and a half month period.[2] (Ex. B, Brunner Decl. ¶ 10). Powell objected to both the timeframe of the emails produced and the search of one

---

[1]     Incidentally, OneBeacon had to ask Powell for copies of these documents on May 12th after claiming its files were corrupted. (Ex. B, Brunner Decl. ¶ 7, exhibit 4). When Powell provided them out of courtesy, OneBeacon simply put new bates numbers on them and reproduced them. The Court can decide whether new bates numbers on old documents obtained from the opposing party constitutes a good faith production.

[2]     The emails produced ranged from January 18, 2016 to May 31, 2016, plus a single email dated October 19, 2015. (Ex. B, Brunner Decl. ¶ 10).

custodian's account only had been searched, despite interrogatory responses that identified other individuals with knowledge.[3] (Ex. D, Hine Decl. ¶ 6, exhibit 4 p. 2). Incredibly, OneBeacon responded on July 27th *with an admission* it knew not all of Ms. Michaud's emails had been produced. It then stated it could not complete production of Ms. Michaud's emails until August 19, 2016 (despite the earlier representation that OneBeacon would complete its entire production by July 8), and argued that searching and collecting emails from other custodians would be redundant because Ms. Michaud was purportedly the "information hub for [Powell's] file." (*Id.* p. 1). Powell therefore contacted the Court.

### C. The Court Orders OneBeacon To Complete Its Document Production And Provide A Privilege Log, Which OneBeacon Does Not Do

The Court held a discovery conference on August 2nd. (*See* August 2, 2016 Minute Entry). The call was to the point: Powell recited the numerous delays and issues it had with OneBeacon's document production, and OneBeacon—acknowledging the same—committed to providing the requested discovery by a date certain. Specifically, the Court noted that OneBeacon "has committed to having production *of all documents* on August 19th and a privilege log by September the 2nd, *and so I'm going to hold him to that* and expect that you'll get them by those dates." (Doc. 97, August 2, 2016 Hr'g Tr. p. 7 (emphasis added)).

OneBeacon, however, failed to comply with the Court's order. Although it did produce *some* documents on August 19—emails from Ms. Michaud from January 2, 2012 to May 31, 2016. (Ex. B, Brunner Decl. ¶ 11)—it again failed to produce documents from any other custodians. Then, on August 24—five days after the Court-ordered deadline to complete its production—OneBeacon produced *another 95,986 pages*. Still later, on September 15—then a full four weeks after the deadline—OneBeacon produced *another*

---

[3]     *See* Doc. 85-1, OneBeacon Interrog. Resp. at PageID # 1346-47 (identifying Bonnie McClements, Greg Gaines, and Clayton Budlong); *id.*, June 28, 2016 Horacek Email at PageID # 1362 (supplementing responses to identify Graham Loxley).

**23,951 pages** of Ms. Michaud's emails.[4] (*Id.* ¶ 12). OneBeacon offered no explanation for these post-deadline productions.

OneBeacon continued to refuse to search, collect, and produce emails from other custodians. (Ex. D, Hine Decl. ¶ 7, exhibit 5 p. 2). It stated its intention to limit its production to only documents concerning the specific handling of individual underlying asbestos cases and that it would ***not*** produce documents concerning Powell's account, generally. (*Id.* p. 3-6). In the face of the specific allegations in Powell's Complaint (*see* Doc. 1, Compl. ¶¶ 16-62, PageID # 5-19) and in ***direct disregard*** for the Court's statement in its Order Denying OneBeacon's Motion to Dismiss that the cases identified in Powell's Complaint "are provided as a representative sample of a larger set of bad faith incidents and such representative samples are sufficient to meet the Rule 8(a)(2) pleading standard" (Doc. 45, Order at PageID # 967-68), OneBeacon claimed that this litigation was only about a limited number of cases and not the account as a whole. (Ex. D, Hine Decl. ¶ 7, exhibit 5 p. 3-6).

OneBeacon's privilege log, furthermore, was rife with unmistakable deficiencies: it included communications with Powell's counsel and Powell employees; documents regarding coverage determinations that are not protected under Ohio law; and countless other documents that were not described with sufficient detail to support the privilege claims. (*Id.* ¶ 8, exhibit 6 p. 1-4). Powell again had no alternative but to contact the Court.

### D. The Court Develops A Plan To Work Through The Issues, Which OneBeacon Opposes And Resists Every Step Of The Way

The Court set a telephonic conference for September 15 (*see* September 9, 2016 Minute Entry), and requested written submissions from both parties (*see* Ex. D, Hine Decl.

---

[4]    OneBeacon claimed that these belated productions were merely the reproduction of the state court coverage action production—but that production was only 27,982 pages (*id.* ¶ 12) and review of the August 24 and September 15 productions confirmed that they were comprised of new emails that post-dated OneBeacon's state court production (*id.*).

¶ 9-10, exhibits 7 and 8). After reviewing the submissions the Court reset the conference for September 22 and converted it into an in-chambers appearance before the Magistrate Judge.

During the conference, the Court rejected OneBeacon's position with respect to limiting production to only the actually handling of individual claims. (*See* Doc. 85, Powell Disc. Status Rep. at PageID # 1331 (general communications were "fair game given the bad faith claim")). Then, at OneBeacon's suggestion, the Court devised a procedure for vetting OneBeacon's claim that Ms. Michaud's documents would capture all responsive materials. In particular, Powell would identify a group of custodians to provide affidavit or declaration testimony regarding their emails communications and other documents concerning Powell, and would then be entitled to limited telephone depositions to further investigate OneBeacon's position. (*Id.* at PageID # 1332; Doc. 74, Amended Order). The Court acknowledged the various deficiencies in OneBeacon's privilege log and ordered OneBeacon to cure the same. Powell transmitted its list to OneBeacon as required. In response, OneBeacon sought to limit the scope of the testimony provided, to which Powell objected. (Ex. D, Hine Decl. ¶ 11, exhibit 9 p. 4).

