# EXHIBIT F

CIN-TEL CORPORATION

PH:   513-621-7723                                                                 FX:   513-263-9023

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

WESTERN DIVISION

_____

| | |
|---|---|
| THE WILLIAM POWELL COMPANY, | : |
| Plaintiff, | : |
| vs. | :   CASE NO.: |
| NATIONAL INDEMNITY COMPANY, et al., | :   1:14-CV-00807 |
| Defendants. | : |

_____

TELEPHONIC DEPOSITION OF:   GRAHAM LOXLEY

December 8, 2016

11:01 a.m.

REPORTED BY:

Renee Rogers, Registered Professional Reporter

---

Page 2

```
 1           UNITED STATES DISTRICT COURT
 2            SOUTHERN DISTRICT OF OHIO
 3               WESTERN DIVISION
 4               _____
 5   THE WILLIAM POWELL COMPANY,        :
 6              Plaintiff,              :
 7   vs.                    : CASE NO.:
 8   NATIONAL INDEMNITY COMPANY, et al.,  :  1:14-CV-00807
 9              Defendants.              :
10               _____
11
12      Telephonic deposition of GRAHAM LOXLEY, a witness
13   herein, taken by the Plaintiff as upon
14   cross-examination pursuant to notice and stipulations
15   hereinafter set forth, at the offices of Vorys, Sater,
16   Seymour and Pease, LLP, 301 East Fourth Street, Suite
17   3500, Cincinnati, Ohio, at 11:01 a.m. on Thursday,
18   December 8, 2016, before Renee Rogers, Registered
19   Professional Reporter and notary public within and for
20   the state of Ohio.
21               _____
22             Cin-Tel Corporation
            810 Sycamore Street, Suite 103
23             Cincinnati, Ohio  45202
                 (513) 621-7723
24
```

---

Page 3

```
 1   APPEARANCES:
 2   On behalf of the Plaintiff:
 3   DAVID F. HINE, ESQ.
     JOSEPH M. BRUNNER, ESQ.
 4   KATHERINE G. BARNES, ESQ.
     Vorys, Sater, Seymour and Pease, LLP
 5   3500 Great American Tower
     301 East Fourth Street
 6   Cincinnati, Ohio  45202
     (513) 723-4000
 7   dfhine@vorys.com
     jmbrunner@vorys.com
 8   kgbarnes@vorys.com
 9
     On behalf of Defendant OneBeacon Insurance Company (by
10   telephone):
11   RICHARD M. GARNER, ESQ.
     Collins, Roche, Utley & Garner, LLC
12   655 Metro Place South, Suite 200
     Dublin, Ohio  43017
13   (614) 901-9600
     rgarner@cruglaw.com
14
15
16
17
18
19
20
21
22
23
24
```

---

Page 4

```
 1                 S T I P U L A T I O N S
 2
 3       It is stipulated by and among counsel for the
 4   respective parties that the telephonic deposition of
 5   Graham Loxley may be taken at this time by the
 6   Plaintiff as upon cross-examination pursuant to the
 7   Federal Rules of Civil Procedure and pursuant to
 8   Notice and agreement of counsel as to the time and
 9   place; that the deposition may be taken in stenotype
10   by the notary public-court reporter and transcribed by
11   her out of the presence of the witness; that the
12   deposition is to be submitted to the deponent for his
13   examination and signature, and that the signature may
14   be affixed outside the presence of the notary
15   public-court reporter.
16
17
18
19
20
21
22
23
24
```

---

Page 5

```
 1                    I N D E X
 2   Witness
 3   GRAHAM LOXLEY                              Page
 4     Cross by Mr. Hine                           6
 5
 6                   E X H I B I T S
 7
 8           (No exhibits were marked.)
 9
10
...
24
```

CIN-TEL CORPORATION

PH: 513-621-7723 FX: 513-263-9023

Page 6

1  MR. HINE: We are on the record.
2  Good morning, Mr. Loxley. Sorry. It's
3  morning for me. It's afternoon for you.
4  GRAHAM LOXLEY,
5  having acknowledged that his testimony will be
6  given as if under oath, was examined and testified
7  as follows:
8  CROSS-EXAMINATION
9  BY MR. HINE:
10  Q  If you would, please state your name
11  for the record.
12  A  Certainly. It's Graham Loxley.
13  Q  Okay. And, Mr. Loxley, we have a
14  court reporter with us today on our end of the
15  line who's going to be transcribing everything
16  that I say and that you say.
17  She cannot administer an oath over
18  the telephone, but your attorney has reached an
19  agreement with us that this testimony will be
20  offered under oath.
21  Do you understand, then, that
22  everything you say has to be true and honest and
23  that your statements will be taken as if they're
24  under oath?

Page 7

1  A  I understand, yes.
2  Q  Wonderful. Mr. Loxley, have you
3  ever been deposed before?
4  A  I have, yes.
5  Q  Okay. So you understand, then, as I
6  said, that the court reporter will be transcribing
7  what we say, and we need verbal responses
8  throughout the deposition then, correct?
9  A  Yes, I understand.
10  Q  Okay. And if I at any point ask a
11  question that's unclear, just let me know, and
12  I'll try to ask it in a different way.
13  If you don't ask me to restate the
14  question, though, I'm going to assume that you
15  understood the question. Is that fair?
16  A  Okay. Thank you.
17  Q  Mr. Loxley, if you could, could you
18  tell me where you're sitting right now.
19  A  I'm sitting in a meeting room, a
20  boardroom in my office.
21  Q  And your office is located in
22  London; is that correct?
23  A  That's correct.
24  Q  Do you have any documents or a

Page 8

1  computer in front of you right now?
2  A  I have six pieces of paper.
3  Q  Can you tell me what those six
4  pieces of paper are.
5  A  I can. I have my declaration which
6  was submitted in this case, which is three pages.
7  I have the supplemental declaration also submitted
8  in this case, which is one page. I have a printed
9  page which is an e-mail with the dial-in details
10  for this call. And I have a plain piece of note
11  paper which I've just written your name on.
12  Q  Wonderful. If you could just set
13  those aside for me. I understand if you're going
14  to be taking notes, I don't think I have any
15  objection to that at all, but with regard to the
16  declarations, if you could set those aside, I
17  would prefer to ask you questions from your memory
18  today rather than have you review documents.
19  A  Okay. Understood.
20  Q  Mr. Loxley, did you do anything to
21  prepare for this deposition?
22  A  I reread my declaration and I had a
23  telephone conversation with Mr. Garner yesterday.
24  Q  Okay. And about how long was that

Page 9

1  telephone conversation with Mr. Garner?
2  A  I think it was a little over an
3  hour.
4  Q  And other than the declaration that
5  you already said you reviewed, did you review any
6  other documents in preparation for today's
7  deposition?
8  A  No, I did not.
9  Q  Okay. With regard to that
10  declaration -- and I say declaration, but as you
11  already alluded to, you have actually executed two
12  declarations in this case, correct?
13  A  That's correct.
14  Q  Did you draft or write either of
15  those declarations?
16  A  I was provided with an outline which
17  I edited.
18  Q  Okay. Do you know who -- well, from
19  who did you receive the outline?
20  A  I got it from Mr. Garner or one of
21  his colleagues.
22  Q  Okay. But from counsel?
23  A  Correct.
24  Q  All right. And you said that you

CIN-TEL CORPORATION

PH: 513-621-7723                                            FX: 513-263-9023

Page 10

1  edited the outline yourself, correct?
2      A  That's correct.
3      Q  And you reviewed what ultimately
4  became the finished product of the declaration?
5      A  I did.
6      Q  And you believe that when you signed
7  the declaration it was accurate, correct?
8      A  Correct.
9      Q  And having reviewed the declaration,
10 in fact, both declarations, since signing them, do
11 you have any reason to believe, as you sit here
12 today, that they are not accurate?
13     A  I've got no reason to believe
14 they're not accurate.
15     Q  Okay.  I'd like to move on to your
16 job description, and in particular, your job as it
17 pertains to Powell.  But first, generally, if you
18 could state for the record what your title is and
19 with whom you're employed.
20     A  Okay.  I'm the head of claims for
21 Armour Risk Management Limited based here in
22 London.
23     Q  And what do you do as the head of
24 claims for Armour?

