# EXHIBIT I

CIN-TEL CORPORATION

PH: 513-621-7723 FX: 513-263-9023

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

WESTERN DIVISION

\_\_\_\_\_

| | |
|---|---|
| THE WILLIAM POWELL COMPANY, : | |
| Plaintiff, : | |
| vs. : | CASE NO.: |
| NATIONAL INDEMNITY COMPANY, et al., : | 1:14-CV-00807 |
| Defendants. : | |

\_\_\_\_\_

TELEPHONIC DEPOSITION OF: PETER DINUNZIO

December 14, 2016

11:02 a.m.

REPORTED BY:

Renee Rogers, Registered Professional Reporter

CIN-TEL CORPORATION

PH: 513-621-7723                                    FX: 513-263-9023

Page 2

```
 1          UNITED STATES DISTRICT COURT
 2            SOUTHERN DISTRICT OF OHIO
 3               WESTERN DIVISION
 4               _____
 5   THE WILLIAM POWELL COMPANY,        :
 6          Plaintiff,                  :
 7   vs.                     : CASE NO.:
 8   NATIONAL INDEMNITY COMPANY, et al., : 1:14-CV-00807
 9          Defendants.                 :
10               _____
11
12       Telephonic deposition of PETER DINUNZIO, a
13   witness herein, taken by the Plaintiff as upon
14   cross-examination pursuant to notice and stipulations
15   hereinafter set forth, at the offices of Vorys, Sater,
16   Seymour and Pease, LLP, 301 East Fourth Street, Suite
17   3500, Cincinnati, Ohio, at 11:02 a.m. on Wednesday,
18   December 14, 2016, before Renee Rogers, Registered
19   Professional Reporter and notary public within and for
20   the state of Ohio.
21               _____
22            Cin-Tel Corporation
            810 Sycamore Street, Suite 103
23            Cincinnati, Ohio  45202
                (513) 621-7723
24
```

Page 3

```
 1   APPEARANCES:
 2   On behalf of the Plaintiff:
 3   JOSEPH M. BRUNNER, ESQ.
     DAVID F. HINE, ESQ.
 4   Vorys, Sater, Seymour and Pease, LLP
     3500 Great American Tower
 5   301 East Fourth Street
     Cincinnati, Ohio  45202
 6   (513) 723-4000
     jmbrunner@vorys.com
 7   dfhine@vorys.com
 8
     On behalf of Defendant OneBeacon Insurance Company (by
 9   telephone):
10   RICHARD M. GARNER, ESQ.
     Collins, Roche, Utley & Garner, LLC
11   655 Metro Place South, Suite 200
     Dublin, Ohio  43017
12   (614) 901-9600
     rgarner@cruglaw.com
13
14
15
16
17
18
19
20
21
22
23
24
```

Page 4

```
 1            S T I P U L A T I O N S
 2
 3       It is stipulated by and among counsel for the
 4   respective parties that the telephonic deposition of
 5   Peter Dinunzio may be taken at this time by the
 6   Plaintiff as upon cross-examination pursuant to the
 7   Federal Rules of Civil Procedure and pursuant to
 8   Notice and agreement of counsel as to the time and
 9   place; that the deposition may be taken in stenotype
10   by the notary public-court reporter and transcribed by
11   her out of the presence of the witness; that the
12   deposition is to be submitted to the deponent for his
13   examination and signature, and that the signature may
14   be affixed outside the presence of the notary
15   public-court reporter.
16
17
18
19
20
21
22
23
24
```

Page 5

```
 1             I N D E X
 2   Witness
 3   PETER DINUNZIO                    Page
 4     Cross by Mr. Brunner              9
 5
 6           E X H I B I T S
 7
 8        (No exhibits were marked.)
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
```

2 (Pages 2 to 5)

CIN-TEL CORPORATION

PH:   513-621-7723                                              FX:   513-263-9023

Page 6

1    MR. BRUNNER:  We're on the record.
2    Can everyone on the line please identify
3    themselves for the record.  This is Joe
4    Brunner at Vorys, Sater, Seymour and
5    Pease, representing William Powell
6    Company.
7        MR. GARNER:  Rich Garner on behalf
8    of OneBeacon Insurance Company.
9        THE WITNESS:  Peter Dinunzio.
10       MR. BRUNNER:  Good morning,
11   Mr. Dinunzio.
12       THE WITNESS:  Good morning.
13       MR. BRUNNER:  Before we get into the
14   substance, I want to do a couple things
15   first.  Tell us where you're sitting
16   right now.
17       THE WITNESS:  Sure.  I'm sitting in
18   my office.
19       MR. BRUNNER:  And where is that?
20       THE WITNESS:  That is in New York
21   City.
22       MR. BRUNNER:  Okay.  We are here in
23   Cincinnati.  We're all participating by
24   phone.  The court reporter is here with

Page 7

1    me in Cincinnati.
2        She cannot administer an oath over
3    the phone without having a notary or
4    someone else physically present with
5    you, but we've discussed this with
6    Mr. Garner last week, and we've
7    stipulated that the testimony you are
8    about to offer will be considered under
9    oath.  You're obligated to tell the
10   truth.
11       Rich, that stipulation is still in
12   place, correct?
13       MR. GARNER:  It still holds true.
14       MR. BRUNNER:  And, Mr. Dinunzio, you
15   understand?
16       THE WITNESS:  I do.
17       MR. BRUNNER:  Okay.  Thank you.
18   Have you ever been deposed before?
19       THE WITNESS:  Yes.
20       MR. BRUNNER:  All right.  Well, I'm
21   just going to do a couple quick
22   instructions.  If any of my questions
23   are unclear, please tell me, and I'll
24   work with you to get a question you can

Page 8

1    answer.
2        I've got a little bit of a cold, so
3    if you don't understand what I'm saying,
4    please just let me know.  If you do
5    understand -- if you do answer one of my
6    questions, I'm going to assume you
7    understood it.
8        Because we're all on the phone, we
9    need a verbal response, and that's
10   actual words, not uh-huh or huh-uh.  Do
11   you understand?
12       THE WITNESS:  I do.
13       MR. BRUNNER:  Do you have any
14   documents in front of you right now?
15       THE WITNESS:  Yes.
16       MR. BRUNNER:  What documents?
17       THE WITNESS:  My declaration.
18       MR. BRUNNER:  Okay.  I'm going to
19   ask you to please just put that aside.
20   I want to question you today based on
21   your memory, not based on your written
22   declaration.
23       THE WITNESS:  Sure.
24       MR. BRUNNER:  Thank you.