The bigger revelation, however, came from the testimony OneBeacon did produce. (*See* Doc. 85-1, Declarations at PageID # 1373-87). Contrary to all of OneBeacon's representations that collecting Ms. Michaud's emails would capture all relevant documents and contrary to the Court's August 2, 2016 Order to complete document production by August 19th,[5] ***the declarations of three individuals confirmed that they did in fact have emails and other documents responsive to Powell's RFPs that had not been***

---

[5]     Again, OneBeacon had already violated the Court's order by producing new documents on August 24 and September 15.

*collected or produced*. (*Id.*, Graham Loxley Decl. at PageID # 1374; *id.*, Tom Ryan Decl. at PageID # 1377; *id.*, Brooke Green Decl. at PageID # 1386).[6]

The Court held a follow-up conference on October 13, 2016 (*see* Doc. 76, Civil Minutes) during which OneBeacon resisted producing any further documents or testimony. The Court rejected OneBeacon's arguments, and ordered OneBeacon to provide supplemental affidavits; produce documents from Mr. Loxley, Mr. Ryan, and Ms. Green; and finally provide a complete privilege log. (Doc. 78, Order).

### E. OneBeacon Again Fights The Court's Orders And Refuses To Engage In The Procedures The Court Envisioned

As ordered, OneBeacon began to collect and produce documents from Mr. Ryan and Ms. Green, and OneBeacon's production from these two custodians is *still* ongoing three months later. OneBeacon also purportedly collected and produced "Graham Loxley's non-privileged email production" (*see* Doc. 85-1, November 3, 2016 Horacek Email at PageID # 1365), but what it actually produced were three PDFs totaling 17 pages that did not include a single email. (*See* Doc. 85, Powell Disc. Status Rep. at PageID # 1330). To support this nonproduction, OneBeacon again claimed that only communications regarding specific claims are relevant and that all such communications were privileged. (*Id.*)

Powell attempted to schedule the depositions that the Court indicated would follow the declarations. OneBeacon, however, objected to scheduling any telephone depositions. Although the Court specifically stated that taking telephone depositions was the "next step" (*see id.* at PageID # 1332), OneBeacon simply refused to engage in that process. It instead tried to shift responsibility to Powell by, against all evidence of the course of discovery to the contrary, accusing Powell of not taking the process seriously. (*Id.*).

---

[6]     Although OneBeacon has tried to downplay these documents, characterizing the volume as a "limited amount" (Ex. D, Hine Decl. ¶ 11, exhibit 9 p. 1), OneBeacon has produced over 7,000 pages from these custodians to date, and still is not done reviewing and producing these documents as it acknowledged during the parties' January 9 status call

OneBeacon's persistent and steadfast refusal to follow the Court's instructions required another follow-up conference, which the Court held on November 18, 2016. (Doc. 88, Civil Minutes). The Court agreed with Powell that the telephone depositions should go forward, and ordered the parties to proceed. (Doc. 90, Order at PageID # 1537).

### F. Although The Telephone Depositions Revealed That OneBeacon's Document Collection Efforts Were Inadequate, OneBeacon Still Refused To Search And Collect From Additional Custodians

Powell deposed Clayton Budlong, Peter Dinunzio, Gregory Gaines, David Gold, Graham Loxley, and John Matosky. Their testimony identified unproduced documents and highlighted the shortcomings of OneBeacon's decision to search and collect emails from one custodian only.

First, as the Court is aware, Mr. Gaines testified that he keeps a Powell desk file. (Ex. E, Gaines Dep. p. 19-20). It was never previously collected and produced because, as Mr. Gaines admitted, no one had ever asked him to search for relevant documents. (*Id.* p. 38-40). OneBeacon has since produced that desk file, but has redacted large portions for dubious reasons. (Ex. B, Brunner Decl. ¶ 13, exhibit 6 p. 2).

Second, Mr. Loxley testified that he receives monthly emails with attachments containing financial data on Powell's account. (Ex. F, Loxley Dep. p. 11-18). These emails have not been collected or produced and are not listed on the privilege log for Mr. Loxley's documents that OneBeacon previously provided. (*Id.* p. 20).

Third, multiple witnesses testified that there are quarterly meetings between Resolute employees and Mr. Loxley during which the status of OneBeacon accounts, including Powell's, are discussed. (*See*, *e.g.*, *id.* p. 31-35). David Gold participated in these meetings, and testified that he sent and received emails regarding these meetings that contained meeting agendas and that discussed topics for the meetings. (Ex. G, Gold Dep. p.

18-27). Mr. Gold also testified that account managers such as Ms. Michaud would not be involved in these meetings.

Fourth, John Matosky admitted that he had email conversations with Mr. Loxley and, before Mr. Loxley was involved, with Stuart McKay at OneBeacon.[7] (Ex. H, Matosky Dep. p. 29-32). These communications have not been produced because OneBeacon has asserted a privilege claim (which Powell disputes). (*See* Ex. B, Brunner Decl. ¶ 14, exhibit 7 p. 1).

Fifth, multiple witnesses testified that documents relevant to Powell—such as exhaustion reports, communications from local defense counsel, settlement calculators, and exposure modeling—likely exist on Resolute's shared network spaces, namely the Rapid system and the V drive. (*See, e.g.*, Ex. G, Gold Dep. p. 15-17; Ex. H, Matosky Dep. p. 23-24; Ex. I, Dinunzio Dep. p. 18-19). This drive has never been searched for responsive nonduplicative documents.