Page 11

1      A  I have a team of claims personnel
2  who work for me, and they are responsible for
3  adjusting claims on the various portfolios that we
4  have under management, some of which are owned by
5  Armour, and some of which are managed by other
6  parties under SLAs.
7      Q  When you say SLAs, can you tell me
8  what that means.
9      A  I apologize.  Service level
10 agreements.
11     Q  Sure.  Do any of the individuals who
12 you manage have any involvement with the Powell
13 account?
14     A  Specifically with the Powell
15 account, no.
16     Q  Do any of them generally have any
17 involvement with the Powell account?
18     A  So one of my colleagues will receive
19 data which is commingled data on multiple
20 policyholders which fall under the NICO
21 reinsurance cover on the OneBeacon portfolio.
22 So he would have had -- he would have seen
23 financial data in relation to William Powell in
24 that regard.

Page 12

1      Q  Okay.  And who is -- can you
2  identify that gentleman for me.
3      A  His name is Alan Staveley.
4      Q  Thank you.  Can you spell that,
5  actually, for us.
6      A  A-L-A-N, and it's S-T-A-V-E-L-E-Y.
7      Q  Okay.  Now, that financial data that
8  I understand is commingled and pertains to other
9  clients other than -- or other accounts other than
10 the Powell account, it would contain financial
11 data pertaining to the Powell account, correct?
12     A  Correct.
13     Q  And did you ever receive that
14 information?
15     A  I do receive that information,
16 again, in that commingled form, yes.
17     Q  From whom do you receive that
18 information?
19     A  From Resolute.
20     Q  We'll get to that in a second, I
21 suppose.  Well, when you say Resolute, maybe I'm
22 making an assumption I shouldn't here.  Is that
23 information e-mailed to you?
24     A  It is e-mail, yes.

Page 13

1      Q  Okay.  Who at Resolute provides that
2  information to you?  Who sends that e-mail to
3  you?
4      A  Oh, as I sit here, I don't recall.
5      Q  Okay.  Do you know how often you
6  receive those e-mails?
7      A  We get monthly financial data
8  provided.
9      Q  And you continue to get monthly
10 financial data relating to Powell?
11     A  Across the portfolio relating to all
12 of the various accounts --
13     Q  Including Powell?
14     A  -- which would include Powell.
15     Q  Yeah.  But you do continue to
16 receive those e-mails?
17     A  Yes.
18     Q  Okay.  And since when have you, I
19 suppose, received those e-mails?
20     A  To the best of my recollection, it
21 would be from January of 2015.
22     Q  Until the present?
23     A  Correct.
24     Q  Okay.  And just for clarification,

WWW.CINTELCORPORATION.COM                    E-Mail    CINTELCO@GMAIL.COM

CIN-TEL CORPORATION

PH: 513-621-7723   FX: 513-263-9023

Page 14

1  this information that we're talking about, this
2  financial data, is that -- does that come in the
3  form of an attachment to an e-mail?  Is it a
4  spreadsheet, or a Word document?
5       A   It's in spreadsheet form attached to
6  an e-mail.
7       Q   Okay.  Thank you.  Now, I think you
8  said earlier that you were the head of claims.
9  What sort of responsibilities do you have as the
10 head of claims?
11      A   That's quite a broad question.  Can
12 you perhaps narrow it, because I could be here
13 some time giving you all the different duties that
14 I have.
15      Q   Let's narrow it to the Powell case.
16 What responsibilities do you have as your job
17 description pertains to the Powell case?
18      A   Okay.  Thank you.  That's much more
19 helpful.
20      Q   Sorry.
21      A   So with regard to the -- if I can
22 talk about the OneBeacon portfolio which we've now
23 taken over.  So my primary responsibility in that
24 regard is to work with Resolute to monitor the

Page 15

1  erosion of the NICO reinsurance coverage which is
2  in place protecting that portfolio.  So I'm
3  looking at the amount of throughput of value which
4  is eroding that NICO insurance coverage.
5       Q   Okay.  And what do you do to monitor
6  that erosion?
7       A   So the data that I was talking about
8  that we receive, we obviously see what is going
9  through by way of cash flow.  We get an indication
10 of what is coming through by way of reinsurance
11 recovery so we can see what is eroding against the
12 cover.
13          And then I will speak with Resolute,
14 and they will generally update me on any
15 significant areas of activity or concern which may
16 be driving that erosion.
17      Q   Okay.  In your -- in the first
18 declaration that you executed in this case, you
19 indicated that you had the responsibility for
20 overseeing the claims handling contract in place
21 with Resolute Management Company in respect of the
22 former OneBeacon portfolio.  That's what you're
23 discussing here; is that correct?
24      A   That's correct, yeah.

Page 16

1       Q   And then you also mentioned
2  monitoring erosion of the National Indemnity
3  Company reinsurance covering this portfolio,
4  including developments in underlying claims and
5  coverage litigation.
6           Tell me about that last part there,
7  if you could.  What monitoring would you do of
8  developments in underlying claims in coverage
9  litigation?
10      A   Let me describe that perhaps with a
11 couple of examples --
12      Q   Sure.
13      A   -- if I can.  So, for instance,
14 there may be a situation where an entity has
15 alleged they have coverage under OneBeacon
16 policies, and that is in dispute.  And obviously
17 if there is resulting litigation in that regard,
18 if that goes -- goes in the favor of OneBeacon,
19 then there will be no coverage.  If it goes
20 against, then there could be significant
21 exposure.
22          So something like that would be
23 brought to my attention as being a potential
24 risk.  And if there was an adverse development in

Page 17

1  the litigation, then that would be a greater
2  exposure under the cover.
3       Q   Okay.  So do you monitor any
4  individual claims?  And to keep this in the
5  context of the Powell account, which I assume you
6  understand pertains to asbestos claims that were
7  filed against William Powell Company, do you
8  monitor any specific asbestos claims that were
9  filed against The William Powell Company?
10      A   I do not, no.
11      Q   Do you receive any updates regarding
12 any of those claims?
13      A   I do not, no.
14      Q   Okay.  Do you play any part in
15 determining how Resolute handles claims that were
16 filed against The William Powell Company?
17      A   No.  Not at all.
18      Q   Okay.  So I suppose what -- if you
19 could tell me, what is the purpose of your
20 monitoring the claims?
21      A   I think it's -- one of the primary
22 reasons would be to be able to report how quickly
23 the cover is eroding so that we are prepared
24 should the cover erode more quickly than we

5 (Pages 14 to 17)

WWW.CINTELCORPORATION.COM       E-Mail   CINTELCO@GMAIL.COM

CIN-TEL CORPORATION

PH: 513-621-7723　　　　　　　　　　　　　　　　　　　　　　FX: 513-263-9023

Page 18

1  anticipate, that we can -- we can deal with that
2  eventuality.
3       Q   Okay.
4       A   That would be the primary.  If I
5  may, I'll give you a secondary, which is obviously
6  we provide some -- some oversight, to the extent
7  that we're able, to make sure that Resolute is
8  obviously not seeking to erode that coverage any
9  quicker than they should.  So by alerting me to
10 the larger item, I can at least understand what
11 their strategy is in dealing with those matters.
12      Q   Excellent.  Okay.  Thank you.  In
13 your role as the head of claims, you have already
14 mentioned certain financial data that you've
15 looked at.
16          What other -- I would like to get an
17 understanding, I suppose, of what kinds of
18 documents you look at as it pertains to Powell.
19 So do you receive any memos relating to the Powell
20 account?
21      A   I have been copied on some e-mails
22 in the past.  I think the majority of those were
23 probably more than 18 months ago.  And I don't
24 recall the content of those e-mails as I sit