Page 9

1            PETER DINUNZIO,
2    having acknowledged that his testimony will be
3    given as if under oath, was examined and testified
4    as follows:
5             CROSS-EXAMINATION
6    BY MR. BRUNNER:
7        Q   What did you do to prepare for this
8    deposition?
9        A   I spoke with my counsel.
10       Q   Did you review any documents?
11       A   Yes.
12       Q   What documents?
13       A   My declaration.
14       Q   Thank you.  Now, you executed a
15   declaration in this case, as we've alluded to.
16   Who drafted that declaration?
17       A   I drafted that in conjunction with
18   my counsel.
19       Q   Did you review it before you signed
20   it?
21       A   I did.
22       Q   Did you believe it was accurate when
23   you signed it?
24       A   Yes.

CIN-TEL CORPORATION

PH: 513-621-7723                                FX: 513-263-9023

Page 10

1    Q  Thank you.  What is your current job
2  position?
3    A  Senior counsel with the law firm of
4  Clyde & Co.
5    Q  Can you spell that name, please.
6    A  Sure.  C-L-Y-D-E, ampersand, C-O.
7    Q  Thank you.
8    A  You bet.
9    Q  Where did you work before you were
10 at Clyde & Co.?
11   A  Resolute Management, Inc.
12   Q  What was your job at Resolute?
13   A  Before I left?
14   Q  Yes.  Yes.
15   A  I was an assistant vice president
16 with Resolute's Asbestos Strategic Unit.
17   Q  How long were you employed at
18 Resolute?
19   A  Approximately seven years.
20   Q  And were you an assistant vice
21 president with the Asbestos Strategic Unit the
22 entire time?
23   A  No.
24   Q  What was your position -- what other

Page 11

1  positions did you have at Resolute?
2    A  I was an assistant vice president
3  and team leader from roughly 2010 to 2013, and an
4  account manager from roughly 2008 to 2010.
5    Q  I'm sorry.  Can you give me the
6  years that you were with the Asbestos Strategic
7  Unit.
8    A  Yes.  Mid-2013 to 2015.
9    Q  And then did you leave Resolute in
10 2015?
11   A  Yes.
12   Q  Okay.  These three positions you had
13 at Resolute, in which ones did you have
14 involvement with the William Powell account?
15   A  Only in the role with the Asbestos
16 Strategic Unit.
17   Q  So only when you were an assistant
18 vice president with the Asbestos Strategic Unit
19 from 2013 to 2015?
20   A  That's correct.
21   Q  Okay.  Unless I say otherwise, all
22 of my questions are going to be about that time
23 period from 2013 to 2015 when you were with the
24 Asbestos Strategic Unit.

Page 12

1    A  Okay.
2    Q  Do you understand?
3    A  Yes.
4    Q  Okay.  And from your title -- your
5  current title of senior counsel, I'm assuming that
6  you're an attorney.
7    A  Yes, that's correct.
8    Q  Did you function as an attorney for
9  Resolute?
10   A  I did not.
11   Q  Okay.  Thank you.  So as an
12 assistant vice president with the -- strike that.
13      If I refer to the Asbestos Strategic
14 Unit as the ASU, will you understand what I'm
15 referring to?
16   A  I will.
17   Q  Okay.  While you were with the ASU,
18 what did you have to do with the Powell account?
19   A  On occasion I would approve certain
20 individual settlements, asbestos settlements.
21   Q  And what occasion would cause you to
22 be involved?
23   A  It would -- it would typically
24 depend upon the amount of the settlement under

Page 13

1  consideration.
2    Q  Were there other factors that would
3  lead you to be involved?  You said typically.  I'm
4  trying to figure out what else would -- what else
5  is encompassed by typically.
6    A  Well, I suppose the other
7  circumstance, which would tend to go hand in hand
8  with settlement of a case, would be trial of a
9  case.
10   Q  And that's trial regardless of the
11 amounts involved?
12   A  That's correct.
13   Q  Did you have any involvement with
14 the general supervision of Powell's account?
15   A  No.
16   Q  Did you have any involvement with
17 formulating or applying general Resolute policies
18 or procedures that would apply to the Powell
19 account?
20   A  No.  Not that I recall.
21   Q  Okay.  So when you're involved in
22 approving individual settlements or the trial of a
23 case, tell me what you did.
24   A  Sure.  Generally, I received an

CIN-TEL CORPORATION

PH: 513-621-7723                                    FX: 513-263-9023

Page 14

1  e-mail from Darilyn Michaud or Clayton Budlong
2  alerting me to a fact that they were considering
3  settlement of a particular case.
4       They would send me the information
5  about that case if they were seeking settlement --
6  approval of a settlement that would require my
7  authority. Generally we would discuss the merits
8  of that case, and -- and it would approve the
9  settlement amount.
10      Q  You said you would get an e-mail
11 from either Darilyn Michaud or Clayton Budlong.
12 Would it be either one of them?
13      A  It would be one or the other, as I
14 recall.
15      Q  And when you're discussing -- well,
16 let's go back a step. What kind of information
17 would they send you?
18      A  They would -- they would send me
19 something called an asbestos request for
20 settlement authority and an e-mail describing the
21 particulars of the case.
22      Q  And then what would you discuss with
23 them?
24      A  Usually just the particulars of the

Page 15

1  asbestos claim involved.
2       Q  Would you discuss the particulars of
3  the claim with anyone else?
4       A  That could happen sometimes, sure.
5       Q  Who -- I'm sorry. With whom?
6       A  If a case were proceeding to trial,
7  then that would need to be reported to my
8  supervisors.
9       Q  And who were they?
10      A  For a period of time, Brooke Green
11 and Tom Ryan; another period of time, Robert
12 McCarthy and Tom Ryan.
13      Q  Would those -- well, would those
14 discussions be via e-mail?
15      A  I guess technically they would be in
16 person or in a meeting. There certainly could
17 have been e-mails. It would depend, based on the
18 claim.
19      Q  When you're discussing these cases
20 with Ms. Green or Mr. Ryan or Mr. McCarthy, would
21 Darilyn or Clayton be involved in those
22 discussions?
23      A  Yes.
24      Q  Always?