Sixth, the testimony establishes that simply searching and collecting from Ms. Michaud's emails was not sufficient, and that it is likely that other relevant documents reside with other custodians. For example, Clayton Budlong testified that there may be documents and emails related to exposure modeling for Powell that Ms. Michaud was most likely not included on. (Ex. J, Budlong Dep. p. 17-21). Peter Dinunzio, who was a member of the Asbestos Strategic Unit ("ASU") responsible for reviewing claims and granting settlement authority, testified that he would discuss Powell cases with his superiors, other members of the ASU, and others such as David Warren, and that he does not recall whether these discussions would have included Ms. Michaud or her supervisor Mr. Budlong. (Ex. I, Dinunzio Dep. p. 14-16, 22). Furthermore, Mr. Matosky testified that

---

[7]     Mr. Loxley is an employee of Armour Risk Management Limited, which purchased OneBeacon's asbestos liabilities. (Ex. F, Loxley Dep. p. 10, 14). Prior to that purchase, Stuart McKay, a OneBeacon employee, functioned in the same role as Mr. Loxley. (Ex. H, Matosky Dep. p. 32-33).

Resolute has a company-wide non-deletion policy for email. (Ex. H, Matosky Dep. p. 40-41). Yet, a review of the separate privilege lot OneBeacon submitted with Mr. Loxley's 17-page production reveals communications between Ms. Michaud and Mr. Loxley that were not captured by searching Ms. Michaud's emails.

### G. After Several Extensions, OneBeacon Provides A Sham Privilege Log

OneBeacon provided its first privilege log on September 2, 2016. The Court reviewed it during the September 22nd hearing, and required OneBeacon to provide several categories of additional information. OneBeacon provided the revised log on November 10, 2016. (*See* Ex. K, OneBeacon Priv. Log). It still contained numerous deficiencies.

For example, in several hundred entries OneBeacon provided useless descriptions of the withheld document, such as "concerning WPC v. OneBeacon." OneBeacon also withheld hundreds of communications between itself and third parties such as Berkshire Hathaway, National Indemnity Company, Armour Risk Management, and other insurers, without any proof of existing joint defense or common interest agreements. Other entries indicated that OneBeacon has withheld documents pertaining to underlying asbestos claims that predate OneBeacon's denial of coverage in those cases, contrary to *Boone v. Vanliner Ins. Co.*, 91 Ohio St. 3d 209 (Ohio 2001). The log even included entries that did not identify the authors or recipients of purportedly privileged communications and documents, and entries that failed to identify the privilege OneBeacon was asserting.

### H. Powell Tries One More Time To Work With OneBeacon, Is Rebuffed, And Files This Motion

During a follow-up telephonic conference on December 9, 2016 the Court instructed the parties to work together to try and resolve the outstanding issues. Powell did so, and sent letters to OneBeacon on December 22 (*see* Ex. D, Hine Decl. ¶ 12, exhibit 10) and December 29. (*See* Ex. B, Brunner Decl. ¶ 13, exhibit 6).  Powell then followed up with

email requests asking for OneBeacon's positions on the issues Powell identified in its preceding letters. (Ex. B, Brunner Decl. ¶ 14, exhibit 7 p. 2-3). OneBeacon, however, did not respond to Powell's letters and emails until 40 minutes before the next-scheduled conference. (*Id.* p. 1-2). Because it was apparent that all other efforts to resolve the dispute had been exhausted, Powell asked to submit a motion with briefing and the Court set a schedule.

## III.    LAW AND ARGUMENT

Rule 37(a)(1) and this Court's Local Rules require "a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1); S.D. Ohio Civ. R. 37.1. As detailed above, Powell certifies that it has in good faith conferred with OneBeacon to attempt to resolve this dispute without filing a motion.

### A.    OneBeacon Has Failed To Produce Documents Responsive To Powell's RFPs And The Court Should Issue An Order Compelling Production

#### 1.    Rule 37(a) authorizes the Court to issue an order compelling discovery, and treats incomplete responses as a failure to respond

Rule 37(a) permits a party to "move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). Specifically, the "motion may be made if: . . . (iv) a party fails to produce documents . . . as requested under Rule 34." *Id.* (a)(3)(B). The Rule is clear that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

#### 2.    Limiting responses to one custodian and specific claims ignores the Court's statements and the actual requests

As detailed above, Powell issued its RFPs to OneBeacon nearly a year ago. OneBeacon first ignored them, then promised production again and again but failed to

12

deliver. It initiated a slow drip of documents from only a single custodian that excluded general communications about Powell's account. It resisted all efforts to resolve the problem. It now continues to refuse production in the face of evidence that its document search, collection, and production efforts have fallen short.

### a.    Limiting the search to only Ms. Michaud was improper

By only searching and collecting documents from Ms. Michaud OneBeacon has missed substantial categories of relevant information. That has **been proven** by the affidavit and deposition procedure (which OneBeacon contested), which revealed the existence of Mr. Ryan's and Ms. Green's emails and Mr. Gaines' desk file. But the depositions reveal even more unproduced documents, such as:

1. the monthly emails Mr. Loxley receives that contain financial data concerning Powell's account (*see* Ex. F, Loxley Dep. p. 11-18);

2. the emails and agendas associated with the quarterly meetings between Resolute employees and Mr. Loxley (*see id.* p. 31-35; Ex. G, Gold Dep. p. 18-27);

3. the emails between Mr. Matosky, Mr. Loxley, and Stuart McKay discussing Powell's account (Ex. H, Matosky Dep. p. 29-33); and

4. documents contained on Resolute's shared network spaces, such as the Rapid system and the V drive (Ex. G, Gold Dep. p. 15-17; Ex. H, Matosky Dep. p. 23-24; Ex. I, Dinunzio Dep. p. 18-19).

Incredibly, OneBeacon has failed ever to search, let alone collect, documents from other custodians. Despite identifying Bonnie McClements, Mr. Gaines, and Mr. Budlong as individuals with knowledge (*see* Doc. 85-1, OneBeacon Interrog. Resp. at PageID # 1346-47), OneBeacon has never searched these custodians' files for relevant, nonduplicative documents. Mr. Budlong testified in his deposition that he may have documents and emails related to exposure modeling that do not involve Ms. Michaud. (Ex. J, Budlong Dep. p. 17-21). The documents produced and testimony elicited to date also reveal other relevant custodians whose accounts must be searched. Peter Dinunzio testified to communications

13

he had with other members of the ASU and his superiors regarding Powell cases, and said Ms. Michaud was not involved. (Ex. I, Dinunzio Dep. p. 14-16, 22).