Page 19

1  here.
2          I know there were a number of
3  e-mails which related to one particular claim, and
4  they were -- they were sent to me due to the fact
5  that there was some involvement in the process
6  that we went through to secure the transfer of the
7  OneBeacon portfolio to Armour.  It was subject to
8  some litigation, and there was some involvement in
9  that particular claim in that regard is why they
10 were sent to me.
11      Q   Okay.  Let's back up a little bit.
12 I think my initial question was do you receive any
13 memos.  And when I say memos, I don't mean -- I
14 don't mean e-mails.  I mean just internal
15 documents or memoranda that someone drafts about
16 the Powell account.
17      A   Oh, no.
18      Q   No.  Okay.  And then with regard to
19 the e-mails, you said that you do -- you have
20 received -- you've been copied on some e-mails
21 relating to the Powell account, but the majority
22 of those, you said, were 18 months ago; is that
23 correct?
24      A   They would be probably -- probably

Page 20

1  around 18 months ago.
2       Q   Okay.
3       A   It would be a -- I think it was a
4  number of e-mails where they were either from or
5  to Darilyn Michaud.  And then the other e-mails,
6  the ones that I alluded to in my declaration, I
7  can't remember the name of the claimant, but they
8  would be the other e-mails that I have, probably
9  eight or 10 of them.
10      Q   Okay.  And that -- what you're
11 discussing now, that's exclusive of the e-mails
12 that you already discussed that you receive on a
13 monthly basis with financial data that pertains to
14 Powell, correct?
15      A   Correct.
16      Q   How did you determine -- well, I'll
17 get to that in a minute.  Setting aside memos and
18 e-mails, do you receive any other kinds of
19 documents, or do you generate any other kinds of
20 documents that pertain to the Powell account?
21      A   No.
22      Q   Okay.  No internal policies or
23 procedures at Armour that would apply to how the
24 Powell account is to be managed?

Page 21

1       A   No.
2       Q   Okay.  Do you ever take handwritten
3  notes of any kind?  I believe you -- you
4  referenced earlier on the call that you were
5  actually taking handwritten notes during this
6  deposition, correct?
7       A   I had simply written your name
8  down.  I haven't taken any other notes.
9       Q   Okay.  Is it your practice, though,
10 to take notes from time to time?
11      A   From time to time when the need
12 arises, yes.
13      Q   Okay.  Mr. Loxley, do you keep a
14 file relating to the Powell account?
15      A   No.  I don't have any kind of file.
16 I have a folder in my e-mails in which I place my
17 -- any -- any specific e-mails relating to Powell
18 would go into that folder.
19      Q   So every e-mail you get that relates
20 to Powell goes into that folder?
21      A   Correct.
22      Q   Okay.  Off the top of your head, do
23 you know how many e-mails are in there?
24      A   No.

WWW.CINTELCORPORATION.COM　　　　　　　E-Mail　　CINTELCO@GMAIL.COM

CIN-TEL CORPORATION

PH: 513-621-7723                                                FX: 513-263-9023

Page 22

1   Q  Can you give me a ballpark at all?
2  I mean, is it -- is it 10, or is it 20?  Is it
3  more than that?
4       A  If I was to guess, I would say there
5  are probably around eight or 10, which are the
6  e-mails I was speaking about which are either
7  generated by or copied to or sent to Darilyn
8  Michaud.  There's probably a similar number in
9  relation to that single claimant that I was
10 speaking about.
11      Q  So is the e-mails that you have --
12      A  And then there --
13      Q  I'm sorry.  I didn't mean to
14 interrupt you.  Go ahead.
15      A  Okay.  And then there are -- and
16 this is where it gets a little difficult, because
17 there are a large number of e-mails in relation to
18 the making of the declaration and the scheduling
19 of this deposition today, so.  And that's where
20 I'm -- I'm not sure how many of those there are,
21 but there's a -- there's a fair few of those.
22      Q  Okay.  What do you do with the
23 monthly e-mails that you discussed earlier?
24      A  They're filed separately.

Page 23

1   Q  Okay.  But you do maintain --
2       A  They're not --
3       Q  -- those?
4       A  -- specific to Powell.
5       Q  I apologize.  I didn't mean to speak
6  over you.  You do maintain those e-mails, though,
7  correct?
8       A  Correct.
9       Q  Okay.  And with regard to the
10 Powell-specific e-mails that you put in a folder,
11 you believe that other than the e-mails that
12 pertain to the scheduling of this deposition,
13 those e-mails were drafted by Darilyn Michaud?
14      A  Drafted by, or she was copied on the
15 e-mails, or they were to her.
16      Q  Okay.  Have you ever received an
17 e-mail from Darilyn Michaud?
18           MR. HINE:  Someone's actually typing
19      on the line.  Is that --
20           MR. GARNER:  That's me taking
21      notes.  I can mute it.  That's not a
22      problem.  I took you off because I
23      wasn't sure where you were going with
24      that.  Go ahead.

Page 24

1   Q  Have you ever received an e-mail
2  from Darilyn Michaud?
3       A  I would have to check if any of
4  those e-mails were directly from her to me.  I
5  don't recall as I sit here.
6       Q  Okay.  But you said that you don't
7  have a physical file or a desk file of some sort
8  relating to documents pertaining to Powell; is
9  that correct?
10      A  That's correct.
11      Q  Do you have access at your workplace
12 at Armour to a shared network space?
13           MR. GARNER:  In general, or to
14      William Powell?  What are we talking
15      about here, David?
16           MR. HINE:  In general, first.
17      A  Yes.
18      Q  Are there any documents on that
19 shared network space that pertain to the Powell
20 account?
21      A  The only documents I can think of
22 that I would be aware of would be the general
23 commingled financial data that we were speaking
24 about before.

Page 25

1   Q  Okay.  Have you ever looked at that
2  shared network space for documents relating to
3  Powell?
4       A  Not specifically, no.
5       Q  And do you know who has access to
6  that shared network space?
7       A  It would -- I know it would be the
8  individuals within the claims area that
9  specifically work on the OneBeacon business.  I'm
10 not sure.  Beyond that, I'm guessing there may be
11 IT access.  I would have to check.
12      Q  Okay.  And that's fine.  Do you save
13 any documents relating to Powell to your desktop
14 or laptop computer?
15      A  No.  Absolutely not.
16      Q  Okay.  All right.  I'd like to talk
17 quickly about your communications as they pertain
18 to the Powell account.
19           You say in your declaration that you
20 communicate information concerning the Powell
21 account using e-mail and oral communications.
22           If we could talk about the e-mail
23 aspect of that first.  With whom do you e-mail
24 about the Powell account?

WWW.CINTELCORPORATION.COM              E-Mail   CINTELCO@GMAIL.COM

CIN-TEL CORPORATION

PH: 513-621-7723                                    FX: 513-263-9023

Page 26

1    A  So, historically, I would only have
2  e-mailed in relation to those e-mails that I was
3  discussing earlier.  I believe I may have
4  communicated with a couple of individuals at
5  OneBeacon in relation to some of those e-mails.
6         And any other communications would
7  be by e-mail with either -- well, it would be --
8  it would be either Mr. Garner or one of his
9  colleagues.
10    Q  Okay.  You said you may have
11 communicated with some people at OneBeacon.  Can
12 you identify who at OneBeacon you would have
13 communicated with?
14    A  I think that name is in my
15 declaration.  Can I refer to my declaration?
16    Q  Well --
17    A  It's Joe -- Joe Schmitt is one of
18 them.  And I think there were two that I
19 identified, and I can't remember who the other one
20 was.
21    Q  Sure.  Let me see if I can jog your
22 memory.  There's a paragraph where you say you
23 communicate with Tom Ryan, Brian Bendig, and John
24 Matosky at Resolute Management with regard to