Page 16

1       A  It's my recollection.
2       Q  One or the other, or both?
3       A  Both.
4       Q  What about other members of the ASU;
5  would you discuss claims with them, or would you
6  typically handle things on your own?
7       A  Yeah. I mean, I guess on Powell I
8  don't recall whether -- really whether it was one
9  or the other or both from...
10      Q  Are you finished?
11      A  Yes.
12      Q  So what kinds of written documents
13 did you see as part of your job with the ASU? And
14 we've already talked about e-mails and ARFSAs,
15 asbestos requests for settlement authority. What
16 else?
17      A  The only other thing that comes to
18 mind is the settlement calculator.
19      Q  What's that?
20      A  An Excel spreadsheet.
21      Q  And what is that spreadsheet used
22 for?
23      A  Used as a tool to assist in the
24 evaluation of asbestos claim settlement.

Page 17

1       Q  Who creates those calculators?
2       A  With respect to the William Powell
3  account, Darilyn typically would.
4       Q  Would you ever create them?
5       A  On occasion.
6       Q  And who do you discuss them with?
7       A  On Powell, usually Darilyn and
8  Clayton.
9       Q  Even ones you create yourself?
10      A  Yeah.
11      Q  Who else do you send them to?
12      A  On Powell, I only ever recall
13 communicating with Darilyn and Clayton about that.
14      Q  So you never discussed the
15 settlement range calculator with your supervisors?
16      A  If there were a claim involving
17 settlement beyond my authority, or a trial, I
18 would. I just don't recall whether -- whether
19 that situation ever arose on the Powell account
20 during my tenure with the ASU.
21      Q  It's possible it did, you just don't
22 recall? Is that fair?
23      A  It is.
24      Q  What kind of -- what about any kind

5 (Pages 14 to 17)

WWW.CINTELCORPORATION.COM                  E-Mail    CINTELCO@GMAIL.COM

CIN-TEL CORPORATION

PH: 513-621-7723   FX: 513-263-9023

Page 18

1  of written memo?
2      A  No.  I don't recall anything like
3  that.
4      Q  Any kinds of internal policies or
5  procedures?
6      A  No.  Nothing like that.
7      Q  Did you ever keep or have a physical
8  file concerning Powell?
9      A  I did not.
10     Q  Did you have access to any kind of
11 shared network space concerning Powell?
12     A  I had access to shared network
13 space.  I don't recall if I ever saved anything
14 Powell related on it, but if I did, it would be
15 there.
16     Q  Did that shared network space have a
17 name, or a title, or anything like that?
18     A  We called it the shared drive.
19     Q  What kinds of documents would
20 typically be shared to -- or saved to that shared
21 drive?
22     A  I mean, in the context of Powell,
23 one might save an asbestos request for settlement
24 authority or a settlement calculator.

Page 19

1      Q  These settlement calculators, were
2  they created for every claim?
3      A  I don't believe they were required
4  for every claim.  I think it depended on the level
5  of the settlement involved.
6      Q  Do you remember what that level was?
7      A  I don't exactly.  It was some --
8  above some thousands of dollars, is my
9  recollection.
10     Q  Do you recall how frequently you
11 either saw or created one of these settlement
12 calculators?  I mean, was it twice a week? once a
13 month? 10 times a week?  Can you give me an
14 estimate?
15     A  I'm sorry.  I can't.  I couldn't
16 really approximate it.
17     Q  So we talked about e-mails.  What
18 other kinds of written communications did you have
19 concerning Powell?
20     A  The e-mails were it in terms of
21 written communications.
22     Q  So no written notes or letters?
23     A  No.
24     Q  What about meeting agendas for when

Page 20

1  you met with Darilyn or Clayton or Mr. Green -- or
2  Ms. Green or Mr. Ryan; were there any kinds of
3  written meeting agendas prepared beforehand?
4      A  I mean, the only thing I can think
5  of is if there's, you know, an e-mail with a
6  calendar appointment, maybe there's something in
7  there.
8      Q  What about notes or a memo
9  summarizing the meeting, or an e-mail summarizing
10 the meeting?
11     A  Any follow-up communication like
12 that including e-mail would have included Clayton
13 and Darilyn.
14     Q  So Mr. Budlong stopped working as a
15 team leader in 2014.  Who else did you communicate
16 with?
17     A  I recall communicating with Clayton
18 and Darilyn.  I think maybe Mr. Gaines became her
19 team leader after that.  I don't recall whether I
20 had any Powell-related communications really after
21 late 2014.  That's probably why I'm referring to
22 Clayton.  But I may have had communications with
23 Greg.
24     Q  What about with Kevin Hannemann?

Page 21

1      A  No.
2      Q  What about with David Warren?
3      A  I certainly communicated with David
4  Warren.  He worked with me in the Asbestos
5  Strategic Unit.  I don't recall whether we had any
6  communications related to Powell.
7      Q  Was Mr. Hannemann also in the ASU?
8      A  Not during my time at Resolute.
9      Q  Who else was during your time at
10 Resolute?
11     A  David Warren and Adrian Van.
12     Q  So can you explain how -- a little
13 bit more about how the ASU worked.  So there's an
14 underlying asbestos claim that either involves a
15 settlement request that exceeds Darilyn's
16 authority or that involves a trial.  Would they
17 always go to you, or would they sometimes go to
18 other members of the ASU?
19     A  They could go to other members of
20 the ASU, depending on the amount of authority
21 involved.
22     Q  So different members of the ASU got
23 involved at different levels of authority
24 requested?  Is that fair?