OneBeacon has also ***not even produced all of Ms. Michaud's documents***. Mr. Matosky testified that Resolute has a company-wide non-deletion policy for email. But the Loxley Privilege Log OneBeacon submitted shows that some of Ms. Michaud's emails were neither produced nor logged on OneBeacon's main privilege log. DocumentIDs H13251-0020-001004, H13251-0020-001052, H13251-0021-001001, and H13251-0020-001018 (Ex. L, OneBeacon Loxley Priv. Log p. 1-3) are all emails involving both Mr. Loxley and Ms. Michaud, collected from Mr. Loxley's email account, but they appear nowhere on the initial privilege log OneBeacon provided in September before collecting emails from Mr. Loxley.

OneBeacon's document production has omitted multiple categories of relevant documents and custodians, which constitutes a failure to produce under Rule 37(a). Powell seeks an order compelling production of the four categories of documents listed above, as well as a full search and production of nonduplicative documents relevant to Powell from Ms. Michaud's supervisors Mr. Budlong and Mr. Gaines, their supervisor Mr. Gold, and the members of the Asbestos Strategic Unit involved in reviewing and discussing Powell's cases and account (Mr. Dinunzio, David Warren, Kevin Hannemann, and Adrian Van).

### b. Limiting the search to documents involving specific asbestos cases was inappropriate

OneBeacon has only produced documents relevant to the handling of specific, individual underlying asbestos claims. It did so with Ms. Michaud's documents (*see*, *e.g.*, Ex. D, Hine Decl. ¶ 8, exhibit 6 p. 2; *id.* ¶ 9, exhibit 7 p. 2-3), it did so with Mr. Loxley's documents (*see* Doc. 85, Powell Disc. Status Rep. at PageID # 1330-31), and it did so with Mr. Ryan's and Ms. Green's documents (*see* Ex. B, Brunner Decl. ¶ 13, exhibit 6 p. 1).

This limitation is entirely improper. "Parties may obtain discovery regarding *any* nonprivileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1). Powell's Complaint alleges a broad pattern of bad faith actions and positions taken by OneBeacon. (Doc. 1, Compl. ¶¶ 16-62, PageID # 5-19). When denying OneBeacon's Motion to Dismiss the Court found that the specific cases identified in the Complaint are just "*a representative sample of a large set of bad faith incidents*[.]" (Doc. 45, Order at PageID # 967-68). In addition, during the September 22nd conference, the Court specifically rejected OneBeacon's proposed limitation on production by stating that general communications were "fair game given the bad faith claim." (*See* Doc. 85, Powell Disc. Status Rep. at PageID # 1331).

Despite these unambiguous instructions, OneBeacon insists on excluding from its production general communications and documents relevant to Powell's account. The Court should order OneBeacon to produce all general communications and documents relevant to Powell's account that have previously been withheld from the production of Ms. Michaud's, Mr. Loxley's, Mr. Ryan's, and Ms. Green's productions. Furthermore, the Court should make clear that the search and production of documents from the additional custodians identified above should include general communications and documents relevant to Powell's account.

### c. The discovery Powell seeks is proportional to the needs of the case

As the Court knows, on December 1, 2015 Rule 26(b)(1) was amended to "restore[] the proportionality factors to their original place in defining the scope of discovery." Fed. R. Civ. P. advisory committee's note (2015 Amendment). Discovery is permitted that is

> proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the

> discovery in resolving the issues, and whether the burden or expense of the
> proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "Courts have, in evaluating the proportionality issue, suggested

that both parties have some stake in addressing the various relevant factors." *Wilmington*

*Trust Co. v. AEP Generating Co.*, No. 2:13-cv-1213, 2016 U.S. Dist. LEXIS 28762, at * 6-7

(S.D. Ohio Mar. 7, 2016) (M.J. Kemp) (citing *Oracle America, Inc. v. Google, Inc.*, 2015 U.S.

Dist. LEXIS 163956, at * 2 (N.D. Cal. Dec. 3, 2015). But the amendment

> does not change the existing responsibilities of the court and the parties . . .
> [and] does not place on the party seeking discovery the burden of addressing
> all proportionality considerations. Nor is the change intended to permit the
> opposing party to refuse discovery simply by making a boilerplate objection
> that it is not proportional. The parties and the court have a collective
> responsibility to consider the proportionality of all discovery and consider it
> in resolving discovery disputes.

Fed. R. Civ. P. advisory committee's note (2015 Amendment). The burden remains on the

party resisting discovery to "specifically object and show that the requested discovery does

not fall within Rule 26(b)(5)(A)'s scope of proper discovery (as now amended) or that a

discovery request would impose an undue burden or expense or is otherwise objectionable."

*Carr v. State Farm Mut. Auto Ins.*, 312 F.R.D. 459, 469 (N.D. Tex. 2015); *see also Royal*

*Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14-CV-4394, 2016 U.S. Dist. LEXIS

120131, at *23 (S.D.N.Y. Aug. 31, 2016) ("If a party objects to discovery requests, that party

bears the burden of showing why discovery should be denied").

The discovery Powell seeks is proportional to the needs of the case. The importance

of the issues to Powell cannot be overstated. Powell has been in continuous operation since

1846 and is now fighting for survival against a nationwide flood of asbestos claims that has

been ongoing for more than ten years with no relief on the horizon. The good faith conduct

of its insurer in defending Powell's interests and administering the claims against it is

vital. It cannot be valued in monetary terms alone. *See id.* (noting significance of

16

substantive issues that may be measured in institutional terms apart from the monetary stakes involved).