Page 27

1  high-level summary claims data and coverage
2  litigation updates in respect to the William
3  Powell account.  I have previously communicated
4  with James Jordan and Joseph Schmitt at OneBeacon
5  in respect to the William Powell account.  Does
6  that --
7     A  Thank you.  They're the two
8  individuals.
9     Q  Okay.  So James Jordan and Joseph
10 Schmitt at OneBeacon you would have communicated
11 with; is that correct?
12    A  Correct.
13    Q  Would those communications have been
14 by e-mail?
15    A  Yes.
16    Q  Okay.  Did you ever send any e-mails
17 to Joe Jordan -- James Jordan or Joseph Schmitt?
18    A  I would have to -- I would have to
19 check to confirm that.  Again, it would be in
20 relation to the single case that I identified
21 where it had a bearing on the transfer of the
22 business to Armour.
23    Q  Okay.  But as you sit here today, is
24 it your belief that you have sent an e-mail

Page 28

1  relating to the Powell account to either Joe
2  Schmitt or James Jordan?
3     A  I seem to recall that I did.  I
4  would have to check to be sure.
5     Q  Okay.
6     A  But I think I did.
7     Q  Do you believe that you've received
8  e-mails from Joe Schmitt or James Jordan relating
9  to the Powell account?
10    A  I believe I may have been copied on
11 e-mails.  Whether they were directed directly to
12 me or whether I was copied on them, again, I would
13 have to check.
14    Q  But those e-mails were authored by
15 James Jordan or Joe Schmitt?
16    A  To the best of my recollection, yes.
17    Q  Okay.  Are you aware of any other
18 OneBeacon employees with whom you would have ever
19 e-mailed?
20    A  No.
21    Q  Okay.  And then part of the
22 paragraph that I read in there, you also indicated
23 that you communicated with Tom Ryan, Brian Bendig,
24 and John Matosky at Resolute Management Company;

Page 29

1  is that correct?
2     A  That's correct.
3     Q  Is there anybody else from Resolute
4  who you would have communicated with about the
5  Powell account -- or who you do communicate with,
6  I should say?
7     A  That I do communicate with, no.  I
8  don't recall anyone else that I would have spoken
9  to William Powell about, other than those I've
10 identified.
11    Q  Okay.  So I want to clarify
12 something, I guess.  When did you assume
13 responsibility for the Powell account at Armour?
14    A  If I may, I assumed responsibility
15 for oversight of the service agreement --
16    Q  Certainly.
17    A  -- as opposed to the Powell
18 account.  The Powell account just happens to be
19 one of many that falls within that.
20    Q  I apologize.
21    A  But that -- that became effective
22 from the beginning of January of 2015.
23    Q  Okay.  So prior to January of 2015,
24 would there have been any reason for you to be

8 (Pages 26 to 29)

WWW.CINTELCORPORATION.COM              E-Mail    CINTELCO@GMAIL.COM

CIN-TEL CORPORATION

PH: 513-621-7723                                    FX: 513-263-9023

Page 30

1  copied on any e-mails relating to Powell?
2       A  No.
3       Q  Okay. With regard to Tom Ryan at
4  Resolute, have you ever engaged in any e-mail
5  correspondence with Tom Ryan about Powell?
6       A  No.
7       Q  How about Brian Bendig?
8       A  No.
9       Q  And John Matosky?
10      A  Not that I recall, no.
11      Q  Have you ever done anything to
12 search your e-mails to confirm whether that's, in
13 fact, correct?
14      A  I looked through the e-mails that
15 were in the folder that I mentioned before.
16      Q  Okay. And I think I may have asked
17 this, but do you save every e-mail you receive
18 pertaining to Powell?
19      A  Yes.
20      Q  So do you believe you've discussed
21 all of the written e-mails that you've sent or
22 received pertaining to the Powell account already?
23      A  I believe so, yes.
24      Q  Okay. I want to talk about oral

Page 31

1  communications.
2       A  Okay.
3       Q  How often do you communicate with
4  Resolute about the Powell account?
5       A  I speak with Resolute quarterly,
6  generally about the various accounts, and on
7  occasions William Powell may be discussed.
8       Q  Okay. And with whom are you
9  discussing those -- or who are on those calls, I
10 suppose?
11      A  I'm sorry. Could you repeat that.
12      Q  Sure. I should clarify, actually.
13 Are the communications in person, or by telephone?
14      A  The communications are in person.
15      Q  Okay. Do you travel to the United
16 States, or do they travel to London?
17      A  I travel to the United States.
18      Q  So on a quarterly basis you travel
19 to the United States to meet with Resolute about
20 the management of the OneBeacon contract; is that
21 correct?
22      A  Correct. Correct.
23      Q  Okay. And with whom do you meet
24 during those meetings?

Page 32

1       A  Tom Ryan, Brian Bendig, Robert
2  McCarthy, and from time to time other members of
3  Tom Ryan's team, as appropriate for whatever we're
4  discussing.
5       Q  Who is Robert McCarthy?
6       A  He's one of the senior claims
7  managers at Resolute.
8       Q  Okay. He is not identified in your
9  declaration. Is there a reason -- did you look at
10 something after executing the declaration that
11 reminded you that you also spoke with Robert
12 McCarthy?
13      A  No. I don't recall ever speaking to
14 Robert McCarthy about the Powell case.
15      Q  Oh, okay. That's fair.
16      A  He might have been in the room when
17 it was discussed, but he -- I don't believe it's a
18 case he's got any involvement with.
19      Q  I understand. That was my -- that
20 was my lack of clarity.
21         Now, you also say in your
22 declaration that there are times when you may be
23 required to communicate material developments to
24 Armour senior management. Has that ever happened

Page 33

1  with the Powell case?
2          MR. GARNER: All right. At this
3       point in time, Graham, I want to make
4       sure that we're clear about a couple
5       things, so give me just a second,
6       David.
7          We're having you appear here on
8       behalf of OneBeacon as a witness that's
9       being produced for documents and so
10      forth, but I want you just to be careful
11      about information that you share about
12      your own organization, which is not a
13      party to this litigation, which has not
14      been involved in these things.
15         So use your discretion as you go
16      through this series of questions, which
17      will probably be short, because Mr. Hine
18      is not interested in going through too
19      many details, but I think is just trying
20      to get some background information here,
21      okay?
22      Q  Yeah. To be clear --
23         MR. HINE: Thank you, Rich.
24      Q  To be clear, what I'm trying to do

9 (Pages 30 to 33)

WWW.CINTELCORPORATION.COM                E-Mail    CINTELCO@GMAIL.COM

CIN-TEL CORPORATION

PH: 513-621-7723                                      FX: 513-263-9023

Page 34

1  is just figure out -- you reference in your
2  declaration that in the event of material
3  developments, you may be required to communicate
4  such developments to Armour senior management.
5      I'm just trying to figure out if
6  there have ever been any material developments
7  that you have communicated to Armour senior
8  management.
9      A  Can you just clarify if you mean in
10 respect to William Powell, or --
11     Q  Yes.
12     A  -- on other matters in the
13 portfolio?
14     Q  Yes.
15     MR. GARNER:  William Powell would
16 only be the thing that we'd be talking
17 about here today, okay, Graham?  So if
18 there's any others, don't go into any
19 others.
20     A  Okay.  So the answer to my question
21 -- to your question is no.
22     Q  For the meetings that you have, the
23 quarterly meetings with Resolute, do you either
24 prepare or receive any written agendas?