WWW.CINTELCORPORATION.COM         E-Mail   CINTELCO@GMAIL.COM

CIN-TEL CORPORATION

PH: 513-621-7723                                    FX: 513-263-9023

Page 22

1  A  At different -- and at different
2  points in time.
3  Q  Okay. Was there any other basis
4  determining who got involved from the ASU?
5  A  I guess I'm -- I guess I'm
6  struggling a little with kind of what you mean by
7  basis for getting involved. I mean, it was not
8  uncommon, you know, for me to consult with
9  Mr. Warren about a particular claim. You know,
10 that certainly happened with some frequency.
11     I don't know that we had sort of a
12 bright-line rule for that beyond sort of the
13 question of -- or beyond the different levels of
14 settlement authority or amounts involved.
15 Q  So where did you fall in the line of
16 settlement authority? Relative to the other
17 members of the ASU, did you have more settlement
18 authority?
19 A  Yeah.
20 Q  Did you have the most settlement
21 authority when you were with the ASU?
22 A  In terms of among members of the
23 ASU?
24 Q  Yes.

Page 23

1  A  Yes.
2  Q  Did Mr. Warren or Ms. Van have more
3  authority than each other?
4  A  Mr. -- Mr. Van did not have
5  authority.
6  Q  I'm sorry. I said Ms. I didn't
7  know it's Mr.
8  A  Yeah. He did not have authority.
9  Mr. Warren had authority.
10 Q  Did you have any communications with
11 Chris Dardis about Powell?
12 A  Not that I recall.
13 Q  What about with Lisa Lipman?
14 A  Not that I recall.
15 Q  Did you ever communicate with anyone
16 at OneBeacon about Powell and the Powell account?
17 A  No. I don't recall ever having
18 communications like that.
19 Q  What about people at NICO?
20 A  No. No. I don't recall that
21 either.
22 Q  Now, all the communications that
23 you're talking about occurred while you were with
24 the ASU. And I believe you said you don't recall

Page 24

1  many communications about Powell after -- what
2  date was that again?
3  A  Late 2014 or early 2015, sometime
4  around there.
5  Q  When exactly did you leave Resolute
6  in 2015?
7  A  The end of May.
8  Q  Who took over your responsibilities,
9  if you know?
10 A  David Warren.
11 Q  Do you know who took over
12 Mr. Warren's responsibilities?
13 A  I don't.
14 Q  Who did you talk to or speak with
15 about Powell in terms of oral communications,
16 phone, individual face to face?
17     I know you've testified to a couple
18 individuals and stuff already, but is there anyone
19 else beyond who you've already mentioned?
20 A  No. Not that I recall.
21 Q  Were there ever any written records
22 or notes made concerning those conversations?
23 A  There -- I mean, there may be
24 e-mails. Darilyn and Clayton would I think

Page 25

1  certainly trade e-mails about meetings at times.
2  Q  But you never actually wrote any
3  yourself?
4  A  I don't know if that's correct.
5  Q  Do you remember for sure?
6  A  I don't.
7  Q  So you testified earlier that
8  Darilyn or Clayton would be involved in all your
9  communications that you had about the individual
10 claims, and even the ones that you had with your
11 supervisors; is that right?
12 A  They -- they -- yeah. Although --
13 although, to be clear, I don't -- sorry. Can you
14 repeat that question.
15 Q  It was probably a bad question. The
16 court reporter is going to read back the question.
17 A  Great.
18    THE COURT REPORTER: Question: So
19    you testified earlier that Darilyn or
20    Clayton would be involved in all your
21    communications that you had about the
22    individual claims, and even the ones
23    that you had with your supervisors; is
24    that right?

WWW.CINTELCORPORATION.COM         E-Mail   CINTELCO@GMAIL.COM

Page 26

1  Q  Is that any clearer?
2  A  I mean -- I mean, yeah, that's fair,
3  to the best of my recollection. I guess my -- you
4  know, with respect to individual claims, if we're
5  talking about settlement, I guess I don't -- I
6  don't recall any individual Powell settlements
7  that went beyond my own authority, beyond, you
8  know, Darilyn's or her team leader's or my own
9  authority.
10       I think there was one Powell trial
11 that was discussed with my supervisors, and
12 Darilyn and Clayton were certainly involved in
13 those discussions. But that's just sort of I
14 suppose what I wanted to clarify.
15   Q  Do you remember what trial that was?
16   A  It was called the Hilliard case.
17   Q  So did you ever have communications
18 with your supervisors about the Powell account
19 generally, not tied to any one specific individual
20 asbestos claim?
21   A  No. Not that I recall.
22   Q  So what did you do to confirm your
23 belief that all these communications would have
24 included Ms. Michaud or Mr. Budlong?

Page 27

1   A  I searched my own memory.
2   Q  And I understand that you're not at
3  Resolute anymore, but you didn't look at any of
4  your old e-mails?
5   A  I did not.
6   Q  None of them were provided for you
7  to look at?
8   A  They were not.
9   Q  Did anyone ever tell you that they
10 had done a search of all your old e-mails?
11   A  No.
12   Q  Now, do you have any knowledge over
13 how long Ms. Michaud kept e-mails in her Outlook
14 account, or documents?
15   A  I do not.
16   Q  When did you first learn of this
17 litigation?
18   A  I have no idea.
19   Q  Was it while you were at Resolute?
20   A  I don't know.
21   Q  Have you ever seen Powell's
22 discovery requests in this matter?
23   A  I have not.
24   Q  While you were at Resolute, did you

Page 28

1  ever search your e-mail account, computer, or
2  shared network spaces for documents relating to
3  Powell?
4   A  No. I don't recall doing that.
5   Q  To your knowledge, did anyone else
6  ever do that?
7   A  Not that I'm aware.
8   Q  While you were with Resolute, were
9  you ever instructed to preserve documents relating
10 to Powell?
11   A  I don't know.
12   Q  Were you ever instructed to stop any
13 deletion of e-mails or other documents relating to
14 Powell?
15   A  I don't know.
16   Q  Just give me one second,
17 Mr. Dinunzio.
18   A  Sure.
19       MR. BRUNNER: Okay. Mr. Dinunzio,
20 that's all we have for you today.
21       Rich, do you have anything you want
22 to ask him?
23       MR. GARNER: No. We will reserve
24 the right to read it, if it's ordered.