But the monetary stakes are significant—the amount in controversy is likely to exceed $10 million, particularly in view of the *Coulbourn* case in Arizona that involves a $3 million punitive damages verdict against Powell in which OneBeacon rejected settlement demands in the low six figures without consulting Powell and prevented Powell's normal trial counsel from participating in the trial or in witness preparation. (*See* Ex. M, Powell Disc. Resp. p. 8). The damages include high settlement amounts agreed to at the eleventh hour, late evaluation of cases and coverage positions, fees paid to outside counsel necessary to monitor OneBeacon's activities, and compensation for the time spent by Powell's executives.[8] And OneBeacon continues to engage in acts similar to those alleged in the Complaint, as just last week OneBeacon again communicated with local counsel and extended settlement authority without Powell's knowledge. The monetary stakes continue to increase with each new act of bad faith. (*See* Ex. B, Brunner Decl. ¶ 15, exhibit 8).

Powell has no access to the relevant information, as it consists of OneBeacon's internal documents and communications. Considering the parties' resources, Powell is a small company defending tens of thousands of asbestos cases, while OneBeacon is a Berkshire Hathaway subsidiary that does billions in business. And the importance of the discovery is significant: the documents and communications concerning Powell's account generally, and the documents from custodians senior to Ms. Michaud, will inform and contextualize the individual claim-specific documents OneBeacon has produced. Considering the relevant factors, the requested discovery is proportional to the needs of the case.

---

[8]     In fact, on April 8, 2016 Powell submitted an eight figure settlement demand to OneBeacon based on these damages. OneBeacon declined to make a counter-offer.

### 3. The unsupported privilege claims amount to a failure to respond

OneBeacon's privilege log (Ex. K) does not provide sufficient information to substantiate many of the claims of privilege and identifies as withheld numerous documents that are not protected from disclosure. The Court should order production of all these documents.

### a. The log does not provide sufficient information to support the claimed privilege

"When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privilege or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). "[T]hose seeking to invoke the privilege must provide the reviewing court with enough information for it to make a determination that the document in question was, in fact, a confidential communication involving legal advice." *In re Search Warrant Executed at Law Offices of Stephen Garea*, Case No. 97-4112, 1999 U.S. App. LEXIS 3861, at *7 (6th Cir. Mar. 5, 1999); *see also  Cooey v. Strickland*, 269 F.R.D. 643, 649 (S.D. Ohio 2010) (Frost, J.) ("[T]he information provided in a privilege log must be sufficient to enable the court to determine whether *each element* of the asserted privilege log or protection is satisfied" (internal quotations omitted) (emphasis in original)).[9]

This burden to substantiate a claim of privilege "is not satisfied by mere conclusive or *ipsa dixit* assertions, for any such rule would foreclose a meaningful inquiry into the

---

[9]     "Although not expressly required by Rule 26(b)(5)(A), a privilege log has become an almost universal method of asserting privilege under the Federal Rules." *Avis Rent A Car Sys., LLC v. City of Dayton*, Case No. 3:12-cv-399, 2013 U.S. Dist. LEXIS 100918, at *24 (S.D. Ohio. July 18, 2013) (Rice, J.) (internal quotation omitted)].

existence of the privilege." *Allard v. Figgie (In re Trans-Industries)*, Case No. 1:10-MC-101, 2011 U.S. Dist. LEXIS 37911, at *4-5 (N.D. Ohio Mar. 28, 2011) (internal quotations omitted). Instead, "[c]ourts require the following to be included in privilege logs:

1. A description of the document explaining whether the document is a memorandum, letter, e-mail, etc.;
2. The date upon which the document was prepared;
3. The date of the document (if different from #2);
4. The identity of the person(s) who prepared the document;
5. The identity of the person(s) for whom the document was prepared, as well as the identities of those to whom the document and copies of the document were directed, including an evidentiary showing based on competent evidence supporting any assertion that the document was created under the supervision of an attorney;
6. The purpose of preparing the document, including an evidentiary showing, based on competent evidence, supporting any assertion that the document was prepared in the course of adversarial litigation or in anticipation of a threat of adversarial litigation that was real and imminent; a similar evidentiary showing that the subject of communications within the document relates to seeking or giving legal advice; and a showing, again based on competent evidence, that the documents do not contain or incorporate non-privilege underlying facts;
7. The number of pages of the document;
8. The party's basis for withholding discovery of the document (i.e., the specific privilege or protection being asserted); and
9. Any other pertinent information necessary to establish the elements of each asserted privilege.

*Cooey*, 269 F.R.D. at 649 (quoting *In re Universal Services Fund Tel. Billing Practices Litig.*, 232 F.R.D. 669, 673 (D. Kan. 2005)).

If a party fails to properly assert a privilege in a timely fashion, the privilege may be waived altogether. *Brown v. Tellermate Holdings, Ltd.*, Case No. 2:11-cv-1122, 2013 U.S. Dist. LEXIS 48278, at *9 (S.D. Ohio Apr. 3, 2013) (Kemp, J.) (explaining that "failure to provide [a privilege] log in a timely fashion waives the privilege" and concluding that any claims of privilege for documents not properly logged in a timely fashion were deemed waived); *see also Banks v. Office of the Senate Sergeant-at-Arms & Doorkeeper*, 226 F.R.D. 113, 117 (D.D.C. 2005) ("federal courts are insistent upon the timely production of a privilege log [and] have enforced waivers when the production was not timely"); *National*

*Union Fire Ins. Co., P.A. v. Midland Bancor*, 159 F.R.D. 562, 567 (D. Kan. 1994) (finding that general allegations of privilege are insufficient, and that claims of privilege not specified or substantiated were lost).

In this case, there are literally hundreds of entries in OneBeacon's privilege log that fail to specify the necessary information.[10] There are entries in OneBeacon's privilege log that do not identify the authors of the purportedly privileged documents.[11] (*See, e.g.*, Ex. K, OneBeacon Priv. Log. p. 1 entry H13251-0004-001313, p. 2 entries H13251-0004-001335—H13251-0004-001342, p. 3 entry H13251-0004-001378, p. 5 entry H13251-0004-002644 (all stating that the author was "Not Available")). There are entries that do not identify the recipients of purportedly privileged communications. (*See, e.g.*, *id.* p. 1 entry H13251-0001-001012; p. 1 entry H13251-0004-001012; p. 1 entry H13251-0004-001016; p. 1 entry H13251-0004-001321; p. 5 entry H13251-0004-002633). There are even entries that do not identify the privilege that OneBeacon purports to assert. (*See, e.g.*, *id.* p. 124 entry H13251-0008-043298).