Page 35

1      A  Yes.  I prepare an agenda.
2      Q  Do you save those agendas?
3      A  Yes.
4      Q  Do you take any notes during your
5  meetings with Resolute?
6      A  Occasionally.
7      Q  Do you save your notes?
8      A  Yes.
9      Q  Other than the quarterly meetings
10 that you've already mentioned, do you have any
11 other oral communications with anybody at Resolute
12 about the Powell account?
13     A  No.
14     Q  How about people at OneBeacon?
15     A  No.
16     Q  Do you have any oral or written
17 communications with anybody at National Indemnity
18 Company, or NICO, pertaining to the Powell
19 account?
20     A  No.
21     Q  Give me one moment here.
22     A  Sure.
23     Q  Sorry about that, Mr. Loxley.
24     Have you ever been instructed to

Page 36

1  preserve documents or collect any documents
2  relating to Powell?
3      A  Only the e-mails in relation to this
4  latest discovery request.  Nothing else.
5      Q  Okay.  And when were you asked to do
6  that?
7      A  I would have to -- I would have to
8  check that.  It would have been I think early
9  October -- end of September, early October,
10 maybe.  I would have to check.
11     Q  Okay.  So in June or July of this
12 year nobody asked you to collect any e-mails?
13     A  To the best of my recollection, no.
14 But, again, I would have to check.  I can't
15 remember exactly when I was asked.
16     Q  Okay.  Has anyone ever asked you to
17 collect any notes or agendas that you have
18 relating to Powell?
19     A  No.
20     MR. HINE:  Mr. Loxley, I think
21 that's everything.
22     THE WITNESS:  All right.
23     MR. GARNER:  We'll reserve the right
24 to read.  Other than that, Graham, thank

Page 37

1  you very much.
2      (Deposition concluded at 11:40 a.m.)

10 (Pages 34 to 37)

WWW.CINTELCORPORATION.COM                E-Mail   CINTELCO@GMAIL.COM

CIN-TEL CORPORATION

PH: 513-621-7723     FX: 513-263-9023

Page 38

1         A C K N O W L E D G E M E N T
2
3    STATE OF OHIO     :
4    COUNTY OF HAMILTON :
5
6       I, Graham Loxley, have read the transcript of
7    my testimony, given as if under oath, on December
8    8, 2016.
9       Having had the opportunity to note any
10   necessary corrections of my testimony on the
11   errata page, I hereby certify that the
12   above-mentioned transcript is a true and complete
13   record of my testimony.
14
15
16             _____
17                  GRAHAM LOXLEY
18
19
20
21
22
23
24

Page 39

1             C E R T I F I C A T E
2
3       I, Renee Rogers, a notary public within
4    and for the State of Ohio, do hereby certify that
5    the within 38 pages were taken by me in stenotypy
6    and transcribed by computer-aided transcription,
7    and that this is a true, accurate, and complete
8    transcription of the same.
9
10            _____
11   My commission expires:     Renee Rogers
12   April 13, 2021      Notary Public-State of Ohio
13
14
15
16
17
18
19
20
21
22
23
24

11 (Pages 38 to 39)

WWW.CINTELCORPORATION.COM        E-Mail   CINTELCO@GMAIL.COM

Case: 1:14-cv-00807-SJD-KLL Doc #: 98-6 Filed: 01/13/17 Page: 13 of 18 PAGEID #: 1816

CIN-TEL CORPORATION

PH: 513-621-7723                                      FX: 513-263-9023

Page 40

**A**

A-L-A-N 12:6
a.m 1:16 2:17 37:2
able 17:22 18:7
above-mentioned 38:12
Absolutely 25:15
access 24:11 25:5 25:11
account 11:13,15 11:17 12:10,11 17:5 18:20 19:16 19:21 20:20,24 21:14 24:20 25:18 25:21,24 27:3,5 28:1,9 29:5,13,18 29:18 30:22 31:4 35:12,19
accounts 12:9 13:12 31:6
accurate 10:7,12,14 39:7
acknowledged 6:5
activity 15:15
adjusting 11:3
administer 6:17
adverse 16:24
affixed 4:14
afternoon 6:3
agenda 35:1
agendas 34:24 35:2 36:17
ago 18:23 19:22 20:1
agreement 4:8 6:19 29:15
agreements 11:10
ahead 22:14 23:24
al 1:9 2:8
Alan 12:3
alerting 18:9
alleged 16:15
alluded 9:11 20:6
American 3:5

amount 15:3
answer 34:20
anticipate 18:1
anybody 29:3 35:11,17
apologize 11:9 23:5 29:20
appear 33:7
APPEARANCES 3:1
apply 20:23
appropriate 32:3
April 39:12
area 25:8
areas 15:15
arises 21:12
Armour 10:21,24 11:5 19:7 20:23 24:12 27:22 29:13 32:24 34:4,7
asbestos 17:6,8
aside 8:13,16 20:17
asked 30:16 36:5 36:12,15,16
aspect 25:23
assume 7:14 17:5 29:12
assumed 29:14
assumption 12:22
attached 14:5
attachment 14:3
attention 16:23
attorney 6:18
authored 28:14
aware 24:22 28:17

**B**

B 5:6
back 19:11
background 33:20
ballpark 22:1
BARNES 3:4
based 10:21
basis 20:13 31:18

bearing 27:21
beginning 29:22
behalf 3:2,9 33:8
belief 27:24
believe 10:6,11,13 21:3 23:11 26:3 28:7,10 30:20,23 32:17
Bendig 26:23 28:23 30:7 32:1
best 13:20 28:16 36:13
Beyond 25:10
bit 19:11
boardroom 7:20
Brian 26:23 28:23 30:7 32:1
broad 14:11
brought 16:23
BRUNNER 3:3
business 25:9 27:22

**C**

C 38:1 39:1,1
call 8:10 21:4
calls 31:9
careful 33:10
case 1:8 2:7 8:6,8 9:12 14:15,17 15:18 27:20 32:14 32:18 33:1
cash 15:9
certain 18:14
Certainly 6:12 29:16
certify 38:11 39:4
check 24:3 25:11 27:19 28:4,13 36:8,10,14
Cin-Tel 2:22
Cincinnati 2:17,23 3:6
Civil 4:7
claim 19:3,9

claimant 20:7 22:9
claims 10:20,24 11:1,3 14:8,10 15:20 16:4,8 17:4 17:6,8,12,15,20 18:13 25:8 27:1 32:6
clarification 13:24
clarify 29:11 31:12 34:9
clarity 32:20
clear 33:4,22,24
clients 12:9
colleagues 9:21 11:18 26:9
collect 36:1,12,17
Collins 3:11
come 14:2
coming 15:10
commingled 11:19 12:8,16 24:23
commission 39:11
communicate 25:20 26:23 29:5 29:7 31:3 32:23 34:3
communicated 26:4,11,13 27:3 27:10 28:23 29:4 34:7
communications 25:17,21 26:6 27:13 31:1,13,14 35:11,17
Company 1:6,9 2:5 2:8 3:9 15:21 16:3 17:7,9,16 28:24 35:18
complete 38:12 39:7
computer 8:1 25:14
computer-aided 39:6
concern 15:15

concerning 25:20
concluded 37:2
confirm 27:19 30:12
contain 12:10
content 18:24
context 17:5
continue 13:9,15
contract 15:20 31:20
conversation 8:23 9:1
copied 18:21 19:20 22:7 23:14 28:10 28:12 30:1
Corporation 2:22
correct 7:8,22,23 9:12,13,23 10:1,2 10:7,8 12:11,12 13:23 15:23,24 19:23 20:14,15 21:6,21 23:7,8 24:9,10 27:11,12 29:1,2 30:13 31:21,22,22
corrections 38:10
correspondence 30:5
counsel 4:3,8 9:22
COUNTY 38:4
couple 16:11 26:4 33:4
court 1:1 2:1 6:14 7:6
cover 11:21 15:12 17:2,23,24
coverage 15:1,4 16:5,8,15,19 18:8 27:1
covering 16:3
Cross 5:4
cross-examination 2:14 4:6 6:8