Page 29

1  We reserve signature. Other than that,
2  Peter, thank you very much. I will be
3  in touch.
4       THE WITNESS: Thank you.
5       (Deposition concluded at 11:38 a.m.)

CIN-TEL CORPORATION
PH: 513-621-7723　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　FX: 513-263-9023

Page 30

1　　　A C K N O W L E D G E M E N T
2
3　　STATE OF OHIO　　　：
4　　COUNTY OF HAMILTON :
5
6　　　　I, Peter Dinunzio, have read the transcript of
7　　my testimony, given as if under oath, on December
8　　14, 2016.
9　　　　Having had the opportunity to note any
10　 necessary corrections of my testimony on the
11　 errata page, I hereby certify that the
12　 above-mentioned transcript is a true and complete
13　 record of my testimony.
14
15
16　　　　　　　　　_____
17　　　　　　　　　PETER DINUNZIO
18
19
20
21
22
23
24

Page 31

1　　　　　C E R T I F I C A T E
2
3　　　　I, Renee Rogers, a notary public within
4　　and for the State of Ohio, do hereby certify that
5　　the within 30 pages were taken by me in stenotypy
6　　and transcribed by computer-aided transcription,
7　　and that this is a true, accurate, and complete
8　　transcription of the same.
9
10　　　　　　　　　_____
11　　My commission expires:　　Renee Rogers
12　　April 13, 2021　　Notary Public-State of Ohio
13
14
15
16
17
18
19
20
21
22
23
24

9 (Pages 30 to 31)

WWW.CINTELCORPORATION.COM　　　　　E-Mail　　CINTELCO@GMAIL.COM

CIN-TEL CORPORATION

PH:  513-621-7723                                         FX:  513-263-9023

Page 32

**A**
**a.m** 1:16 2:17 29:5
**above-mentioned** 30:12
**access** 18:10,12
**account** 11:4,14 12:18 13:14,19 17:3,19 23:16 26:18 27:14 28:1
**accurate** 9:22 31:7
**acknowledged** 9:2
**actual** 8:10
**administer** 7:2
**Adrian** 21:11
**affixed** 4:14
**agendas** 19:24 20:3
**agreement** 4:8
**al** 1:9 2:8
**alerting** 14:2
**alluded** 9:15
**American** 3:4
**amount** 12:24 14:9 21:20
**amounts** 13:11 22:14
**ampersand** 10:6
**answer** 8:1,5
**anymore** 27:3
**APPEARANCES** 3:1
**apply** 13:18
**applying** 13:17
**appointment** 20:6
**approval** 14:6
**approve** 12:19 14:8
**approving** 13:22
**approximate** 19:16
**Approximately** 10:19
**April** 31:12
**ARFSAs** 16:14
**arose** 17:19
**asbestos** 10:16,21 11:6,15,18,24 12:13,20 14:19 15:1 16:15,24 18:23 21:4,14 26:20
**aside** 8:19
**assist** 16:23
**assistant** 10:15,20 11:2,17 12:12
**assume** 8:6
**assuming** 12:5
**ASU** 12:14,17 16:4 16:13 17:20 21:7 21:13,18,20,22 22:4,17,21,23 23:24
**attorney** 12:6,8
**authority** 14:7,20 16:15 17:17 18:24 21:16,20,23 22:14 22:16,18,21 23:3 23:5,8,9 26:7,9
**aware** 28:7

**B**
**B** 5:6
**back** 14:16 25:16
**bad** 25:15
**based** 8:20,21 15:17
**basis** 22:3,7
**behalf** 3:2,8 6:7
**belief** 26:23
**believe** 9:22 19:3 23:24
**best** 26:3
**bet** 10:8
**beyond** 17:17 22:12 22:13 24:19 26:7 26:7
**bit** 8:2 21:13
**bright-line** 22:12
**Brooke** 15:10
**Brunner** 3:3 5:4 6:1,4,10,13,19,22

7:14,17,20 8:13 8:16,18,24 9:6 28:19
**Budlong** 14:1,11 20:14 26:24

**C**
**C** 30:1 31:1,1
**C-L-Y-D-E** 10:6
**C-O** 10:6
**calculator** 16:18 17:15 18:24
**calculators** 17:1 19:1,12
**calendar** 20:6
**called** 14:19 18:18 26:16
**case** 1:8 2:7 9:15 13:8,9,23 14:3,5,8 14:21 15:6 26:16
**cases** 15:19
**cause** 12:21
**certain** 12:19
**certainly** 15:16 21:3 22:10 25:1 26:12
**certify** 30:11 31:4
**Chris** 23:11
**Cin-Tel** 2:22
**Cincinnati** 2:17,23 3:5 6:23 7:1
**circumstance** 13:7
**City** 6:21
**Civil** 4:7
**claim** 15:1,3,18 16:24 17:16 19:2 19:4 21:14 22:9 26:20
**claims** 16:5 25:10 25:22 26:4
**clarify** 26:14
**Clayton** 14:1,11 15:21 17:8,13 20:1,12,17,22