In addition, there are countless entries that lack the requisite level of detail in their descriptions of the documents. Others include details that do provide do not substantiate the privilege asserted. For example, in several hundred entries, OneBeacon only provides vague descriptions such as "concerning WPC v. OneBeacon (A1109350)," "concerning WPC v. OneBeacon (1:14-cv-807-SJD)," or "concerning WPC v. OneBeacon (C 1300681)." (*See,*

---

[10]    A full list of the deficient entries Powell is challenging is attached as Exhibit N.

[11]    There are also a number of entries—including the first entry on OneBeacon's privilege log—identifying authors who are not listed in OneBeacon's December 14, 2016 Privilege Log legend, attached as Exhibit O. (*See, e.g.*, Ex. K, OneBeacon Priv. Log. p. 1 entry H13251-0001-001001 (identifying M. Zyra—who is not on OneBeacon's Privilege Log Key—as the author); p. 1 entry H13251-0004-001019 (identifying B. Stroll—who is not on OneBeacon's Privilege Log Key—as the author); p. 5 entry H13251-0004-002633 (identifying HCG—who is not on OneBeacon's Privilege Log Key—as the author)). The Court ordered OneBeacon to produce this legend so that Powell could properly assess the validity of OneBeacon's privilege log entries. (*See* Doc. 93, Order at Page ID # 1541).

*e.g.*, *id.* p. 45 entry H13251-0008-001857; p. 82 entry H13251-0008-003008; p. 103 entry H13251-0008-003504). This Court has consistently found that it is not sufficient to simply state that a communication generally relates to litigation. *See, e.g.*, *Avis Rent a Car*, 2013 U.S. Dist. LEXIS at *25; *Little Hocking Water Ass'n v. E.I. du Pont de Nemours & Co.*, Case No. 2:09-cv-1081, 2013 U.S. Dist. LEXIS 22213, at *33-34 (S.D. Ohio Feb. 19, 2013) (King, J.). In *Avis Rent a Car*, the plaintiffs' privilege log contained far more detail than OneBeacon has provided,[12] but the court nevertheless determined that it "contain[ed] insufficient detail to assess Plaintiff's claims of privilege." 2013 U.S. Dist. LEXIS at *25. Likewise, in *Little Hocking Water Ass'n*, the court concluded that a privilege log's description of documents as relating to "agency actions" did "not provide the detail necessary for the Court to conclude that the" documents in question were actually protected. 2013 U.S. Dist. LEXIS 22213, at *33-34.

Similar issues exist on the log provided for Mr. Gaines' desk file. (*See* Ex. P, OneBeacon Gaines Priv. Log). Mr. Gaines' desk file was produced as a single document with certain pages redacted, but the log does not sufficiently indicate why the redactions are necessary. Pages 27-32 are redacted because of a claim that they request legal advice, but the log does not identify the underlying claim at issue. The log does not provide author or recipient information for the redactions on page 54-58 and 117-131, and pages 60-65 have been redacted even though the log identifies them as emails from travel agencies with no indication that an attorney or legal advice was involved. Powell identified these deficiencies in writing to OneBeacon (*see* Ex. B, Brunner Decl. ¶ 13, exhibit 6 p. 2), and OneBeacon has

---

[12]     The privilege log descriptions at issue in *Avis Rent a Car* stated: "These communications relate to the Enterprise Plaintiffs' and the Avis Plaintiffs' joint legal interests with respect to identical agreements with the City, as well as their efforts to jointly and efficiently pursue their claims against the City in this Court. The communications include discussion of case strategy, arguments made in the various motions that the parties have filed, preparation for depositions, and other subjects germane to litigating this case." 2013 U.S. Dist. LEXIS 100918, at *25.

stated that more information is forthcoming (*id.* ¶ 14, exhibit 7 p. 1-2). Powell reserves the right to challenge these entries once it receives this additional information.

In sum, despite nearly a year to complete its privilege log—including several extra months after the Court-ordered deadline of September 2, 2016—OneBeacon has not provided the necessary information to support its claims for privilege. OneBeacon's failure in this regard constitutes a waiver of the purported privileges asserted. Accordingly, OneBeacon should be ordered to produce those documents identified in its deficient privilege log entries.

> **b.    OneBeacon has withheld documents that are not entitled to protection.**

In addition to those documents for which OneBeacon has failed to provide sufficient information to satisfy its claim of privilege, there are dozens of entries in the privilege log that contain information affirmatively disproving OneBeacon's privilege claims. Specifically, there are a number of entries identifying communications between OneBeacon and various third parties with which OneBeacon does not share an  attorney-client relationship; to the extent these communications were ever privileged, any such privilege has been waived by virtue of their being shared with those third parties. In addition, there are hundreds of entries identifying documents relating to OneBeacon's handling of underlying asbestos claims that predate any denial of coverage by OneBeacon in those cases; these documents are discoverable pursuant to the Supreme Court of Ohio's decision in *Boone v. Vanliner Ins. Co.*, 91 Ohio St.3d 209 (Ohio 2001).

> **i.    OneBeacon has inappropriately withheld as privileged dozens of communications with third-parties.**

"Generally, the attorney-client privilege extends to confidential disclosures by a client to an attorney made in order to obtain legal assistance." *U.S. v. Suarez*, 2014 U.S.