CIN-TEL CORPORATION

PH:  513-621-7723                                                         FX:  513-263-9023

Page 41

**D**
**D** 5:1 38:1
**Darilyn** 20:5 22:7
    23:13,17 24:2
**data** 11:19,19,23
    12:7,11 13:7,10
    14:2 15:7 18:14
    20:13 24:23 27:1
**David** 3:3 24:15
    33:6
**deal** 18:1
**dealing** 18:11
**December** 1:15
    2:18 38:7
**declaration** 8:5,7
    8:22 9:4,10,10
    10:4,7,9 15:18
    20:6 22:18 25:19
    26:15,15 32:9,10
    32:22 34:2
**declarations** 8:16
    9:12,15 10:10
**Defendant** 3:9
**Defendants** 1:10
    2:9
**deponent** 4:12
**deposed** 7:3
**deposition** 1:14
    2:12 4:4,9,12 7:8
    8:21 9:7 21:6
    22:19 23:12 37:2
**describe** 16:10
**description** 10:16
    14:17
**desk** 24:7
**desktop** 25:13
**details** 8:9 33:19
**determine** 20:16
**determining** 17:15
**development** 16:24
**developments** 16:4
    16:8 32:23 34:3,4
    34:6
**dfhine@vorys.com**

    3:7
**dial-in** 8:9
**different** 7:12
    14:13
**difficult** 22:16
**directed** 28:11
**directly** 24:4 28:11
**discovery** 36:4
**discretion** 33:15
**discussed** 20:12
    22:23 30:20 31:7
    32:17
**discussing** 15:23
    20:11 26:3 31:9
    32:4
**dispute** 16:16
**DISTRICT** 1:1,2
    2:1,2
**DIVISION** 1:3 2:3
**document** 14:4
**documents** 7:24
    8:18 9:6 18:18
    19:15 20:19,20
    24:8,18,21 25:2
    25:13 33:9 36:1,1
**draft** 9:14
**drafted** 23:13,14
**drafts** 19:15
**driving** 15:16
**Dublin** 3:12
**due** 19:4
**duties** 14:13

**E**
**E** 5:1,6 38:1,1,1
    39:1,1
**e-mail** 8:9 12:24
    13:2 14:3,6 21:19
    23:17 24:1 25:21
    25:22,23 26:7
    27:14,24 30:4,17
**e-mailed** 12:23
    26:2 28:19
**e-mails** 13:6,16,19

    18:21,24 19:3,14
    19:19,20 20:4,5,8
    20:11,18 21:16,17
    21:23 22:6,11,17
    22:23 23:6,10,11
    23:13,15 24:4
    26:2,5 27:16 28:8
    28:11,14 30:1,12
    30:14,21 36:3,12
**earlier** 14:8 21:4
    22:23 26:3
**early** 36:8,9
**East** 2:16 3:5
**edited** 9:17 10:1
**effective** 29:21
**eight** 20:9 22:5
**either** 9:14 20:4
    22:6 26:7,8 28:1
    34:23
**employed** 10:19
**employees** 28:18
**engaged** 30:4
**entity** 16:14
**erode** 17:24 18:8
**eroding** 15:4,11
    17:23
**erosion** 15:1,6,16
    16:2
**errata** 38:11
**ESQ** 3:3,3,4,11
**et** 1:9 2:8
**event** 34:2
**eventuality** 18:2
**exactly** 36:15
**examination** 4:13
**examined** 6:6
**examples** 16:11
**Excellent** 18:12
**exclusive** 20:11
**executed** 9:11
    15:18
**executing** 32:10
**exhibits** 5:8
**expires** 39:11

**exposure** 16:21
    17:2
**extent** 18:6

**F**
**F** 3:3 39:1
**fact** 10:10 19:4
    30:13
**fair** 7:15 22:21
    32:15
**fall** 11:20
**falls** 29:19
**favor** 16:18
**Federal** 4:7
**figure** 34:1,5
**file** 21:14,15 24:7,7
**filed** 17:7,9,16
    22:24
**financial** 11:23
    12:7,10 13:7,10
    14:2 18:14 20:13
    24:23
**fine** 25:12
**finished** 10:4
**first** 10:17 15:17
    24:16 25:23
**flow** 15:9
**folder** 21:16,18,20
    23:10 30:15
**follows** 6:7
**form** 12:16 14:3,5
**former** 15:22
**forth** 2:15 33:10
**Fourth** 2:16 3:5
**front** 8:1

**G**
**G** 3:4 38:1
**Garner** 3:11,11
    8:23 9:1,20 23:20
    24:13 26:8 33:2
    34:15 36:23
**general** 24:13,16,22
**generally** 10:17

    11:16 15:14 31:6
**generate** 20:19
**generated** 22:7
**gentleman** 12:2
**give** 18:5 22:1 33:5
    35:21
**given** 6:6 38:7
**giving** 14:13
**go** 21:18 22:14
    23:24 33:15 34:18
**goes** 16:18,18,19
    21:20
**going** 6:15 7:14
    8:13 15:8 23:23
    33:18
**Good** 6:2
**Graham** 1:14 2:12
    4:5 5:3 6:4,12
    33:3 34:17 36:24
    38:6,17
**Great** 3:5
**greater** 17:1
**guess** 22:4 29:12
**guessing** 25:10

**H**
**H** 5:6
**HAMILTON** 38:4
**handles** 17:15
**handling** 15:20
**handwritten** 21:2,5
**happened** 32:24
**happens** 29:18
**head** 10:20,23 14:8
    14:10 18:13 21:22
**helpful** 14:19
**hereinafter** 2:15
**high-level** 27:1
**Hine** 3:3 5:4 6:1,9
    23:18 24:16 33:17
    33:23 36:20
**historically** 26:1
**honest** 6:22
**hour** 9:3

CIN-TEL CORPORATION

PH: 513-621-7723　　　　　　　　　　　　　　　　　　　　　　　FX: 513-263-9023

Page 42

**I**
**identified** 26:19
　27:20 29:10 32:8
**identify** 12:2 26:12
**include** 13:14
**including** 13:13
　16:4
**Indemnity** 1:9 2:8
　16:2 35:17
**indicated** 15:19
　28:22
**indication** 15:9
**individual** 17:4
**individuals** 11:11
　25:8 26:4 27:8
**information** 12:14
　12:15,18,23 13:2
　14:1 25:20 33:11
　33:20
**initial** 19:12
**instance** 16:13
**instructed** 35:24
**insurance** 3:9 15:4
**interested** 33:18
**internal** 19:14
　20:22
**interrupt** 22:14
**involved** 33:14
**involvement** 11:12
　11:17 19:5,8
　32:18
**item** 18:10

**J**
**James** 27:4,9,17
　28:2,8,15
**January** 13:21
　29:22,23
**jmbrunner@vor...**
　3:7
**job** 10:16,16 14:16
**Joe** 26:17,17 27:17
　28:1,8,15
**jog** 26:21

**John** 26:23 28:24
　30:9
**Jordan** 27:4,9,17
　27:17 28:2,8,15
**Joseph** 3:3 27:4,9
　27:17
**July** 36:11
**June** 36:11

**K**
**K** 38:1
**KATHERINE** 3:4
**keep** 17:4 21:13
**kgbarnes@vorys...**
　3:8
**kind** 21:3,15
**kinds** 18:17 20:18
　20:19
**know** 7:11 9:18
　13:5 19:2 21:23
　25:5,7

**L**
**L** 4:1 38:1
**lack** 32:20
**laptop** 25:14
**large** 22:17
**larger** 18:10
**latest** 36:4
**Let's** 14:15 19:11
**level** 11:9
**Limited** 10:21
**line** 6:15 23:19
**litigation** 16:5,9,17
　17:1 19:8 27:2
　33:13
**little** 9:2 19:11
　22:16
**LLC** 3:11
**LLP** 2:16 3:4
**located** 7:21
**London** 7:22 10:22
　31:16
**long** 8:24

**look** 18:18 32:9
**looked** 18:15 25:1
　30:14
**looking** 15:3
**Loxley** 1:14 2:12
　4:5 5:3 6:2,4,12
　6:13 7:2,17 8:20
　21:13 35:23 36:20
　38:6,17