24:24 25:8,20 26:12
**clear** 25:13
**clearer** 26:1
**Clyde** 10:4,10
**cold** 8:2
**Collins** 3:10
**comes** 16:17
**commission** 31:11
**communicate** 20:15 23:15
**communicated** 21:3
**communicating** 17:13 20:17
**communication** 20:11
**communications** 19:18,21 20:20,22 21:6 23:10,18,22 24:1,15 25:9,21 26:17,23
**Company** 1:6,9 2:5 2:8 3:8 6:6,8
**complete** 30:12 31:7
**computer** 28:1
**computer-aided** 31:6
**concerning** 18:8,11 19:19 24:22
**concluded** 29:5
**confirm** 26:22
**conjunction** 9:17
**consideration** 13:1
**considered** 7:8
**considering** 14:2
**consult** 22:8
**context** 18:22
**conversations** 24:22
**Corporation** 2:22
**correct** 7:12 11:20 12:7 13:12 25:4

**corrections** 30:10
**counsel** 4:3,8 9:9 9:18 10:3 12:5
**COUNTY** 30:4
**couple** 6:14 7:21 24:17
**court** 1:1 2:1 6:24 25:16,18
**create** 17:4,9
**created** 19:2,11
**creates** 17:1
**Cross** 5:4
**cross-examination** 2:14 4:6 9:5
**current** 10:1 12:5

**D**
**D** 5:1 30:1
**Dardis** 23:11
**Darilyn** 14:1,11 15:21 17:3,7,13 20:1,13,18 24:24 25:8,19 26:12
**Darilyn's** 21:15 26:8
**date** 24:2
**David** 3:3 21:2,3,11 24:10
**December** 1:15 2:18 30:7
**declaration** 8:17,22 9:13,15,16
**Defendant** 3:8
**Defendants** 1:10 2:9
**deletion** 28:13
**depend** 12:24 15:17
**depended** 19:4
**depending** 21:20
**deponent** 4:12
**deposed** 7:18
**deposition** 1:14 2:12 4:4,9,12 9:8 29:5

**describing** 14:20
**determining** 22:4
**dfhine@vorys.com** 3:7
**different** 21:22,23 22:1,1,13
**Dinunzio** 1:14 2:12 4:5 5:3 6:9,11 7:14 9:1 28:17,19 30:6,17
**discovery** 27:22
**discuss** 14:7,22 15:2 16:5 17:6
**discussed** 7:5 17:14 26:11
**discussing** 14:15 15:19
**discussions** 15:14 15:22 26:13
**DISTRICT** 1:1,2 2:1,2
**DIVISION** 1:3 2:3
**documents** 8:14,16 9:10,12 16:12 18:19 27:14 28:2 28:9,13
**doing** 28:4
**dollars** 19:8
**drafted** 9:16,17
**drive** 18:18,21
**Dublin** 3:11

**E**

**E** 5:1,6 30:1,1,1 31:1,1
**e-mail** 14:1,10,20 15:14 20:5,9,12 28:1
**e-mails** 15:17 16:14 19:17,20 24:24 25:1 27:4,10,13 28:13
**earlier** 25:7,19
**early** 24:3

**East** 2:16 3:5
**either** 14:11,12 19:11 21:14 23:21
**employed** 10:17
**encompassed** 13:5
**entire** 10:22
**errata** 30:11
**ESQ** 3:3,3,10
**estimate** 19:14
**et** 1:9 2:8
**evaluation** 16:24
**exactly** 19:7 24:5
**examination** 4:13
**examined** 9:3
**exceeds** 21:15
**Excel** 16:20
**executed** 9:14
**exhibits** 5:8
**expires** 31:11
**explain** 21:12

**F**

**F** 3:3 31:1
**face** 24:16,16
**fact** 14:2
**factors** 13:2
**fair** 17:22 21:24 26:2
**fall** 22:15
**Federal** 4:7
**figure** 13:4
**file** 18:8
**finished** 16:10
**firm** 10:3
**first** 6:15 27:16
**follow-up** 20:11
**follows** 9:4
**formulating** 13:17
**forth** 2:15
**Fourth** 2:16 3:5
**frequency** 22:10
**frequently** 19:10
**front** 8:14
**function** 12:8

**G**

**G** 30:1
**Gaines** 20:18
**Garner** 3:10,10 6:7 6:7 7:6,13 28:23
**general** 13:14,17
**generally** 13:24 14:7 26:19
**getting** 22:7
**give** 11:5 19:13 28:16
**given** 9:3 30:7
**go** 13:7 14:16 21:17 21:17,19
**going** 7:21 8:6,18 11:22 25:16
**Good** 6:10,12
**Great** 3:4 25:17
**Green** 15:10,20 20:1,2
**Greg** 20:23
**guess** 15:15 16:7 22:5,5 26:3,5

**H**

**H** 5:6
**HAMILTON** 30:4
**hand** 13:7,7
**handle** 16:6
**Hannemann** 20:24 21:7
**happen** 15:4
**happened** 22:10
**hereinafter** 2:15
**Hilliard** 26:16
**HINE** 3:3
**holds** 7:13
**huh-uh** 8:10

**I**

**idea** 27:18
**identify** 6:2
**included** 20:12 26:24

**including** 20:12
**INDEMNITY** 1:9 2:8
**individual** 12:20 13:22 24:16 25:9 25:22 26:4,6,19
**individuals** 24:18
**information** 14:4 14:16
**instructed** 28:9,12
**instructions** 7:22
**Insurance** 3:8 6:8
**internal** 18:4
**involved** 12:22 13:3 13:11,21 15:1,21 19:5 21:21,23 22:4,7,14 25:8,20 26:12
**involvement** 11:14 13:13,16
**involves** 21:14,16
**involving** 17:16

**J**

**jmbrunner@vor...** 3:6
**job** 10:1,12 16:13
**Joe** 6:3
**JOSEPH** 3:3

**K**

**K** 30:1
**keep** 18:7
**kept** 27:13
**Kevin** 20:24
**kind** 14:16 17:24 17:24 18:10 22:6
**kinds** 16:12 18:4,19 19:18 20:2
**know** 8:4 20:5 22:8 22:9,11 23:7 24:9 24:11,17 25:4 26:4,8 27:20 28:11,15