Dist. LEXIS 63687, at *16 (N.D. Ohio May 8, 2014) (quoting *U.S. v. Moss*, 9 F.3d 543 (6th Cir. 1993)). Yet, "even where privilege exists, it may be waived by the client." *Futhey v. United Transp. Union Ins. Ass'n*, 2015 U.S. Dist. LEXIS 55335, at *4 (N.D. Ohio Apr. 28, 2015). In particular, "the protections of privilege are waived if privileged information is voluntarily disclosed to a third party." *Id.*; *see Suarez*, 2014 U.S. Dist. LEXIS 63687, at *16 ("As a general rule, disclosure of otherwise privileged material to a third-party acts as a waiver of the attorney-client privilege"). "The party asserting privilege **bears the burden of establishing** not only the existence of privilege, but **that such privilege has not been waived**." *Futhey*, 2015 U.S. Dist. LEXIS 55335, at *4 (emphasis added).

In this case, OneBeacon has withheld as privileged hundreds of communications between witnesses and attorneys from various entities who do not appear to have any sort of attorney-client relationship. For example, employees and counsel for OneBeacon, Resolute Management, Inc., Berkshire Hathaway, Inc.; National Indemnity Company; Armour Risk Management Limited; National Union Fire Insurance Company; Continental Casualty Insurance Company; Trebuchet U.S. Holdings, Inc.; Berkshire Reinsurance Group; Charles Wagner; and various information technology services providers appear together on communications that OneBeacon has withheld as privileged. (Ex. O, OneBeacon Priv. Log Legend).

Although OneBeacon ultimately disclosed the existence of a joint defense agreement between OneBeacon, Resolute Management, Inc., and National Indemnity Company,[13] it

---

[13]     In an email dated January 9, 2016, OneBeacon claimed to have executed a joint defense agreement on December 3, 2014. (*See* Ex. B, Brunner Decl. ¶ 14, exhibit 7 p. 1). "A joint defense extension of the attorney-client privilege has been applied to confidential communications shared between co-defendants which are part of an on-going and joint effort to set up a common defense strategy." *Suarez*, 2014 U.S. Dist. LEXIS 63687, at *16-17 (quoting *Moss*, 9 F.3d at 550). The joint defense doctrine "is not an independent privilege, but an exception to the general rule that the attorney-client privilege is waived when privileged information is disclosed to third parties, and

has done nothing at all to explain why the disclosure of its purportedly privileged information to any of the other third parties does not constitute a waiver of whatever privilege may have applied. Nor, for that matter, has it explained why the communications between the parties to the joint defense agreement that predate the execution of the agreement or are unrelated to the "on-going joint effort to set up a common defense strategy," *Suarez*, 2014 U.S. Dist. LEXIS 63687, at *16-17, would not also be discoverable by virtue of their being shared amongst third-parties. *See id.*, at *19 (explaining that the joint defense doctrine "only will apply where the parties undertake a joint effort with respect to a common legal interest, and the doctrine is limited strictly to those communication made to further an ongoing enterprise" (quoting *U.S. v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007)). Thus, OneBeacon has failed to satisfy its burden to prove that its privilege was not waived. Any documents on OneBeacon's privilege log that were shared with third parties other than the parties to its joint defense agreement, or with the parties to that agreement but for reasons unrelated to the limited scope of the joint defense agreement, should be produced.

> ## ii. OneBeacon has inappropriately withheld hundreds of documents that are discoverable pursuant to *Boone v. Vanliner Ins. Co.*, 91 Ohio St.3d 209 (Ohio 2001)

OneBeacon's privilege log also contains hundreds of entries identifying documents pertaining to OneBeacon's handling of underlying asbestos claims brought against Powell that predate any denial of coverage by OneBeacon in those cases.[14] Pursuant to the Supreme Court of Ohio's decision in *Boone v. Vanliner Ins Co.*, 91 Ohio St. 3d 209 (Ohio 2001), all such documents are discoverable in this bad faith action.

---

assumes the existence of an underlying privilege." *Id.* at *17 (quoting *Falana v. Kent State Univ.*, 2012 U.S. Dist. LEXIS 173114 (N.D. Ohio Dec. 6, 2012)).

[14] A full listing of all such privilege log entries is attached hereto as Exhibit Q.

In that case the Supreme Court of Ohio determined that, in bad faith cases brought against insurance companies, "the insured is entitled to discover claims file materials containing attorney-client communications related to the issue of coverage that were created prior to the denial of coverage." 91 Ohio St. 3d at 209, syllabus. The Sixth Circuit has read *Boone* to mean that insurance companies must produce in bad faith actions all documents "that ***may cast light*** on whether the insurer acted in bad faith," including those otherwise protected by the attorney-client privilege. *In re Professionals Direct Ins. Co.*, 578 F.3d 432, 442 (6th Cir. 2009) (emphasis in original) (internal citations omitted). That is to say, any document, privileged or otherwise, that predates the denial of coverage is discoverable. *Id.*

This Court has consistently followed the reasoning articulated in *In re Professionals Direct Ins. Co.*, and has routinely ordered the production of documents in bad faith cases against insurance companies that predate denials of coverage. *See, e.g.*, *Mayer v. Allstate Vehicle & Prop. Ins. Co.*, 2016 U.S. Dist. LEXIS 61881 (S.D. Ohio May 10, 2016) (Marbley, J.) (ordering broad production of documents, including attorney-client communications, predating coverage determinations); *Decker v. Chubb Nat'l Ins. Co.*, Case No. 1:15-cv-88, 2015 U.S. Dist. LEXIS 139824, at *11-13 (S.D. Ohio Oct. 14, 2015) (Litkovitz, J.) (same); *Chubb Custom Ins. Co. v. Grange Mut. Cas. Co.*, No. 2:07-cv-1285, 2012 U.S. Dist. LEXIS 54305, at *12-15 (S.D. Ohio Apr. 17, 2012) (King, J.) (when insurer defends under reservation of rights without formally denying claim, *Boone* exception applies until there is a formal claim denial).