**M**
**M** 3:3,11 38:1
**maintain** 23:1,6
**majority** 18:22
　19:21
**making** 12:22
　22:18
**manage** 11:12
**managed** 11:5
　20:24
**management** 10:21
　11:4 15:21 26:24
　28:24 31:20 32:24
　34:4,8
**managers** 32:7
**marked** 5:8
**material** 32:23 34:2
　34:6
**Matosky** 26:24
　28:24 30:9
**matters** 18:11
　34:12
**McCarthy** 32:2,5
　32:12,14
**mean** 19:13,14,14
　22:2,13 23:5 34:9
**means** 11:8
**meet** 31:19,23
**meeting** 7:19
**meetings** 31:24
　34:22,23 35:5,9
**members** 32:2
**memoranda** 19:15
**memory** 8:17 26:22

**memos** 18:19 19:13
　19:13 20:17
**mentioned** 16:1
　18:14 30:15 35:10
**Metro** 3:12
**Michaud** 20:5 22:8
　23:13,17 24:2
**minute** 20:17
**moment** 35:21
**monitor** 14:24 15:5
　17:3,8
**monitoring** 16:2,7
　17:20
**monthly** 13:7,9
　20:13 22:23
**months** 18:23
　19:22 20:1
**morning** 6:2,3
**move** 10:15
**multiple** 11:19
**mute** 23:21

**N**
**N** 4:1 5:1 38:1,1
**name** 6:10 8:11
　12:3 20:7 21:7
　26:14
**narrow** 14:12,15
**National** 1:9 2:8
　16:2 35:17
**necessary** 38:10
**need** 7:7 21:11
**network** 24:12,19
　25:2,6
**NICO** 11:20 15:1,4
　35:18
**notary** 2:19 4:10,14
　39:3,12
**note** 8:10 38:9
**notes** 8:14 21:3,5,8
　21:10 23:21 35:4
　35:7 36:17
**notice** 2:14 4:8
**number** 19:2 20:4

　22:8,17

**O**
**O** 4:1 38:1
**oath** 6:6,17,20,24
　38:7
**objection** 8:15
**obviously** 15:8
　16:16 18:5,8
**Occasionally** 35:6
**occasions** 31:7
**October** 36:9,9
**offered** 6:20
**office** 7:20,21
**offices** 2:15
**Oh** 13:4 19:17
　32:15
**Ohio** 1:2 2:2,17,20
　2:23 3:6,12 38:3
　39:4,12
**okay** 6:13 7:5,10,16
　8:19,24 9:9,18,22
　10:15,20 12:1,7
　13:1,5,18,24 14:7
　14:18 15:5,17
　17:3,14,18 18:3
　18:12 19:11,18
　20:2,10,22 21:2,9
　21:13,22 22:15,22
　23:1,9,16 24:6
　25:1,12,16 26:10
　27:9,16,23 28:5
　28:17,21 29:11,23
　30:3,16,24 31:2,8
　31:15,23 32:8,15
　33:21 34:17,20
　36:5,11,16
**OneBeacon** 3:9
　11:21 14:22 15:22
　16:15,18 19:7
　25:9 26:5,11,12
　27:4,10 28:18
　31:20 33:8 35:14
**ones** 20:6

CIN-TEL CORPORATION

PH: 513-621-7723                                    FX: 513-263-9023

Page 43

**opportunity** 38:9
**opposed** 29:17
**oral** 25:21 30:24
   35:11,16
**organization** 33:12
**outline** 9:16,19
   10:1
**outside** 4:14
**overseeing** 15:20
**oversight** 18:6
   29:15
**owned** 11:4

**P**

**P** 4:1
**page** 5:3 8:8,9
   38:11
**pages** 8:6 39:5
**paper** 8:2,4,11
**paragraph** 26:22
   28:22
**part** 16:6 17:14
   28:21
**particular** 10:16
   19:3,9
**parties** 4:4 11:6
**party** 33:13
**Pease** 2:16 3:4
**people** 26:11 35:14
**person** 31:13,14
**personnel** 11:1
**pertain** 20:20 23:12
   24:19 25:17
**pertaining** 12:11
   24:8 30:18,22
   35:18
**pertains** 10:17 12:8
   14:17 17:6 18:18
   20:13
**physical** 24:7
**piece** 8:10
**pieces** 8:2,4
**place** 3:12 4:9 15:2
   15:20 21:16

**plain** 8:10
**Plaintiff** 1:7 2:6,13
   3:2 4:6
**play** 17:14
**please** 6:10
**point** 7:10 33:3
**policies** 16:16
   20:22
**policyholders** 11:20
**portfolio** 11:21
   13:11 14:22 15:2
   15:22 16:3 19:7
   34:13
**portfolios** 11:3
**potential** 16:23
**Powell** 1:6 2:5
   10:17 11:12,14,17
   11:23 12:10,11
   13:10,13,14 14:15
   14:17 17:5,7,9,16
   18:18,19 19:16,21
   20:14,20,24 21:14
   21:17,20 23:4
   24:8,14,19 25:3
   25:13,18,20,24
   27:3,5 28:1,9 29:5
   29:9,13,17,18
   30:1,5,18,22 31:4
   31:7 32:14 33:1
   34:10,15 35:12,18
   36:2,18
**Powell-specific**
   23:10
**practice** 21:9
**prefer** 8:17
**preparation** 9:6
**prepare** 8:21 34:24
   35:1
**prepared** 17:23
**presence** 4:11,14
**present** 13:22
**preserve** 36:1
**previously** 27:3
**primary** 14:23

   17:21 18:4
**printed** 8:8
**prior** 29:23
**probably** 18:23
   19:24,24 20:8
   22:5,8 33:17
**problem** 23:22
**Procedure** 4:7
**procedures** 20:23
**process** 19:5
**produced** 33:9
**product** 10:4
**Professional** 1:24
   2:19
**protecting** 15:2
**provide** 18:6
**provided** 9:16 13:8
**provides** 13:1
**public** 2:19 39:3
**public-court** 4:10
   4:15
**Public-State** 39:12
**purpose** 17:19
**pursuant** 2:14 4:6
   4:7
**put** 23:10

**Q**

**quarterly** 31:5,18
   34:23 35:9
**question** 7:11,14,15
   14:11 19:12 34:20
   34:21
**questions** 8:17
   33:16
**quicker** 18:9
**quickly** 17:22,24
   25:17
**quite** 14:11

**R**

**R** 39:1
**reached** 6:18
**read** 28:22 36:24

   38:6
**reason** 10:11,13
   29:24 32:9
**reasons** 17:22
**recall** 13:4 18:24
   24:5 28:3 29:8
   30:10 32:13
**receive** 9:19 11:18
   12:13,15,17 13:6
   13:16 15:8 17:11
   18:19 19:12 20:12
   20:18 30:17 34:24
**received** 13:19
   19:20 23:16 24:1
   28:7 30:22
**recollection** 13:20
   28:16 36:13
**record** 6:1,11 10:18
   38:13
**recovery** 15:11
**refer** 26:15
**reference** 34:1
**referenced** 21:4
**regard** 8:15 9:9
   11:24 14:21,24
   16:17 19:9,18
   23:9 26:24 30:3
**regarding** 17:11
**Registered** 1:24
   2:18
**reinsurance** 11:21
   15:1,10 16:3
**related** 19:3
**relates** 21:19
**relating** 13:10,11
   18:19 19:21 21:14
   21:17 24:8 25:2
   25:13 28:1,8 30:1
   36:2,18
**relation** 11:23 22:9
   22:17 26:2,5
   27:20 36:3
**remember** 20:7
   26:19 36:15