**knowledge** 27:12 28:5

**L**

**L** 4:1 30:1
**late** 20:21 24:3
**law** 10:3
**lead** 13:3
**leader** 11:3 20:15 20:19
**leader's** 26:8
**learn** 27:16
**leave** 11:9 24:5
**left** 10:13
**let's** 14:16
**letters** 19:22
**level** 19:4,6
**levels** 21:23 22:13
**line** 6:2 22:15
**Lipman** 23:13
**Lisa** 23:13
**litigation** 27:17
**little** 8:2 21:12 22:6
**LLC** 3:10
**LLP** 2:16 3:4
**long** 10:17 27:13
**look** 27:3,7

**M**

**M** 3:3,10 30:1
**Management** 10:11
**manager** 11:4
**marked** 5:8
**matter** 27:22
**McCarthy** 15:12 15:20
**mean** 16:7 18:22 19:12 20:4 22:6,7 24:23 26:2,2
**meeting** 15:16 19:24 20:3,9,10
**meetings** 25:1
**members** 16:4 21:18,19,22 22:17

22:22
**memo** 18:1 20:8
**memory** 8:21 27:1
**mentioned** 24:19
**merits** 14:7
**met** 20:1
**Metro** 3:11
**Michaud** 14:1,11 26:24 27:13
**Mid-2013** 11:8
**mind** 16:18
**month** 19:13
**morning** 6:10,12

**N**

**N** 4:1 5:1 30:1,1
**name** 10:5 18:17
**NATIONAL** 1:9 2:8
**necessary** 30:10
**need** 8:9 15:7
**network** 18:11,12 18:16 28:2
**never** 17:14 25:2
**New** 6:20
**NICO** 23:19
**notary** 2:19 4:10,14 7:3 31:3,12
**note** 30:9
**notes** 19:22 20:8 24:22
**notice** 2:14 4:8

**O**

**O** 4:1 30:1
**oath** 7:2,9 9:3 30:7
**obligated** 7:9
**occasion** 12:19,21 17:5
**occurred** 23:23
**offer** 7:8
**office** 6:18
**offices** 2:15
**Ohio** 1:2 2:2,17,20

2:23 3:5,11 30:3 31:4,12
**Okay** 6:22 7:17 8:18 11:12,21 12:1,4,11,17 13:21 22:3 28:19
**old** 27:4,10
**once** 19:12
**OneBeacon** 3:8 6:8 23:16
**ones** 11:13 17:9 25:10,22
**opportunity** 30:9
**oral** 24:15
**ordered** 28:24
**Outlook** 27:13
**outside** 4:14

**P**

**P** 4:1
**page** 5:3 30:11
**pages** 31:5
**part** 16:13
**participating** 6:23
**particular** 14:3 22:9
**particulars** 14:21 14:24 15:2
**parties** 4:4
**Pease** 2:16 3:4 6:5
**people** 23:19
**period** 11:23 15:10 15:11
**person** 15:16
**Peter** 1:14 2:12 4:5 5:3 6:9 9:1 29:2 30:6,17
**phone** 6:24 7:3 8:8 24:16
**physical** 18:7
**physically** 7:4
**place** 3:11 4:9 7:12
**Plaintiff** 1:7 2:6,13 3:2 4:6

**please** 6:2 7:23 8:4 8:19 10:5
**points** 22:2
**policies** 13:17 18:4
**position** 10:2,24
**positions** 11:1,12
**possible** 17:21
**Powell** 1:6 2:5 6:5 11:14 12:18 13:18 16:7 17:2,7,12,19 18:8,11,14,22 19:19 21:6 23:11 23:16,16 24:1,15 26:6,10,18 28:3 28:10,14
**Powell's** 13:14 27:21
**Powell-related** 20:20
**prepare** 9:7
**prepared** 20:3
**presence** 4:11,14
**present** 7:4
**preserve** 28:9
**president** 10:15,21 11:2,18 12:12
**probably** 20:21 25:15
**Procedure** 4:7
**procedures** 13:18 18:5
**proceeding** 15:6
**Professional** 1:24 2:19
**provided** 27:6
**public** 2:19 31:3
**public-court** 4:10 4:15
**Public-State** 31:12
**pursuant** 2:14 4:6 4:7
**put** 8:19

**Q**

**question** 7:24 8:20 22:13 25:14,15,16 25:18
**questions** 7:22 8:6 11:22
**quick** 7:21

**R**

**R** 31:1
**range** 17:15
**read** 25:16 28:24 30:6
**really** 16:8 19:16 20:20
**recall** 13:20 14:14 16:8 17:12,18,22 18:2,13 19:10 20:17,19 21:5 23:12,14,17,20,24 24:20 26:6,21 28:4
**received** 13:24
**recollection** 16:1 19:9 26:3
**record** 6:1,3 30:13
**records** 24:21
**refer** 12:13
**referring** 12:15 20:21
**regardless** 13:10
**Registered** 1:24 2:18
**related** 18:14 21:6
**relating** 28:2,9,13
**Relative** 22:16
**remember** 19:6 25:5 26:15
**Renee** 1:24 2:18 31:3,11
**repeat** 25:14
**reported** 1:23 15:7
**reporter** 1:24 2:19 4:10,15 6:24 25:16,18

**representing** 6:5
**request** 14:19 18:23 21:15
**requested** 21:24
**requests** 16:15 27:22
**require** 14:6
**required** 19:3
**reserve** 28:23 29:1
**Resolute** 10:11,12 10:18 11:1,9,13 12:9 13:17 21:8 21:10 24:5 27:3 27:19,24 28:8
**Resolute's** 10:16
**respect** 17:2 26:4
**respective** 4:4
**response** 8:9
**responsibilities** 24:8,12
**review** 9:10,19
**rgarner@crugla...** 3:12
**Rich** 6:7 7:11 28:21
**RICHARD** 3:10
**right** 6:16 7:20 8:14 25:11,24 28:24
**Robert** 15:11
**Roche** 3:10
**Rogers** 1:24 2:18 31:3,11
**role** 11:15
**roughly** 11:3,4
**rule** 22:12
**Rules** 4:7
**Ryan** 15:11,12,20 20:2