This case is no different. The documents identified on OneBeacon's privilege log that predate any denial of coverage in the underlying asbestos cases to which they apply (*see* Ex. Q) all "***may cast light*** on whether [OneBeacon] acted in bad faith." *See In re Professionals*

*Direct Ins. Co.*, 578 F.3d at 442 (emphasis added). Accordingly, they are discoverable pursuant to *Boone v. Vanliner Ins. Co.* and should be produced by OneBeacon.

### 4. Powell is entitled to its reasonable expenses incurred in making this motion

Rule 37(a)(5) states that if a motion to compel is granted the Court "***must***, after giving an opportunity to be heard, require the party [or attorney] whose conduct necessitated the motion . . . or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees" unless the opposing party's conduct was "substantially justified" or the circumstances otherwise make an award unjust. Fed. R. Civ. P. 37(a)(5)(A) (emphasis added). OneBeacon's conduct in this case was not substantially justified, and there are no circumstances rendering a fee award unjust.[15] OneBeacon has ignored Powell's discovery requests, delayed in responding to them, issued piecemeal and incomplete responses, ignored Court orders, and inappropriately limited its production. Powell has been trying to obtain this discovery for nearly a year, and an award of expenses and fees is necessary to properly rebuke OneBeacon's conduct. Powell will submit proof of its expenses and fees incurred as required once the Motion is 37(b)granted.

### B. OneBeacon Has Failed To Comply With The Court's August 2, 2016 Order Requiring A Complete Document Production, And Powell Should Be Awarded Its Costs And Fees Caused By That Failure

#### 1. Under Rule 37(b) the Court can order payment of attorneys' fees and expenses for failure to comply with a court order

"If a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders." Fed. R. Civ.P. 37(b)(2)(A). In addition to the sanctions listed at (i)-(vii) of Rule 37(b)(2)(A), the Rule also ***requires*** the Court to "order the disobedient party, the attorney advising that party, or both to pay the

---

[15] Notably, Judge Beth Myers reached the same conclusion in the state court coverage action when she sanctioned OneBeacon for engaging in discovery conduct eerily similar to what it has done in this case.

reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." *Id.* at 37(b)(2)(C).

> **2.      OneBeacon's failure to comply with the Court's August 2, 2016 Order has caused Powell to incur significant costs and expenses**

On August 2, 2016, the Court ordered OneBeacon to complete its document production by August 19. The Court plainly stated on the record that OneBeacon "has committed to having production *of all documents* on August 19th . . . *and so I'm going to hold [OneBeacon] to that* and expect that you'll get them by those dates." (Doc. 97, August 2, 2016 Hr'g Tr. p. 7 (emphasis added)). The docket entry likewise states that OneBeacon "*will produce docs* by 8/19/16[.]" (August 2, 2016 Minute Entry (emphasis added)). There is no ambiguity. The Court ordered OneBeacon to complete its document production by August 19.

There is also no ambiguity over whether OneBeacon violated that order. It did. Since August 19th, OneBeacon has produced:

- 95,986 pages of Ms. Michaud's documents on August 24;

- 23,951 more pages of Ms. Michaud's documents on September 15;

- documents from Mr. Loxley on November 11;

- Mr. Gaines' desk file on December 16; and

- 7,397 pages and counting of Mr. Ryan's and Ms. Green's documents on December 9, 20, 23, and 27.

These are *all* documents that should have been collected and produced *before* August 19th. There is no explanation whatsoever as to why Ms. Michaud's documents were not fully produced before August 19th. If OneBeacon had questioned other custodians besides Ms.

Michaud and conducted a reasonable investigation into its responses to Powell's RFPs, it would have identified Mr. Loxley's documents, Mr. Gaines' desk file, and Mr. Ryan's and Ms. Green's documents that do not involve Ms. Michaud. *See Bratka v. Anheuser-Busch Co.*, 164 F.R.D. 448, 461 (S.D. Ohio 1995) (trial counsel has duty to oversee client's document collection and review efforts); *Brown v. Tellermate Holdings Ltd.*, No. 2:11-cv-1122, 2014 U.S. Dist. LEXIS 90123, at *47-48, 74 (S.D. Ohio July 1, 2014). And as Powell explains above, there are even more outstanding documents that OneBeacon has failed to collect and produce.

OneBeacon was ordered to complete its document production almost five months ago. It did not, and instead OneBeacon's failure caused Powell to go through the long and costly process of attending multiple court hearings and conferences, obtaining and reviewing affidavit testimony, scheduling and taking depositions, and then filing this motion—all to obtain documents that OneBeacon should have searched for, collected, and produced on its own in accordance with the Court's Order. OneBeacon's unjustified failure to follow the Court's August 2, 2016 Order has caused Powell to incur significant expenses and fees, and an award of those expenses and fees would be just.

## III. CONCLUSION

For all the reasons stated above, the Court should grant Powell's Motion to Compel.

Respectfully submitted,

/s/ *Daniel J. Buckley*
Daniel J. Buckley (0003772), *Trial Attorney*
Joseph M. Brunner (0085485)
Katie G. Barnes (0085257)
David F. Hine (0085568)
Vorys, Sater, Seymour and Pease LLP
301 East Fourth Street
Suite 3500, Great American Tower
Cincinnati, OH 45202
Tel: (513) 723-4002
Fax: (513) 852-7819

Email: djbuckley@vorys.com
jmbrunner@vorys.com
kgbarnes@vorys.com
dfhine@vorys.com

*Counsel for Plaintiff The William Powell Company*

## CERTIFICATE OF SERVICE

I certify that on January 13, 2017 I electronically filed, using the Court's CM/ECF

system, the foregoing Notice of Filing. The CM/ECF system sent notice of this filing to the

below counsel of record, who may access this filing through the CM/ECF system:

Richard M. Garner
Sunny L. Horacek
Collins Roche Utley & Garner, LLC
655 Metro Place South, Suite 200
Dublin, OH 43017
rgarner@cruglaw.com
shoracek@cruglaw.com

*Counsel for Defendant OneBeacon Insurance Company*

/s/ *Daniel J. Buckley*
Daniel J. Buckley (0003772)