**reminded** 32:11
**Renee** 1:24 2:18
   39:3,11
**repeat** 31:11
**report** 17:22
**REPORTED** 1:23
**reporter** 1:24 2:19
   4:10,15 6:14 7:6
**request** 36:4
**required** 32:23
   34:3
**reread** 8:22
**reserve** 36:23
**Resolute** 12:19,21
   13:1 14:24 15:13
   15:21 17:15 18:7
   26:24 28:24 29:3
   30:4 31:4,5,19
   32:7 34:23 35:5
   35:11
**respect** 15:21 27:2
   27:5 34:10
**respective** 4:4
**responses** 7:7
**responsibilities**
   14:9,16
**responsibility**
   14:23 15:19 29:13
   29:14
**responsible** 11:2
**restate** 7:13
**resulting** 16:17
**review** 8:18 9:5
**reviewed** 9:5 10:3,9
**rgarner@crugla...**
   3:13
**Rich** 33:23
**RICHARD** 3:11
**right** 7:18 8:1 9:24
   25:16 33:2 36:22
   36:23
**risk** 10:21 16:24
**Robert** 32:1,5,11
   32:14

CIN-TEL CORPORATION

PH:  513-621-7723                                                    FX: 513-263-9023

Page 44

**Roche** 3:11
**Rogers** 1:24 2:18 39:3,11
**role** 18:13
**room** 7:19 32:16
**Rules** 4:7
**Ryan** 26:23 28:23 30:3,5 32:1
**Ryan's** 32:3

**S**

**S** 4:1,1 5:6
**S-T-A-V-E-L-E-Y** 12:6
**Sater** 2:15 3:4
**save** 25:12 30:17 35:2,7
**scheduling** 22:18 23:12
**Schmitt** 26:17 27:4 27:10,17 28:2,8 28:15
**search** 30:12
**second** 12:20 33:5
**secondary** 18:5
**secure** 19:6
**see** 15:8,11 26:21
**seeking** 18:8
**seen** 11:22
**send** 27:16
**sends** 13:2
**senior** 32:6,24 34:4 34:7
**sent** 19:4,10 22:7 27:24 30:21
**separately** 22:24
**September** 36:9
**series** 33:16
**service** 11:9 29:15
**set** 2:15 8:12,16
**Setting** 20:17
**Seymour** 2:16 3:4
**share** 33:11
**shared** 24:12,19

25:2,6
**short** 33:17
**signature** 4:13,13
**signed** 10:6
**significant** 15:15 16:20
**signing** 10:10
**similar** 22:8
**simply** 21:7
**single** 22:9 27:20
**sit** 10:11 13:4 18:24 24:5 27:23
**sitting** 7:18,19
**situation** 16:14
**six** 8:2,3
**SLAs** 11:6,7
**Someone's** 23:18
**sorry** 6:2 14:20 22:13 31:11 35:23
**sort** 14:9 24:7
**South** 3:12
**SOUTHERN** 1:2 2:2
**space** 24:12,19 25:2 25:6
**speak** 15:13 23:5 31:5
**speaking** 22:6,10 24:23 32:13
**specific** 17:8 21:17 23:4
**specifically** 11:14 25:4,9
**spell** 12:4
**spoke** 32:11
**spoken** 29:8
**spreadsheet** 14:4,5
**state** 2:20 6:10 10:18 38:3 39:4
**statements** 6:23
**States** 1:1 2:1 31:16 31:17,19
**Staveley** 12:3
**stenotype** 4:9

**stenotypy** 39:5
**stipulated** 4:3
**stipulations** 2:14
**strategy** 18:11
**Street** 2:16,22 3:5
**subject** 19:7
**submitted** 4:12 8:6 8:7
**Suite** 2:16,22 3:12
**summary** 27:1
**supplemental** 8:7
**suppose** 12:21 13:19 17:18 18:17 31:10
**sure** 11:11 16:12 18:7 22:20 23:23 25:10 26:21 28:4 31:12 33:4 35:22
**Sycamore** 2:22

**T**

**T** 4:1,1 5:6 38:1 39:1,1
**take** 21:2,10 35:4
**taken** 2:13 4:5,9 6:23 14:23 21:8 39:5
**talk** 14:22 25:16,22 30:24
**talking** 14:1 15:7 24:14 34:16
**team** 11:1 32:3
**telephone** 3:10 6:18 8:23 9:1 31:13
**telephonic** 1:14 2:12 4:4
**tell** 7:18 8:3 11:7 16:6 17:19
**testified** 6:6
**testimony** 6:5,19 38:7,10,13
**thank** 7:16 12:4 14:7,18 18:12 27:7 33:23 36:24

**thing** 34:16
**things** 33:5,14
**think** 8:14 9:2 14:7 17:21 18:22 19:12 20:3 24:21 26:14 26:18 28:6 30:16 33:19 36:8,20
**three** 8:6
**throughput** 15:3
**Thursday** 2:17
**time** 4:5,8 14:13 21:10,10,11,11 32:2,2 33:3
**times** 32:22
**title** 10:18
**today** 6:14 8:18 10:12 22:19 27:23 34:17
**today's** 9:6
**Tom** 26:23 28:23 30:3,5 32:1,3
**top** 21:22
**Tower** 3:5
**transcribed** 4:10 39:6
**transcribing** 6:15 7:6
**transcript** 38:6,12
**transcription** 39:6 39:8
**transfer** 19:6 27:21
**travel** 31:15,16,17 31:18
**true** 6:22 38:12 39:7
**try** 7:12
**trying** 33:19,24 34:5
**two** 9:11 26:18 27:7
**typing** 23:18

**U**

**U** 4:1
**ultimately** 10:3

**unclear** 7:11
**underlying** 16:4,8
**understand** 6:21 7:1,5,9 8:13 12:8 17:6 18:10 32:19
**understanding** 18:17
**understood** 7:15 8:19
**United** 1:1 2:1 31:15,17,19
**update** 15:14
**updates** 17:11 27:2
**use** 33:15
**Utley** 3:11

**V**

**value** 15:3
**various** 11:3 13:12 31:6
**verbal** 7:7
**Vorys** 2:15 3:4
**vs** 1:8 2:7

**W**

**W** 38:1
**want** 29:11 30:24 33:3,10
**wasn't** 23:23
**way** 7:12 15:9,10
**We'll** 12:20 36:23
**we're** 14:1 18:7 32:3 33:4,7
**we've** 14:22
**went** 19:6
**WESTERN** 1:3 2:3
**William** 1:6 2:5 11:23 17:7,9,16 24:14 27:2,5 29:9 31:7 34:10,15
**witness** 2:12 4:11 5:2 33:8 36:22
**Wonderful** 7:2 8:12
**Word** 14:4

WWW.CINTELCORPORATION.COM                    E-Mail    CINTELCO@GMAIL.COM

CIN-TEL CORPORATION

PH: 513-621-7723 FX: 513-263-9023

Page 45

| | |
|---|---|
| **work** 11:2 14:24 25:9<br>**workplace** 24:11<br>**write** 9:14<br>**written** 8:11 21:7 30:21 34:24 35:16 | **5**<br>**513** 2:23 3:6 |
| **X**<br>**X** 5:1,6 | **6**<br>**6** 5:4<br>**614** 3:13<br>**621-7723** 2:23<br>**655** 3:12 |
| **Y**<br>**yeah** 13:15 15:24 33:22<br>**year** 36:12<br>**yesterday** 8:23 | **7**<br>**723-4000** 3:6 |
| | **8**<br>**8** 1:15 2:18 38:8<br>**810** 2:22 |
| **Z** | **9**<br>**901-9600** 3:13 |
| **0** | |
| **1**<br>**1:14-CV-00807** 1:9 2:8<br>**10** 20:9 22:2,5<br>**103** 2:22<br>**11:01** 1:16 2:17<br>**11:40** 37:2<br>**13** 39:12<br>**18** 18:23 19:22 20:1 | |
| **2**<br>**20** 22:2<br>**200** 3:12<br>**2015** 13:21 29:22 29:23<br>**2016** 1:15 2:18 38:8<br>**2021** 39:12 | |
| **3**<br>**301** 2:16 3:5<br>**3500** 2:17 3:5<br>**38** 39:5 | |
| **4**<br>**43017** 3:12<br>**45202** 2:23 3:6 | |