**S**

**S** 4:1,1 5:6
**Sater** 2:15 3:4 6:4
**save** 18:23
**saved** 18:13,20

CIN-TEL CORPORATION

PH:  513-621-7723                                      FX:  513-263-9023

Page 35

saw 19:11
saying 8:3
search 27:10 28:1
searched 27:1
second 28:16
see 16:13
seeking 14:5
seen 27:21
send 14:4,17,18
   17:11
senior 10:3 12:5
set 2:15
settlement 12:24
   13:8 14:3,5,6,9,20
   16:15,18,24 17:15
   17:17 18:23,24
   19:1,5,11 21:15
   22:14,16,17,20
   26:5
settlements 12:20
   12:20 13:22 26:6
seven 10:19
Seymour 2:16 3:4
   6:4
shared 18:11,12,16
   18:18,20,20 28:2
signature 4:13,13
   29:1
signed 9:19,23
sitting 6:15,17
situation 17:19
sorry 11:5 15:5
   19:15 23:6 25:13
sort 22:11,12 26:13
South 3:11
SOUTHERN 1:2
   2:2
space 18:11,13,16
spaces 28:2
speak 24:14
specific 26:19
spell 10:5
spoke 9:9
spreadsheet 16:20
   16:21
state 2:20 30:3 31:4
STATES 1:1 2:1
stenotype 4:9
stenotypy 31:5
step 14:16
stipulated 4:3 7:7
stipulation 7:11
stipulations 2:14
stop 28:12
stopped 20:14
Strategic 10:16,21
   11:6,16,18,24
   12:13 21:5
Street 2:16,22 3:5
strike 12:12
struggling 22:6
stuff 24:18
submitted 4:12
substance 6:14
Suite 2:16,22 3:11
summarizing 20:9
   20:9
supervision 13:14
supervisors 15:8
   17:15 25:11,23
   26:11,18
suppose 13:6 26:14
sure 6:17 8:23 10:6
   13:24 15:4 25:5
   28:18
Sycamore 2:22

                T
T 4:1,1 5:6 30:1
   31:1,1
taken 2:13 4:5,9
   31:5
talk 24:14
talked 16:14 19:17
talking 23:23 26:5
team 11:3 20:15,19
   26:8
technically 15:15

telephone 3:9
telephonic 1:14
   2:12 4:4
tell 6:15 7:9,23
   13:23 27:9
tend 13:7
tenure 17:20
terms 19:20 22:22
   24:15
testified 9:3 24:17
   25:7,19
testimony 7:7 9:2
   30:7,10,13
thank 7:17 8:24
   9:14 10:1,7 12:11
   29:2,4
thing 16:17 20:4
things 6:14 16:6
think 19:4 20:4,18
   24:24 26:10
thousands 19:8
three 11:12
tied 26:19
time 4:5,8 10:22
   11:22 15:10,11
   21:8,9 22:2
times 19:13 25:1
title 12:4,5 18:17
today 8:20 28:20
Tom 15:11,12
tool 16:23
touch 29:3
Tower 3:4
trade 25:1
transcribed 4:10
   31:6
transcript 30:6,12
transcription 31:6
   31:8
trial 13:8,10,22
   15:6 17:17 21:16
   26:10,15
true 7:13 30:12
   31:7

truth 7:10
trying 13:4
twice 19:12
typically 12:23
   13:3,5 16:6 17:3
   18:20

                U
U 4:1
uh-huh 8:10
unclear 7:23
uncommon 22:8
underlying 21:14
understand 7:15
   8:3,5,11 12:2,14
   27:2
understood 8:7
Unit 10:16,21 11:7
   11:16,18,24 12:14
   21:5
UNITED 1:1 2:1
usually 14:24 17:7
Utley 3:10

                V
Van 21:11 23:2,4
verbal 8:9
vice 10:15,20 11:2
   11:18 12:12
Vorys 2:15 3:4 6:4
vs 1:8 2:7

                W
W 30:1
want 6:14 8:20
   28:21
wanted 26:14
Warren 21:2,4,11
   22:9 23:2,9 24:10
Warren's 24:12
we're 6:1,23 8:8
   26:4
we've 7:5,6 9:15
   16:14
Wednesday 2:17

week 7:6 19:12,13
went 26:7
WESTERN 1:3 2:3
William 1:6 2:5 6:5
   11:14 17:2
witness 2:13 4:11
   5:2 6:9,12,17,20
   7:16,19 8:12,15
   8:17,23 29:4
words 8:10
work 7:24 10:9
worked 21:4,13
working 20:14
written 8:21 16:12
   18:1 19:18,21,22
   20:3 24:21
wrote 25:2

                X
X 5:1,6

                Y
yeah 16:7 17:10
   22:19 23:8 25:12
   26:2
years 10:19 11:6
York 6:20

                Z

                0

                1
1:14-CV-00807 1:9
   2:8
10 19:13
103 2:22
11:02 1:16 2:17
11:38 29:5
13 31:12
14 1:15 2:18 30:8

                2
200 3:11
2008 11:4

CIN-TEL CORPORATION

PH:   513-621-7723                                              FX:   513-263-9023

**2010** 11:3,4
**2013** 11:3,19,23
**2014** 20:15,21 24:3
**2015** 11:8,10,19,23
  24:3,6
**2016** 1:15 2:18 30:8
**2021** 31:12

### 3
**30** 31:5
**301** 2:16 3:5
**3500** 2:17 3:4

### 4
**43017** 3:11
**45202** 2:23 3:5

### 5
**513** 2:23 3:6

### 6
**614** 3:12
**621-7723** 2:23
**655** 3:11

### 7
**723-4000** 3:6

### 8
**810** 2:22

### 9
**9** 5:4
**901-9600** 3:12