# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

THE WILLIAM POWELL CO.,
     Plaintiff,

vs.

NATIONAL INDEMNITY CO., et al.,
     Defendants.

Case No. 1:14-cv-00807
Dlott, J.
Litkovitz, M.J.

**ORDER**

This matter is before the Court on the following motions filed by the parties: (1) defendant The William Powell Company's Motion to Compel and for Sanctions (Doc. 98), defendant OneBeacon Insurance Company's opposing memorandum (Doc. 104), and plaintiff's reply in support of the motion (Doc. 108); (2) defendant's Cross-Motion for Protective Order and Sanctions (Doc. 106), plaintiff's opposing memorandum (Doc. 109), and defendant's reply (Doc. 111); and (3) defendant's motion to certify question to the Ohio Supreme Court (Doc. 112), plaintiff's response (Doc. 113), and defendant's reply (Doc. 118).

## I. Background

Plaintiff The William Powell Company (Powell) is a privately-held Ohio corporation that was formed in 1846. (Doc. 1, Complaint, ¶ 9). Powell manufactures industrial valves used in a variety of industries. (*Id.*). Powell purchased numerous primary and excess level product liability insurance policies from 1955 to 1977 from General Accident Fire & Life Assurance Corporation (General Accident) that required the insurer to defend and indemnify Powell against damages resulting from accidents leading to bodily injury. (Doc. 45 at PAGEID#: 961, citing Doc. 1 at PAGEID#: 4-5). Through a series of corporate mergers and asset sales, defendant OneBeacon Insurance Company (OneBeacon) assumed the insurance policies that provided

coverage to Powell. (Doc. 44 at PAGEID#: 942, citing Complaint, ¶ 19). According to the complaint, OneBeacon entered into a reinsurance agreement with National Indemnity Company (NICO), pursuant to which OneBeacon sold its then-existing claim reserves to NICO. (Complaint, ¶¶ 20, 21). The complaint alleges that NICO agreed to provide a maximum of $2.5 billion to cover OneBeacon's historic and undetermined liabilities attributable to risks such as the long-tail asbestos exposure claims covered by Powell's General Accident policies. (Complaint, ¶ 21). In addition to acquiring responsibility for reimbursing OneBeacon for claims and defense costs up to a total amount of $2.5 billion, NICO also acquired responsibility for handling and adjusting all of OneBeacon's claims; however, it delegated claims handling to Resolute Management, Inc. (Resolute) in 2006. (Complaint, ¶¶ 21 22).

Beginning in 2001, individuals nationwide and in Canada began to sue for asbestos-related injuries that were allegedly caused by asbestos in Powell valves. (Doc. 44 at PAGEID#: 942, citing Complaint, ¶ 16). Powell tendered claims to OneBeacon pursuant to the insurance policies, which led to litigation in state court (*Powell v. OneBeacon*, No. A1109350 (Ham. Cty, Ohio C.P. Nov. 23, 2011)) and the instant lawsuit which Powell subsequently filed on October 14, 2014. (Doc. 45 at PAGEID#: 962, 963; *see* Doc. 17-3). Powell initially brought claims for violations of the Racketeer Influenced and Corrupt Organizations Act (RICO) and a claim for tortious interference with contractual relations against NICO and Resolute; a claim for breach of the duty of good faith and fair dealing against all defendants; and a claim for breach of contract against OneBeacon. (*See* Doc. 45 at PAGEID#: 962, citing Doc. 1 at PAGEID#: 19-22). The Court dismissed the claims against NICO and Resolute (Doc. 44), leaving only the breach of contract and bad faith claims against OneBeacon pending. (Doc. 45 at PAGEID#: 962, citing Doc. 44). On reconsideration, the Court stated it would abstain from proceeding on the breach of

contract claim until the state courts had made a final determination on which of the insurance policies were triggered by the underlying bodily injury claims. (Doc. 70 at PAGEID#: 1290-92). Thus, the only claim currently at issue in this litigation is Powell's claim against OneBeacon for bad faith under Ohio law, which imposes a duty on an insurer to act in good faith in the handling and payment of the claims of its insured. *See Hoskins v. Aetna Life Ins. Co.*, 452 N.E.2d 1315 (Ohio 1983).

In the course of its rulings, the Court in this litigation rejected a statute of limitations argument raised by OneBeacon in light of Powell's representation to the Court that its bad faith claim was based "solely upon acts which occurred on and after October 10, 2010." (Doc. 45 at PAGEID#: 968, citing Doc. 43 at PAGEID#: 916). The bad faith claim includes allegations that OneBeacon denied coverage for claims after stating coverage was available, instructed counsel to withhold information from Powell, delayed communication of coverage decisions to Powell, excluded Powell from settlement discussions, unilaterally authorized settlements, failed to pay defense costs of local defense counsel and failed to fund settlements, and limited investigations into the exposure dates which determine whether the policies are triggered. (*Id.* at PAGEID#: 962, 967).

## II. Chronology of discovery issues

Powell served it First Set of Requests for Production on OneBeacon on February 18, 2016. (Doc. 98, Exh. A). OneBeacon subsequently filed an interlocutory appeal from the Court's Order denying its motions to dismiss/motion to stay in the Sixth Circuit Court of Appeals on March 1, 2016. (Doc. 49). The Court ordered the parties to proceed with Rule 26 initial disclosures (*see* Doc. 107 at PAGEID#: 2601-02), and the appeal was ultimately dismissed for lack of jurisdiction on August 5, 2016. (Doc. 69). In the meantime, OneBeacon served its

written responses to Powell's Requests for Production and produced 34,479 pages of documents to Powell on June 2, 2016. (Doc. 98, Exh. B, Joseph M. Brunner Decl., ¶ 6; *Id.*, Exh. C). To Powell's knowledge, the production did not include any emails. (*Id.*, Exh. B, Brunner Decl., ¶ 6). OneBeacon subsequently represented to Powell that OneBeacon would produce all relevant documents, including all emails, by July 8, 2016. (*Id.*, ¶ 9). On that date, OneBeacon produced emails from one custodian, Darilyn Michaud, for the period January 18, 2016 to May 31, 2016, and one email from October 2015. (*Id.*, ¶ 10). Powell objected on the ground that OneBeacon had identified four other individuals with knowledge in its interrogatory responses: Bonnie McClements, Gregory Gaines, Clayton Budlong, and Graham Loxley (Doc. 85-1, Exhs. B, D-PAGEID#: 1346-47, 1362). (Doc. 98, Exh. D, David Hine Decl., ¶ 6, Exh. 4, p. 2- PAGEID#: 1729). OneBeacon responded that it was performing a "privilege review" of an additional 50,000 Michaud emails that were responsive to Powell's First Request for Production. (*Id.*, Exh. 4, p. 1- PAGEID#: 1728; *see* Doc. 105, Exh. 1, Sunny Horacek Decl., ¶ 20; Exh. 2, Michaud Decl., ¶¶ 16-23). OneBeacon informed Powell that it needed until August 19, 2016, to complete review and production of Michaud's emails, and that communications from other Resolute employees would be duplicative of her emails because Michaud was the "information hub" for the Powell account and Powell information "goes through" her. (Doc. 105, Exh. 1, Horacek Decl., ¶ 20; Doc. 98, Exh. D, Hine Decl., Exh. 4, p. 1- PAGEID#: 1728). OneBeacon maintains that this approach proved to be sound because only a "small percentage of documents" were later produced to supplement the initial productions. (Doc. 104 at PAGEID#: 2152, citing Doc. 105, Exh. 1, Horacek Decl., ¶ 35, Exh. R- PAGEID#: 2470-2508). Powell disagrees and argues the number of emails generated by individuals other than Michaud and subsequently produced demonstrates that OneBeacon's approach of focusing solely on her emails was not valid.

The Court conducted a discovery conference on August 2, 2016. (Docket Sheet, 8/02/16 Minute Entry). The Court ordered OneBeacon to produce all outstanding documents by August 19, 2016, and a privilege log by September 2, 2016. (Doc. 97 at PAGEID#: 1576). Over the next several weeks, OneBeacon produced three batches of emails: (1) Michaud emails for the period January 2, 2012 to May 31, 2016, which OneBeacon produced on August 19, 2016; (2) an additional 95,986 pages which it produced on August 24, 2016; and (3) 23,951 pages which it produced on September 15, 2016. (Doc. 98, Exh. B, Brunner Decl., ¶¶ 11, 12). Powell alleges that OneBeacon did not search for and produce emails from custodians other than Michaud. (*Id.*, Exh. D, Hine Decl., ¶ 7, Exh. 5- PAGEID#: 1732). Nor did OneBeacon produce documents concerning Powell's account generally; instead, it limited production to documents concerning the handling of individual claims. (*Id.*, Exh. 5- PAGEID#: 1733-36).

The undersigned conducted an informal discovery conference to resolve the parties' outstanding discovery issues on September 22, 2016. (Doc. 71). The Court issued a post-conference Order that established a limited discovery method by which Powell could ascertain whether custodians other than Michaud had emails relevant to Powell's claims that were not duplicative of Michaud's. (Doc. 74). The process disclosed that three individuals in addition to Michaud -- Graham Loxley, Tom Ryan, and Brooke Green -- had emails and other documents that were responsive to Powell's Requests for Production. (Doc. 85-1, Exhs. H, I, M- PAGEID#: 1373-78, 1385-87). The undersigned held a follow-up conference on October 13, 2016, after which OneBeacon was ordered to provide supplemental affidavits; produce documents from the three individuals by November 3, 2016; and provide a complete privilege log to Powell by November 10, 2016. (Doc. 78). OneBeacon provided a revised privilege log on November 10, 2016. (Doc. 98, Exh. K).

The Court held another informal telephone discovery conference on November 18, 2016 (Doc. 88), after which it issued an Order directing the parties to proceed with telephone depositions of six individuals who had previously given affidavits and scheduling the matter for another informal discovery conference. (Doc. 90). Pursuant to the Court's Order, Powell deposed Gregory Gaines, Graham Loxley, David Gold, John Matosky, Peter Dinunzio, and Clayton Budlong. (Doc. 98, Exhs. E-J). Their testimony disclosed that there were communications and documents that OneBeacon had not produced.

The Court held a follow-up telephone discovery conference on December 9, 2016 (Doc. 91), after which Powell sent letters to OneBeacon on December 22 and 29, 2016 to try to resolve the outstanding issues. (Doc. 98, Exh. D, Hine Decl., § 12, Exh. 10- PAGEID#: 1772-82; Exh. B, Brunner Decl., § 13, Exh. 6- PAGEID#: 1663-66). Powell requested a response from OneBeacon on the issues it identified in the letters. (Exh. B, Brunner Decl., ¶ 14, Exh. 7- PAGEID#: 1668-69). OneBeacon responded shortly before the next scheduled conference with the Court on January 9, 2017. (*Id*., Exh. 7- PAGEID#: 1667-68). After the conference, and at Powell's request, the Court issued an order setting a briefing schedule on the outstanding discovery issues. (Doc. 96). The Court granted Powell until January 13, 2017 to file a motion to compel. (*Id*.).

Powell filed its motion to compel and for sanctions on January 13, 2017. (Doc. 98). Powell identified the following documents disclosed by the supplemental depositions which OneBeacon had not produced:

1. A Powell desk file kept by Gaines (Doc. 98, Exh. E, Gaines Depo., pp. 19-20).[1]

2. Emails with attachments containing financial data on Powell's account which Loxley receives monthly (Doc. 98, Exh. F, Loxley Depo., pp. 11-18, 20).

3. Emails containing meeting agendas and discussing topics for meetings that Gold sent and received related to quarterly meetings Resolute employees and Loxley conduct at which Gold but not Michaud is present and at which the status of OneBeacon accounts, including the Powell account, are discussed. (Doc. 98, citing Exh. G, Gold Depo., pp. 18-27).

4. Email conversations Matosky (Assistant Vice-President and Associate General Counsel for Resolute) had with Loxley and previously with Stuart McKay at OneBeacon for which OneBeacon has asserted a privilege claim, which Powell disputes. (Doc. 98, Exh. H, Matosky Depo., pp. 29-32; Exh. B, Brunner Decl., ¶ 14, Exh. 7- PAGEID#: 1667).

5. Relevant documents that likely exist on Resolute's shared network spaces -- the RAPID system and the V drive -- such as communications from local defense counsel and settlement calculators, which have never been searched for responsive nonduplicative documents. (Doc. 98, Exh. G, Gold Depo., pp. 15-17; Exh. H, Matosky Depo., pp. 23-24; Exh. I, Dinunzio Depo., pp. 18-19).

(Doc. 98 at PAGEID#: 1594-95). Powell maintains it "is likely that other relevant documents reside" with custodians other than Michaud. (*Id*. at PAGEID#: 1595).

OneBeacon filed a response to Powell's motion to compel (Doc. 104) together with supporting affidavits and exhibits (Doc. 105) and a motion for a protective order and sanctions (Doc. 106). OneBeacon alleges that with the Court's oversight, it has adopted an electronic document production strategy designed to provide Powell with the discovery to which it is entitled by "focusing on the production sources most likely to have responsive documents." (Doc. 104 at PAGEID#: 2139). OneBeacon contends that "for more than a decade" it has managed Powell's insurance coverage for Powell's asbestos liability through Michaud and "[a]ll communications and decisions about defense and indemnity" of Powell's asbestos liability go

---

[1] Powell asserts that OneBeacon has produced the desk file but has redacted large portions "for dubious reasons." (Doc. 98 at PAGEID#: 1594, citing Exh. B, Brunner Decl., ¶ 13, Exh. 6- PAGEID#: 1664). However, Powell has not moved for production of unredacted portions of Gaines' desk file and the Court's decision expresses no opinion as to these documents.

through her so that she can implement such decisions. (*Id*.). OneBeacon alleges that insofar as other individuals are included in these communications, these individuals' communications are "manifestly duplicative" of Michaud's. (*Id*.). OneBeacon asserts that any relevant communications that do not involve Michaud have been identified and either produced or withheld as privileged. (*Id*. at PAGEID#: 2139-40). OneBeacon denies Powell's allegation that it has failed to search the Resolute V drive or the RAPID claims system. (Doc. 104 at PAGEID#: 2153, n. 6). OneBeacon claims that the documents from the Resolute V drive have been searched and either produced or included in the privilege log between DocID range H13251-0004-001001 and H13251-0004-002763 or in bates range OBFed0028051-OBFed0330405. (*Id*.). OneBeacon alleges that the documents from Resolute's RAPID system are listed in OneBeacon's privilege log between DocID range H13251-0001-001001 to H13251-0001-001012 and the produced portions are in bates range OBFed0034294-OBFed0034327. (*Id*.).

Finally, OneBeacon argues that Powell's demands for additional discovery are not proportional to the needs of the case. (*Id*. at PAGEID#: 2140, 2153-56).

### III. The parties' motions

**1. Powell's motion to compel and for sanctions; OneBeacon's motion for protective order and to certify issue to the Ohio Supreme Court**

Powell moves the Court under Fed. R. Civ. P. 37(a) to compel OneBeacon to produce documents it has allegedly refused to produce or has improperly withheld on privilege grounds. (Doc. 98). Powell alleges that OneBeacon has provided evasive or incomplete responses in violation of Fed. R. Civ. P. 37(a)(4) and has improperly limited production to (1) one custodian, Resolute employee Michaud, and (2) specific indemnification claims that Powell identified in the complaint as only representative samples in support of its bad faith claim against OneBeacon.

Powell alleges that as of the date of its motion - January 13, 2017 - OneBeacon was still collecting and producing documents from Ryan and Green and had not produced any emails from Loxley despite being ordered to do so by the Court. (Doc. 98 at PAGEID#: 1593; *see* Doc. 78). Powell seeks an order compelling the production of emails and specified documents from custodians other than Michaud whom it has identified and documents and communications concerning the general administration and handling of Powell's account that OneBeacon allegedly "has refused to search, collect and produce." (Doc. 98 at PAGEID#: 1586-87). In addition, Powell moves the Court to order the production of documents that OneBeacon has purportedly inappropriately withheld from production based on "incomplete and specious privilege claims." (*Id*. at PAGEID#: 1587). Powell alleges that the privilege log OneBeacon originally provided on September 2, 2016 and revised on November 10, 2016 was deficient because it provided "useless descriptions" of the withheld documents, such as "concerning WPC v. One Beacon"; it indicated OneBeacon had withheld documents pertaining to underlying asbestos claims that pre-date OneBeacon's denial of coverage in those cases; it included entries that did not identify the authors or recipients in some cases, or failed to identify the privilege OneBeacon was asserting; and it indicated OneBeacon had withheld communications between itself and third parties without any proof of a common interest or joint defense agreement. (*Id*. at PAGEID#: 1596, citing Exh. K). Powell also asks the Court to require OneBeacon to pay the expenses Powell incurred in obtaining relevant and improperly withheld documents. (*Id*. at PAGEID#: 1611-13).

OneBeacon disputes that it has improperly withheld documents that Powell is entitled to discover, that it has provided a deficient privilege log, and that Powell is entitled to an award of sanctions. (Doc. 104). OneBeacon also alleges that Powell's approach is not proportional to the

needs of the case. OneBeacon contends that only communications regarding specific underlying claims are relevant and that the communications regarding the Powell account generally are privileged. (*Id*.). OneBeacon argues that its communications with its agents and partners are privileged. OneBeacon moves for a protective order and for sanctions against Powell for seeking the additional discovery and withheld documents. (Doc. 106). OneBeacon also moves to certify an issue pertaining to one specific category of withheld documents to the Ohio Supreme Court. (Doc. 112).

### 2. Governing standards

Rule 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). If a party objects to the relevance of information sought in discovery, "the party seeking discovery must demonstrate that the requests are relevant to the claims or defenses in the pending action." *Anderson v. Dillard's, Inc*., 251 F.R.D. 307, 309-10 (W.D. Tenn. 2008) (citing *Allen v. Howmedica Leibinger*, 190 F.R.D. 518, 522 (W.D. Tenn. 1999)). "If that party demonstrates relevancy, the party resisting discovery bears the burden of demonstrating why the request is unduly burdensome or otherwise not discoverable under the Federal Rules." *Id*. at 310 (citing cases).

If a party fails to produce documents, the opposing party may move for an order compelling production. Fed. R. Civ. P. 37(a)(3)(B)(iv). For purposes of subdivision (a) of Rule 37, "an evasive or incomplete disclosure . . . must be treated as a failure to disclose. . . ." Fed. R. Civ. P. 37(a)(4).

Several decisions issued by district courts in the Sixth Circuit have found that the burden is on the resisting party to demonstrate with specificity that a discovery request is unduly

burdensome or that the discovery sought is not discoverable under the Federal Rules. *Kafele v. Javitch, Block, Eisen & Rathbone*, No. 2:03-cv-638, 2005 WL 5095186, at *2 (S.D. Ohio Apr. 20, 2005) ("As a general rule, '[a]ll grounds for an objection . . . shall be stated with specificity. . . . The mere statement by a party that an interrogatory or request for production is overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection."). *See also Kline v. Mortgage Elec. Sec. Sys.*, No. 3:08-cv-408, 2014 WL 4928984, at *13 (S.D. Ohio Oct. 1, 2014), *on reconsideration in part,* 2014 WL 5460575 (S.D. Ohio Oct. 27, 2014) (same) (citing *In re Heparin Prods. Liab. Litig.,* 273 F.R.D. 399 (N.D. Ohio 2011)); *Groupwell Int'l (HK) Ltd. v. Gourmet Exp., LLC*, 277 F.R.D. 348, 360 (W.D. Ky. 2011) (same).

Although the decisions summarized above pre-date the December 1, 2015 amendment of Rule 26(b)(1), nothing in the amended Rule indicates that the allocation of burdens under the Rule has been altered. Courts continue to hold that the party who files a motion to compel discovery "bears the burden of demonstrating relevance." *Albritton v. CVS Caremark Corp.*, No. 5:13-cv-00218, 2016 WL 3580790, at *3 (W.D. Ky. June 28, 2016) (citing *United States ex rel. Gruenbaum v. Werner Enters., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010); *Anderson*, 251 F.R.D. at 309-10)). *See also Gazvoda v. Sec. of Homeland Sec.*, 15-cv-14099, 2017 WL 168159, at *4 (E.D. Mich. Jan. 17, 2017); *First Horizon Natl. Corp. v. Houston Cas. Co.*, No. 2:15-cv-2235, 2016 WL 5869580, at *4 (W.D. Tenn. Oct. 5, 2016). If the movant demonstrates relevancy, the burden shifts to the party resisting discovery to demonstrate "why the request is unduly burdensome or otherwise not discoverable." *First Horizon Natl. Corp.*, 2016 WL 5869580, at *4 (quoting *Anderson*, 251 F.R.D. at 310); *Gazvoda*, 2017 WL 168159, at *4. Commentary from the rulemaking process bolsters the position that the amended rule did not shift the burden of proving proportionality to the party seeking discovery. *See* Committee on

Rules of Practice and Procedure to the Judicial Conference of the United States, *Report to the Standing Committee*, Rules Appendix B-8 (June 14, 2014), available online at www.uscourts.gov/file/14140/download?token=McTrl8L0 (explaining that the proposed Committee Note had been revised to address concerns about shifting the burden of proof to the party seeking discovery and to clarify that the Rule as amended does not authorize "boilerplate refusals to provide discovery on the ground that it is not proportional"). The advisory committee's note to Rule 26(b)(1) addresses the parties' burdens under the amended Rule as follows:

> Restoring the proportionality calculation to Rule 26(b)(1) does not . . . place on the party seeking discovery the burden of addressing all proportionality considerations.
>
> ….
>
> Nor is the change intended to permit the opposing party to refuse discovery simply by making a boilerplate objection that it is not proportional. . . . [I]f the parties continue to disagree, the discovery dispute could be brought before the court and the parties' responsibilities would remain as they have been since 1983. A party claiming undue burden or expense ordinarily has far better information -- perhaps the only information -- with respect to that part of the determination. A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them. . . .

Fed. R. Civ. P. 26(b)(1) advisory committee's note (2015).

The factors to be considered under amended Rule 26(b) in determining whether a party is entitled to discovery are: "[(1)] the importance of the issues at stake in the action, [(2)] the amount in controversy, [(3)] the parties' relative access to relevant information, [(4)] the parties' resources, [(5)] the importance of the discovery in resolving the issues, and [(6)] whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

**3. The balance of considerations weighs in favor of production of the information in dispute.**

Powell seeks production of the following documents:

1. Monthly emails with attachments Loxley receives that contain financial data concerning Powell's accounts (Doc. 98, Exh. F, Loxley Depo., pp. 11-18);

2. Emails and agendas associated with quarterly meetings between Resolute employees and Loxley (Doc. 98, Exh. F, Loxley Depo., pp. 31-35; Exh. G, Gold Depo., pp. 18-27);

3. Emails between Resolute in-house counsel Matosky and Loxley or McKay discussing Powell's account (Doc. 98, Exh. H, Matosky Depo., pp. 12, 29-33);

4. Documents on Resolute's shared network spaces that have not been searched (Doc. 98, Exh. G., Gold Depo., pp. 15-17; Exh. H, Matosky Depo., pp. 23-24; Exh. I, Dinunzio Depo., pp. 18-19);

5. Responsive, nonduplicative documents from custodians whose documents have not been searched (Budlong, Gaines, Gold, Dinunzio, David Warren, Kevin Hannemann, and Adrian Vann);

6. Communications and other documents that relate to Powell's account generally that have not been produced, including documents from Michaud, Ryan, and Green; and

7. Documents that have been withheld based on allegedly incomplete or invalid privilege claims.

(Doc. 98 at PAGEID#: 1586-87).

Initially, the Court finds that two categories of information have been produced to the extent there is evidence such communications and documents exist: Category #2 agendas related to quarterly meetings involving Loxley, and Category # 4 documents on Resolute's shared network spaces. Powell acknowledges the Loxley meeting agendas were produced the same date it filed the motion to compel, and it reserves the right to challenge redactions to the documents. (Doc. 108 at PAGEID#: 2615). OneBeacon represents that it has searched and produced documents from shared network spaces consisting of the Resolute V-Drive and RAPID claims

system.  (*See* Doc. 104 at PAGEID#: 2153, n. 6).  Powell questions OneBeacon's representations but has not presented any specific evidence that refutes those representations.  (Doc. 108 at PAGEID#: 2614-15).[2]  The Court therefore accepts OneBeacon's representations to the Court on this matter.

As to the remaining categories, the parties continue to debate whether OneBeacon's cause of action for bad faith handling of the asbestos claims against Powell is limited to the specific asbestos claims identified in the complaint.  The Court has found that the specific asbestos claims identified in the complaint are not an exclusive list of the bad faith acts at issue in this litigation; instead, the underlying cases identified in the complaint are only "a representative sample of a larger set of bad faith incidents[.]"  (Doc. 45 at PAGEID#: 967). Further, the undersigned has previously determined that communications regarding information that is not reflected in the policy manuals related to investigating, defending and processing claims are "fair game" for discovery purposes given the bad faith claim.  (Sept. 22, 2016 Inf. Disc. Conf. Audio Recording at 1:38:38, 3:32:34-3:33:02).  Thus, Powell's discovery requests are relevant insofar as they relate to alleged bad faith acts in the handling of Powell's account, and relevancy is not restricted to specific asbestos claims identified in the complaint.  To the extent Powell has pointed to evidence that indicates the custodians it has named are in possession of those communications or related information, Powell is entitled to discover such information.

OneBeacon disputes that the information sought in Category Nos. 1, 2 (relating to emails), 3, 5, and 6 is relevant to this lawsuit and is discoverable by Powell.  First, One Beacon

---

[2] For example, Powell alleges the number of documents OneBeacon claims to have produced from the Resolute V drive is "suspect" (Doc. 108 at PAGEID#: 2614), but Powell has not presented information about any of the particular documents within the 300,000 page span identified by OneBeacon to cast doubt on OneBeacon's representation.  It is not sufficient for Powell to generally express doubt as to the validity of OneBeacon's representation and attempt to place the burden on OneBeacon to prove a negative, i.e., that no additional documents exist.

alleges that the Loxley emails described in Category Nos. 1 and 2 are not relevant because with the exception of one underlying case that purportedly is not at issue here - the Edward Walton case - Loxley "was clear that he is not involved in decisions regarding defense, indemnity or the handling of the [Powell] account as a whole and [he] does not receive information regarding the types of damages sought by [Powell]." (Doc. 111 at PAGEID#: 2677). The Court disagrees that emails sent to Loxley containing financial data on the Powell account are not relevant to Powell's bad faith claim. Loxley provided testimony that indicated he received monthly email communications and financial data pertaining to the Powell account and that he had a responsibility to protect against Resolute eroding coverage too quickly for the Powell claims. (Doc. 98, Exh. F, Loxley Depo. at 13-18). Loxley testified that as the head of claims for Armour Risk Management, Ltd. (the entity that purchased OneBeacon's asbestos liabilities), he oversees a team of claims personnel who are responsible for adjusting claims on the portfolios his company manages or owns, including OneBeacon. (*Id*. at 10-11, 14). Loxley testified that as the head of claims he has received monthly emails from Resolute since January 2015 containing financial data in a spreadsheet form pertaining to the Powell account. (*Id*. at 12-14). Loxley testified that his primary responsibility with regard to the OneBeacon portfolio is to "work with Resolute to monitor the erosion of the NICO reinsurance coverage which is in place protecting" the OneBeacon portfolio. (*Id*. at 14-15). Loxley testified that after receiving the data, he will speak with Resolute to be updated on any significant areas of activity or concern that may be driving the erosion. (*Id*. at 15). Loxley also testified that his company monitored developments in underlying claims in litigation and provided some oversight to make sure Resolute is "not seeking to erode [the] coverage any quicker than they should." (*Id.* at 18). Loxley testified that by monitoring the claims, his company can be prepared to deal with a situation where the cover

might "erode more quickly" than anticipated, and they can "understand what their strategy is in dealing" with claims filed against Powell. (*Id.* at 17-18). This testimony is sufficient to show that the monthly emails Loxley receives are relevant to Powell's bad faith claim and are discoverable. In addition, Powell has presented evidence that Loxley communicated by email with Resolute employees concerning the quarterly meetings and those emails "would not have included the account managers." (Doc. 98, Exh. G, Gold Depo. at 28-29). Thus, these emails would not be duplicative of those produced for Michaud and are relevant.

Second, One Beacon alleges that the information in Category No. 3 -- emails between Resolute's in-house counsel Matosky and either Loxley or McKay discussing Powell's account -- relate to on-going coverage litigation between Powell and OneBeacon and that Powell concedes Matosky's communications with Loxley "have been identified and withheld as privileged." (Doc. 111 at PAGEID#: 2677-78, citing Doc. 98, Exh. H, PAGEID#: 1841, 1846 and Doc. 98 at PAGEID#: 1595). Matosky testified that he communicated with Loxley about the Powell account by email about once a quarter, as he typically communicated with Loxley only to report developments in litigation where OneBeacon was involved as a party, and prior to 2014 he had communications of the same nature with McKay at OneBeacon. (Doc. 98, Exh. H, Matosky Depo., pp. 31-33). Matosky's description of the nature of his communications with Loxley and McKay demonstrates the relevance of those communications to this litigation. Whether OneBeacon is entitled to withhold those documents on the basis of an attorney-client privilege is a separate issue that will be addressed *infra*.

Third, OneBeacon alleges it has produced relevant, unprivileged portions of information in Category #5 ("Responsive, nonduplicative documents from custodians whose documents have not been searched (Clayton Budlong, Greg Gaines, David Gold, Peter Dinunzio, David Warren,

Kevin Hannemann, and Adrian Vann))." (*See* Doc. 111 at PAGEID#: 2678, citing Doc. 104 at PAGEID#: 2153 and Doc. 105 at PAGEID#: 2178-2180).[3] OneBeacon contends that Powell has not explained why it believes documents outside the scope of OneBeacon's search may exist, why they would be relevant, why they would not be privileged, and why they would not be accessible from other sources. (Doc. 111 at PAGEID#: 2678). One Beacon alleges that "hoping" to find additional documents does not justify conducting discovery. (*Id.*). However, as to email communications related to the Powell account sent or received by Gold, Budlong and Dinunzio, Powell has done more than simply express a "hope" that it can find additional relevant emails from the individuals identified in Category #5. Powell relies on deposition testimony that Gold participated in quarterly meetings between Resolute employees at which the status of Powell's account was discussed, and Gold sent and received emails related to the meetings containing meeting agendas and discussing meeting topics. (Doc. 98 at PAGEID#: 1594-95, citing Exh. G, Gold Depo., pp. 18-27). Budlong gave deposition testimony that although he was not positive, he likely viewed email correspondence on exposure modeling for the Powell account. (Doc. 98, Exh. J, Budlong Depo., pp. 17-18). Dinunzio testified that as a member of Resolute's Asbestos Strategic Unit (ASU) responsible for approving individual asbestos claim settlements, he discussed the merits of individual Powell cases with his supervisors and other members of the ASU (Doc. 98 at PAGEID#: 1595, citing Exh. I, Dinunzio Depo., pp. 14-16; *see also* pp. 11-13). Thus, Powell has shown that information identified in Category No. 5 in the custody of these three individuals is relevant.

Powell has not shown that communications of Warren, Hanneman and Vann are relevant. Dinunzio testified that he did not recall whether he had any communications related to Powell

---

[3] The portions of the record OneBeacon cites to support its contention do not reference documents from Budlong, Gold, Dinunzio, Warren, Hanneman, or Vann.

with Warren, who worked with him in the ASU; he did not have communications with Hanneman, who was not in the ASU while Dinunzio worked at Resolute; and Dinunzio did not testify that he had any communications with Vann, who did not have settlement authority with regard to the Powell claims. (*Id*. at 21-23). Gold testified he had no recollection of ever receiving an email from the ASU on the Powell account.[4] (Doc. 98, Exh. B, Gold Depo., pp. 22-25). Powell is therefore not entitled to discover email communications or documents in the possession of these individuals at this juncture.

The sixth category of information Powell requests is communications and other documents that relate to Powell's account generally and which have not been produced, including documents from Michaud, Ryan, and Green. To the extent OneBeacon has limited its production to communications, documents, and information related to specific asbestos claims against Powell, its production is incomplete. The Court has determined that the scope of Powell's claim is not limited at this stage to the underlying asbestos claims identified in its complaint, but that its bad faith claim relates to the handling of Powell's account generally.

By its discovery requests, Powell seeks information related to OneBeacon's handling of its account and communications involving individuals who worked on the account that are in OneBeacon's possession. Because these discovery requests are relevant to Powell's bad faith claim, OneBeacon has the burden of demonstrating why Powell's request is "unduly burdensome or otherwise not discoverable under the Federal Rules." *Anderson*, 251 F.R.D. at 310. Upon consideration of each of the factors set forth in amended Rule 26(b)(1), the undersigned concludes that OneBeacon has failed to meet its burden to demonstrate with specificity that the

---

[4] Warren, Hanneman and Vann worked in the ASU at the relevant time.

production of the requested information is not warranted under the Rule as to those categories of information that have not yet been produced.

### i. The importance of the issues at stake in the action

Powell alleges that the issues at stake in this matter are of critical importance and cannot be measured in monetary terms. (Doc. 98 at PAGEID#: 1601-02). Powell alleges this is so because it has been defending against asbestos claims for ten years and OneBeacon's good faith in defending the claims is vital to Powell's continued existence. (*Id.*). Powell cites the advisory committee's note to Rule 26 for the proposition that the significance of the substantive issues here "may be measured in institutional terms apart from the monetary stakes involved." *See* Fed. R. Civ. P. 26(b)(2)(C)(iii) advisory committee's note (2015). One Beacon attempts to downplay the significance of the issues at stake by arguing that all that is before the Court is a state law bad faith claim which is limited to the processing of 23 specific asbestos claims identified in the complaint and through discovery and to the time period after October 2010. (Doc. 104 at PAGEID#: 2154-55).

Neither party has provided valid support for its arguments pertaining to the significance of the substantive issues at stake here. OneBeacon's attempt to minimize the importance of the issues by focusing on the number of claims allegedly involved in this litigation is unavailing. The Court has previously determined that the bad faith acts alleged with regard to the handling of the approximately 20 claims identified in the complaint are representative of a larger set of bad faith incidents (Doc. 45 at PAGEID#: 967), and the Court has never limited the bad faith claim to the processing of those specific claims.[5] At the same time, Powell has failed to demonstrate that it is impossible to measure monetarily the significance of the issues at stake. Powell has not cited any evidence that indicates resolution of this lawsuit in its favor is essential to the

---

[5] Powell identified a total of 23 specific underlying asbestos claims in discovery.

company's continued existence. Moreover, Powell's bad faith insurance claim does not seek to vindicate the type of interests that the advisory committee's note recognizes cannot be measured in monetary terms, i.e., "vitally important personal or public values" or "public policy" matters such as "employment practices [or] free speech" that "may have importance beyond the monetary amount involved." Fed. R. Civ. P. 26(b)(2)(C)(iii) advisory committee's note (2015). The first factor does not weigh in favor of ordering production of the requested information.

### ii. The amount in controversy

The parties present widely varying positions on the amount in controversy. Powell calculates the amount in controversy arising from OneBeacon's alleged bad faith handling of its claims at over $10 million, and Powell alleges that its monetary damages continue to increase. (Doc. 98 at PAGEID#: 1602, citing Exh. B, Brunner Decl., ¶ 15, Exh. 8- PAGEID#: 1671-74). Powell asserts these damages arise from OneBeacon's alleged bad faith acts of rejecting settlement demands without consulting Powell, preventing Powell's usual trial counsel from participating in trials or in witness preparation, and communicating with local counsel and extending settlement authority without Powell's knowledge. (*Id*. at PAGEID#: 1602, citing Exh. M, p. 8- PAGEID#: 2042). Powell contends the damages include high settlement amounts to which OneBeacon belatedly agreed; the delayed evaluation of cases and coverage positions; fees Powell was required to pay to outside counsel to monitor OneBeacon's activities; compensation paid to Powell's executives for time devoted to the lawsuit; and a $3 million punitive damages verdict returned against Powell in the matter of *George Coulborn*, No. 3:13-cv-8141 (D. Ariz.). (Doc. 98 at PAGEID#: 1602; *see id*., Exh. M, Powell Responses to OneBeacon's First Set of Interrogatories, Requests for Production of Documents, and Requests for Admission, at PAGEID#: 2042).

In response, OneBeacon alleges that Powell has not placed a value on its bad faith damages, which OneBeacon asserts must be separate and distinct from damages for a breach of contract, and that the information Powell needs to value its damages is exclusively within its possession.  (Doc. 104 at PAGEID#: 2154).  OneBeacon contends it has provided evidence that the collective indemnity value of the 23 claims Powell has identified as being at issue is no greater than $265,688.  (*Id*. at PAGEID#: 2155).  OneBeacon alleges it has spent almost this full amount, or a total of approximately $250,000, on document production in the case to date.  (*Id*. at PAGEID#: 2152; *see* Doc. 105, Exh. 1, Horacek Decl., ¶ 43).  OneBeacon also challenges Powell's claim that it acted in bad faith in the *Coulbourn* litigation and that Powell suffered $3 million in damages as a result.  (Doc. 104 at PAGEID#: 2149-50, n. 4).

In reply, Powell states that the $11 million total in damages at which it values its case was included in its initial disclosures (Doc. 108 at PAGEID#: 2617-18, citing Exh. C-PAGEID#: 2656-57) and reflected in its April 8, 2016 settlement demand for $11 million, consisting of $4.2 million in  claimed compensatory damages for lost executive time, settlement costs, and defense counsel invoices; punitive damages of double the amount of compensatory damages; and attorney fees and costs.  (*Id*., Exh. A, Brunner Decl., ¶ 5).

OneBeacon's position that Powell's damages are limited to $265,688 and that Powell has not justified a damages claim in excess of $10 million is not supported by the record. OneBeacon alleges that the Court has previously held in this case that Powell is limited to pursuing a claim of "bad faith handling and processing of insurance claims separate and apart from the denial of insurance coverage."  (Doc. 104 at PAGEID#: 2147-48, citing Doc. 70 at PAGEID#: 1293).  OneBeacon alleges that by so holding, the Court recognized that there "must be damages other than breach-of-contract damages" for a bad faith "tort to be actionable

independent of a breach-of-contract claim." (*Id*. at PAGEID#: 2147-48, citing *Shimola v. Nationwide Ins. Co.*, 495 N.E.2d 391, 393 (Ohio 1986); *Strategy Group for Media, Inc. v. Lowden*, No. 12 CAE 03 0016, 2013 WL 1343614, at ¶ 30 (Ohio App. 5th Dist. March 21, 2013); *Textron Fin. Corp. v. Nationwide Mut. Ins. Co*., 684 N.E.2d 1261 (Ohio App. 9th Dist. 1996)). OneBeacon concludes that "[d]efense and indemnity costs are contract damages" and that Powell must therefore demonstrate it has damages other than defense and indemnity costs allegedly owed under the OneBeacon policies in order to proceed on its bad faith claim. (*Id*. at PAGEID#: 2148). However, OneBeacon has not cited any authority to support its position that defense and indemnity costs can be recovered only for a breach of contract.[6] Further, OneBeacon construes the Court's prior decision limiting Powell to proceeding on its bad faith claim too broadly. The Court found that Ohio recognizes a cause of action against insurers for a breach of the duty of good faith "separate and apart from the denial of insurance coverage"; that Powell could proceed on its bad faith claim; but that Powell could not prove its breach of contract claim because a determination had not yet been made as to "which policies were triggered." (Doc. 70 at PAGEID#: 1293-94). The Court did not make any findings regarding the damages that Powell must allege or prove to proceed on its bad faith claim.

Ohio law governs the damages available to Powell on its breach of contract and bad faith claims. Ohio law holds that "an insurer who acts in bad faith is liable for those compensatory

---

[6] The Ohio cases OneBeacon cites do not support this proposition but instead hold that to recover punitive damages or to proceed on a tort claim in addition to a claim for breach of contract, the plaintiff must allege actual damages attributable to the tortious conduct that are in addition to those attributable to a breach of contract. *See Shimola*, 495 N.E.2d at 393 (holding that because "[e]xemplary or punitive damages may not be awarded in the absence of proof of actual damages" under Ohio law, the appellant had to prove "he suffered a harm distinct from the breach of contract action and attributable solely to the alleged tortious conduct of appellee" to recover punitive damages); *Strategy Group for Media, Inc*., 2013 WL 1343614, at ¶ 30 (stating that in order for fraud and breach of contract claims to coexist in same action, actual damages must be attributable to the wrongful acts of the alleged tortfeasor in addition to those attributable to the breach of contract and holding that the plaintiff did not allege separate damages there because the damages were based on the same outstanding invoices); *Textron Fin. Corp*., 684 N.E.2d at 1270 (holding that a claim for fraud did not lie where the claim was based on the same conduct that gave rise to the claim for breach of contract and the plaintiff did not allege actual damages in addition to those attributable to the breach of contract).

damages flowing from the bad faith conduct of the insurer and caused by the insurer's breach of contract." *Zoppo v. Homestead Ins. Co.*, 644 N.E.2d 397, 402 (Ohio 1994). *See also Valley Forge Ins. Co. v. Fisher Klosterman, Inc.*, No. 1:14-cv-792, 2016 WL 1642961, at *12 (S.D. Ohio Apr. 26, 2016) ("an insurer who acts in bad faith is liable for those compensatory damages, including attorney fees, flowing from the bad faith conduct of the insurer and caused by the insurer's breach of contract.") (quoting *Furr v. State Farm Mut. Auto. Ins. Co.*, 716 N.E.2d 250, 265 (Ohio App. 6th Dist. 1998)); *Asmaro v. Jefferson Insurance Co. of New York*, 574 N.E.2d 1118, 1123 (Ohio App. 6th Dist. 1989) (plaintiff who proves a bad faith claim can recover "extra-contractual damages," which are "actual damages over and above those covered by the insurance contract sustained by the insured as a consequence of the insurer's bad faith"). Powell has specified the amounts and types of damages it claims have flowed from OneBeacon's alleged bad faith actions. Although OneBeacon challenges the merits of Powell's bad faith allegations and its $3 million damages claim in connection with the *Coulbourn* case (Doc. 104 at PAGEID#: 1249-50, n. 4), the merits of the parties' dispute cannot be resolved at the discovery stage. At this juncture, the Court has no reasonable basis to reject Powell's representations that its damages may exceed $10 million.

Conversely, OneBeacon alleges that its costs to complete the document production requested by Powell and update its privilege log "could equal or exceed the $250,000" it has spent on document production to date. (*See* Doc. 111-1, Second Horacek Declaration, ¶ 8). However, OneBeacon has provided no factual basis for this estimate. OneBeacon has failed to identify the additional time and costs it anticipates it would expend, including the number of files and/or databases upon which it bases its estimate, the expected man-hours to identify responsive information from and perform its review of these sources, and the anticipated cost basis for the

labor.  *See, e.g., Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 306 (6th Cir.

2007) (providing such estimates).  *See also Kafele*, 2005 WL 5095186, *2 n. 8 (responding party

"must show specifically how each discovery request is burdensome and oppressive by submitting

affidavits or offering evidence revealing the nature of the burden") (citation omitted).[7]  Further,

OneBeacon's assertion that it could be required to spend more than twice the amount it has spent

to date on additional discovery is questionable given OneBeacon's representation that it has

already produced the vast majority of its discovery.  (*See* Doc. 104 at PAGEID#: 2152; *see* Doc.

105, Exh. 1, Horacek Decl., ¶ 43).  Moreover, as the Court has determined that several of the

categories of discovery sought by Powell are not relevant, the cost will necessarily be lower than

OneBeacon's estimate.

Thus, although the Court cannot reasonably estimate the additional discovery costs

OneBeacon is likely to incur based on the information OneBeacon has provided, those costs are

likely to be far lower than the discovery costs OneBeacon has incurred to date.  At the same

time, Powell has demonstrated that the amount in controversy is substantial.  This factor

therefore weighs in favor of production of the contested information.

### iii. The parties' relative access to relevant information

Powell argues that it has no access to the information it requests because the information

consists of OneBeacon's internal documents and communications.  (Doc. 98 at PAGEID#:

1602).  OneBeacon alleges in response that Powell has equal access to documents it needs,

which OneBeacon divides into two categories: (1) any unprivileged documents that tend to show

OneBeacon's actions were not reasonably justified; and (2) any unprivileged documents that tend

---

[7] Likewise, the protective order OneBeacon seeks may only be issued for "good cause," which requires OneBeacon to "articulate specific facts showing 'clearly defined and serious injury' resulting from the discovery sought and [it] cannot rely on mere conclusory statements."  *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001) (citation omitted).

to show Powell was damaged. (Doc. 104 at PAGEID#: 2155). OneBeacon alleges that Powell has access to information in the first category related to defense and indemnification, including all information generated and compiled by its defense lawyers, through the parties' Data Exchange Protocol and other shared information.[8] *Id.* One Beacon also claims that insofar as this information "comes by and through Michaud," OneBeacon has already produced it. (*Id.*). OneBeacon alleges that information in the second category is "exclusively" in Powell's possession. (*Id.* at PAGEID#: 2155-56). OneBeacon argues that to the extent it has in its possession information concerning defense and indemnity payments it made on Powell's behalf, that information pertains only to OneBeacon's performance of its contractual obligations and therefore cannot form the basis of Powell's bad faith damages claim. (*Id.* at PAGEID#: 2156).

In response, Powell disputes that it has equal access to the information it seeks. Powell alleges that the Data Exchange Protocol did not cover OneBeacon and Resolute's internal communications, which is "the bulk" of the information it seeks. (Doc. 108 at PAGEID#: 2618). Powell also argues that it needs information about more than just the 23 claims referenced by OneBeacon: Powell alleges it needs information from additional custodians senior to Michaud who were responsible for analysis and settlement, the financial data, and information about the Powell account as a whole to enable Powell to make sense of the claim-specific communications. (*Id.*).

Considerations of access to the relevant information favor ordering production of the information Powell seeks to discover. OneBeacon does not allege that Powell has access to its

---

[8] OneBeacon and Powell agreed to implement a Data Exchange Protocol in 2012 whereby OneBeacon would provide Powell with settlement information for every Powell asbestos liability claim partially or fully funded by OneBeacon; OneBeacon would give Powell quarterly updates on such settlement information moving forward; and OneBeacon would provide Powell with access to all of OneBeacon's claims files concerning asbestos claims against Powell, but privileged and protected coverage materials would not be subject to inspection. (Doc. 104 at PAGEID#: 2146).

internal communications, meeting agendas, and similar documents that Powell seeks. Internal communications related to Powell's account are relevant to its claim that OneBeacon acted in bad faith "in the handling, processing, payment, and satisfaction of claims made under the General Accident Policies" (*see* Doc. 70 at PAGEID#: 1292-93) by denying coverage for claims after stating coverage was available, instructing counsel to withhold information from Powell, excluding Powell from settlement discussions, and failing to pay defense costs of local defense counsel. (Doc. 45 at PAGEID#: 967). The third factor weighs in favor of ordering production.

### iv. The parties' resources

Powell alleges it is a "small" company that has been placed in the position of defending tens of thousands of asbestos cases. (Doc. 98 at PAGEID#: 1602). Powell has not produced any evidence that sheds any light on its resources relative to OneBeacon and its potential asbestos exposure. On the other hand, OneBeacon does not allege that complying with the additional discovery requests will be particularly burdensome. OneBeacon simply alleges that this factor is irrelevant in light of the total value of the case. (Doc. 104 at PAGEID#: 2156). OneBeacon has not submitted affidavits or otherwise provided any specific information regarding its resources vis-à-vis the anticipated costs of producing the additional information at issue. Because OneBeacon has not shown that complying with Powell's discovery requests would be "unduly burdensome," consideration of the parties' resources does not weigh in favor of upholding OneBeacon's objections. *See Siriano v. Goodman Mfg. Co., L.P.*, No. 2:14-cv-1131, 2015 WL 8259548, at *6 (S.D. Ohio Dec. 9, 2015) ("The Sixth Circuit . . . has held that limiting the scope of discovery is appropriate when compliance 'would prove unduly burdensome,' not merely expensive or time-consuming.") (quoting *Surles*, 474 F.3d at 305).

### *v. The importance of the discovery in resolving the issues*

Powell alleges that the discovery it requests is important to resolving its bad faith claim because the documents that relate to the Powell account generally and the documents from custodians who are senior to Michaud "will inform and contextualize the individual claim-specific documents." (Doc. 98 at PAGEID#: 1602). In response, OneBeacon alleges that Powell has made no effort to explain what additional information is missing and what bearing the additional information it seeks has on resolution of its bad faith claim. (Doc. 104 at PAGEID#: 2156).

Powell has demonstrated that the requested email communications and documents it seeks are important because they pertain to OneBeacon's handling of the Powell account and the claims procedure it followed. Although OneBeacon protests that only information related to settlement of the 23 specific claims identified by Powell in discovery is relevant, the Court disagrees and finds the requested information is pertinent to the broader issues of who played a role in the general administration and handling of Powell's account and the claims-handling process, what each individual's function was, and whether the claims-handling process was conducted in bad faith. This factor weighs in favor of production of the contested information.

### *vi. Whether the burden or expense of the proposed discovery outweighs its likely benefit*

The information before the Court does not show that the burden and expense of the proposed discovery outweighs its likely benefit. The discovery Powell seeks is relevant to whether OneBeacon acted in bad faith in the course of the Powell claims handling process. OneBeacon has not carried its burden to show that it would be "unduly burdensome" to produce this relevant information. *See Siriano*, 2015 WL 8259548, at *6. OneBeacon alleges it has spent $250,000 to date on discovery and could spend that much or more on the additional discovery

Powell seeks. However, OneBeacon has not made a factual showing that it would be either costly or particularly time-consuming to comply with the proposed discovery requests. Without offering evidence explaining the nature of the alleged burden it faces in producing the proposed discovery, OneBeacon has not met its burden of showing that the burden or expense of complying with Powell's discovery requests, as modified by the Court, outweighs the likely benefit of such discovery to Powell in this lawsuit. The final factor weighs in favor of production of the requested discovery.

### 4. Conclusion

The balance of considerations weighs in favor of ordering defendant OneBeacon to produce the information sought by plaintiff Powell. Powell has demonstrated the requested discovery is relevant and proportional to the issues in this lawsuit. Defendant OneBeacon has not shown that producing this information would be unduly burdensome. The Court will overrule OneBeacon's objections to producing the information designated in Powell's motion to compel and grant the motion subject to the limited exceptions set forth above. OneBeacon must produce the following documents to Powell:

1. Monthly emails Graham Loxley receives that contain financial data concerning Powell's account and emails relating to quarterly meetings between Resolute employees and Loxley.

2. Responsive, nonduplicative documents from the following custodians whose documents have not been searched: Clayton Budlong, Gregory Gaines, David Gold, and Peter Dinunzio.

3. Communications and other documents that relate to Powell's account generally that have not been produced, including documents from Darilyn Michaud, Tom Ryan, and Brooke Green.

### IV. The privilege log

Powell alleges that OneBeacon's privilege log is deficient under Fed. R. Civ. P.

26(b)(5)(A) on the following grounds: (1) the privilege log is not supported by sufficient information to justify many of the privileges and protections OneBeacon asserts, such that OneBeacon has waived any privilege or protection as to such documents; and (2) many of the withheld documents are not entitled to protection because (a) OneBeacon waived the privilege by sharing the documents with third parties, and (b) documents withheld on the grounds of attorney-client privilege and work product that predate the denial of coverage by OneBeacon "may cast light" on the bad faith claim and are therefore discoverable in accordance with Ohio law. (Doc. 98 at PAGEID#: 1603-1611). Powell argues that the Court should order OneBeacon to produce the documents for which the privilege log does not provide sufficient information to substantiate the claimed privilege or protection or any document that has been withheld and is not protected from disclosure. (Doc. 98 at PAGEID#: 1603).

In response, OneBeacon argues that Powell's challenges to the sufficiency of its privilege log are baseless. (Doc. 104 at PAGEID#: 2157). One Beacon alleges that its privilege log is comparable in all respects to Powell's privilege log and provides sufficient information for the Court and Powell to know what information was withheld and why. (*Id*. at PAGEID#: 2160). OneBeacon contends that the privilege log provides sufficient information to show draft spreadsheets and related documents are protected by the work product doctrine; the burden is on Powell to show why it would benefit from disclosure of communications involving active litigation between the parties; OneBeacon's communications with its agents and partners are protected by the attorney-client privilege and work product doctrine under the "functional employee" and "common interest" doctrines; and documents pertaining to OneBeacon's handling of underlying asbestos claims brought against Powell which predate any denial of coverage by OneBeacon in those cases are discoverable only if Powell makes a prima facie

showing of bad faith.  (*Id*. at PAGEID#: 2157-2164).

1. **Rule 26(b)(5)(A)**

Fed. R. Civ. P. 26(b)(5)(A) provides that a party who withholds information that is

otherwise discoverable "by claiming that the information is privileged or subject to protection as

trial-preparation material" must:

> (i) expressly make the claim; and

> (ii) describe the nature of the documents, communications, or tangible things not
> produced or disclosed--and do so in a manner that, without revealing information
> itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A).  The Local Rules of this Court provide:

> Any privilege log shall refer to the specific request to which each assertion of
> privilege pertains.  A privilege log shall list documents withheld in chronological
> order, beginning with the oldest document for which a privilege is claimed.

S.D. Ohio Civ. R. 26.1(a).  A privilege log must contain sufficient detail to enable the opposing

party and the court to assess whether each element of the attorney-client privilege is satisfied.

*Cooey v. Strickland*, 269 F.R.D. 643, 649 (S.D. Ohio 2010)**.**  *See also In re Universal Services*

*Fund Tel. Billing Practices Litig*., 232 F.R.D. 669, 673 (D. Kan. 2005).

In a diversity case, a federal court applies federal law to resolve work product claims and

state law to resolve attorney-client privilege claims.  *In re Powerhouse Licensing, LLC*, 441 F.3d

467, 472 (6th Cir. 2006) (citing *Baker v. General Motors Corp*., 209 F.3d 1051, 1053 (8th Cir.

2000); Fed. R. Evid. 501; *Jewell v. Holzer Hosp. Found., Inc*., 899 F.2d 1507, 1513 (6th Cir.

1990)).  Thus, state law governs OneBeacon's claim of attorney-client privilege in this diversity

action.  *Travelers Cas. and Sur. Co. v. Excess Ins. Co. Ltd*., 197 F.R.D. 601, 605-06 (S.D. Ohio

2000) (citing Fed. R. Evid. 501; *Guy v. United Healthcare Corp*., 154 F.R.D. 172, 177 (S.D.

Ohio 1993)).  Under Ohio law, communications a client makes to his or her attorney "with a

view to professional advice or assistance are privileged," and the court will not require those communications to be divulged by the attorney without the client's consent. *Id.* (citing *Spitzer v. Stillings*, 109 Ohio St. 297, 303, 142 N.E. 365 (1924) (quoting *King v. Barrett*, 11 Ohio St. 261, syll. (1860); Ohio Rev. Code § 2317.02(A); Ohio R. Ev. 501)). *See also Waite, Schneider, Bayless & Chesley Co.*, *L.P.A. v. Davis*, No. 1:11-cv-00851, 2013 WL 4757486, at *4 (S.D. Ohio July 12, 2013) ("The attorney client privilege 'bestows upon a client the privilege to refuse to disclose, and to prevent others from disclosing, confidential communications made between the attorney and client in the course of seeking or rendering legal advice.'") (quoting *H & D Steel Serv. v. West, Hurd, Fallon, Paisely & Howley*, No. 72758, 1998 WL 413772, *2 (Ohio App. 8th Dist. July 23, 1998) (quoting *Frank W. Schaefer, Inc. v. C. Garfield Mitchell Agency, Inc*., 612 N.E.2d 442, 446 (Ohio App. 2d Dist. 1992)). "There is no material difference between Ohio's attorney-client privilege and the federal attorney-client privilege." *MA Equip. Leasing I, L.L.C. v. Tilton*, 980 N.E.2d 1072, 1079-1080 (Ohio App. 10th Dist. 2012) (citing *Guy*, 154 F.R.D. at 177 n.3); *Inhalation Plastics, Inc. v. Medex Cardio-Pulmonary, Inc*., No. 2:07-cv-116, 2012 WL 3731483 (S.D. Ohio Aug. 28, 2012)). The attorney-client privilege applies "(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived." *State ex rel. Leslie v. Ohio Housing Fin. Agency*, 824 N.E.2d 990, 995 (Ohio 2005) (citing *Reed v. Baxter*, 134 F.3d 351, 355-356 (6th Cir. 1998); *Perfection Corp. v. Travelers Cas. & Sur. Co*., 790 N.E.2d 817, 820 (Ohio App. 8th Dist. 2003)). The attorney-client privilege is "founded on the premise that confidences shared in the attorney-client relationship are to remain confidential. Only in this manner can there be freedom from

apprehension in the client's consultation with his or her legal advisor." *Travelers Cas. and Sur.*

*Co.,* 197 F.R.D. at 605-06 (quoting *Moskovitz v. Mt. Sinai Medical Center*, 635 N.E.2d 331, 349

(Ohio 1994)).

In the corporate context, the attorney-client privilege extends to communications between

attorneys and corporate employees regardless of their position within the corporation where the

communications concern matters within the scope of the employees' corporate duties, and the

employees are aware that the communication was for purposes of obtaining legal advice.

*Upjohn Co. v. U.S.,* 449 U.S. 383, 394 (1981). *See also In re Perrigo Co.*, 128 F.3d 430, 437

(6th Cir. 1997). The attorney-client privilege extends to factual investigations conducted by an

attorney at the request of the corporate client for purposes of providing legal advice to the

corporate client. *Upjohn*, 449 U.S. at 394, 395. Similarly, factual information conveyed by an

employee to the attorney in the course of the factual investigation is protected because the

attorney-client privilege protects "not only the giving of professional advice to those who can act

on it but also the giving of information to the lawyer to enable him to give sound and informed

advice." *Upjohn*, 449 U.S. at 390. "Courts have extended the protection outlined in *Upjohn* to

communications between non-attorney corporate employees where the communications were

made for purposes of securing legal advice from counsel." *Graff v. Haverhill North Coke Co*.,

No. 1:09-cv-670, 2012 WL 5495514, at *7 (S.D. Ohio Nov. 13, 2012) (and numerous cases cited

therein).

Fed. R. Civ. P. 26(b)(3) governs work product claims. With certain exceptions, Rule

26(b)(3) protects from disclosure all: (1) "documents and tangible things"; (2) "prepared in

anticipation of litigation or for trial"; (3) "by or for another party or its representative (including

the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."[9]  Fed. R. Civ. P.

26(b)(3)(A).  Under the Federal Rules, the work product protection under Rule 26(b)(3) is not

limited to attorneys but has been extended to documents and tangible things prepared by or for

the party and the party's representative, as long as such documents were prepared in anticipation

of litigation.  *Id.  See Eversole v. Butler County Sheriff's Office*, No. 1:99-cv-789, 2001 WL

1842461, at *2 (S.D. Ohio Aug. 7, 2001) ("Rule 26(b)(3) is not limited solely to attorneys" and

"documents and things prepared by the party or his agent fall within the work product rule.")

(citing 8 Wright & Miller, Federal Practice & Procedure, § 2024).  Rule 26(b)(3) excludes from

work product protection "[m]aterials assembled in the ordinary course of business, or pursuant to

public requirements unrelated to litigation, or for other nonlitigation purposes."  Rule 26

advisory committee's note (1970).

    "Opinion" work product is entitled to near absolute protection against disclosure, while

"fact" work product may be discoverable upon a showing by a party that it has a substantial need

for the materials to prepare its case and that it cannot, without undue hardship, obtain

substantially equivalent materials by other means.  *See In re Columbia/HCA Healthcare Corp.*

*Billing Practices Litig.*, 293 F.3d 289, 294 (6th Cir. 2002).

---

[9]  Rule 26(b)(3) provides:

    (A) Documents and Tangible Things.  Ordinarily, a party may not discover documents and
tangible things that are prepared in anticipation of litigation or for trial by or for another party or
its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or
agent).  But, subject to Rule 26(b)(4), those materials may be discovered if:

        (i) they are otherwise discoverable under Rule 26(b)(1); and

        (ii) the party shows that it has substantial need for the materials to prepare its
case and cannot, without undue hardship, obtain their substantial equivalent by
other means.

Fed. R. Civ. P. 26.

Two factors are material to whether a document is protected by the work product doctrine because it was "in anticipation of litigation" or for trial: "(1) whether that document was prepared 'because of' a party's subjective anticipation of litigation, as contrasted with ordinary business purpose; and (2) whether that subjective anticipation was objectively reasonable." *In re Professionals Direct Ins. Co*., 578 F.3d 432, 439 (6th Cir. 2009) (citing *United States v. Roxworthy*, 457 F.3d 590, 594 (6th Cir. 2006)). *See also Little Hocking Water Assn., Inc. v. E.I. Du Pont De Nemours & Co*., No. 2:09-cv-1081, 2013 WL 607969, at *9 (S.D. Ohio Feb. 19, 2013) (Report and Recommendation), *affirmed*, 2014 WL 5857994 (S.D. Ohio Nov. 12, 2014) (it is not sufficient to state that a communication generally relates to litigation to warrant work product protection; the communication must have been "prepared in anticipation of litigation or for trial."). The party resisting disclosure bears the burden of showing that the material was "prepared in anticipation of litigation or for trial." *Toledo Edison Co. & Cleveland Electric Illuminating Co. v. G A Technologies, Inc*., 847 F.2d 335, 339 (6th Cir. 1988). A party may satisfy this burden "in any of the traditional ways in which proof is produced in pretrial proceedings such as affidavits made on personal knowledge, depositions, or answers to interrogatories," and the showing "can be opposed or controverted in the same manner." *Id.* "Where an 'undisputed affidavit . . . is specific and detailed to indicate that the documents were prepared in anticipation of litigation or trial,' then the party claiming work product protection has met its burden." *Roxworthy*, 457 F.3d at 597 (quoting *Toledo Edison Co*., 847 F.2d at 341). However, courts will reject claims for work product protection "where the 'only basis' for the claim is an affidavit containing 'conclusory statement[s].'" *Id.* (quoting *Guardsmark, Inc. v. Blue Cross and Blue Shield of Tenn*., 206 F.R.D. 202, 210 (W.D. Tenn. 2002)). Finally, "[i]f a document is prepared in anticipation of litigation, the fact that it also serves an ordinary business

purpose does not deprive it of protection[.]" *In re Professionals Direct Ins. Co.*, 578 F.3d at 439 (quoting *Roxworthy*, 457 F.3d at 598-99). However, the party seeking protection bears the burden of showing that "anticipated litigation was the 'driving force behind the preparation of each requested document.'" *Id.* (quoting *Roxworthy*, 457 F.3d at 595) (stating that such documents do not lose protection under the work product doctrine "unless the documents 'would have been created in essentially similar form irrespective of the litigation'") (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh v. Murray Sheet Metal Co.,* 967 F.2d 980, 984 (4th Cir. 1992)).

### 3. *Boone* exception/Motion to certify

The Court will initially address Powell's contention that the privilege log contains several hundred entries identifying documents that OneBeacon improperly withheld on the ground they pertain to the handling of underlying asbestos claims against Powell which predate any denial of coverage by OneBeacon. (Doc. 98 at PAGEID#: 1610-11, citing Exh. Q). Powell alleges that those documents are discoverable in this bad faith action pursuant to *Boone v. Vanliner Ins. Co.*, 744 N.E.2d 154 (Ohio 2001), which created an exception to the attorney-client privilege for insurance claims file documents where the insured alleges a claim of bad faith denial of insurance coverage. In *Boone*, the Ohio Supreme Court held:

> In an action alleging bad faith denial of insurance coverage, the insured is entitled to discover claims file materials containing attorney-client communications related to the issue of coverage that were created prior to the denial of coverage. At that stage of the claims handling, the claims file materials will not contain work product, i.e., things prepared in anticipation of litigation, because at that point it has not yet been determined whether coverage exists.

*Id.* at 158. The Ohio Supreme Court reasoned that claims file documents relating to a claim of bad faith denial of insurance coverage and generated before a denial decision are not worthy of protection under the attorney-client privilege and as work product. *Id.* at 157-58. *See also Unklesbay v. Fenwick*, 855 N.E.2d 516, 521 (Ohio App. 2d Dist. 2006) ("claims-file materials

showing an insurer's lack of good faith in processing, evaluating, or refusing to pay a claim are unworthy of the protection afforded by the attorney-client or work-product privilege"); *Garg v. State Auto. Mut. Ins. Co.*, 800 N.E.2d 757, 762 (Ohio App. 9th Dist. 2003) (clarifying that *Boone* is applicable to both the attorney-client privilege and the work product doctrine). In a discovery dispute involving a bad faith denial of an insurance coverage claim, "[t]he critical issue is whether the documents 'may cast light' on whether the insurer acted in bad faith." *Chubb Custom Ins. Co. v. Grange Mut. Cas. Co.*, No. 2:07-cv-1285, 2012 WL 1340369, at *4 (S.D. Ohio Apr. 17, 2012) (King, M.J.) (quoting *In re Professionals Direct Ins. Co.*, 578 F.3d at 442 (in turn quoting *Garg*, 800 N.E.2d at 763)). Powell alleges that the documents it seeks that predate denial of coverage in the underlying asbestos cases "may cast light on whether [OneBeacon] acted in bad faith" and are therefore discoverable under *Boone*. (Doc. 98 at PAGEID#: 1610-11, citing Exh. Q).

OneBeacon contends that Powell's arguments related to the *Boone* exception are premised on an erroneous interpretation of Ohio law, which potentially raises a question that this Court should certify to the Ohio Supreme Court. OneBeacon alleges that the holding of *Boone* has been superseded by the amendment of Ohio Rev. Code § 2317.02(A)(2), effective October 31, 2007. (Doc. 104 at PAGEID#: 2163, citing 2006 Ohio Laws File 198 (Am. Sub. S.B. 117, section 6)). The statute, as amended, provides as follows:

> The following persons shall not testify in certain respects:
>
> (A)(1) An attorney, concerning a communication made to the attorney by a client in that relation or concerning the attorney's advice to a client, except that the attorney may testify by express consent of the client. . . . However, if the client voluntarily reveals the substance of attorney-client communications in a nonprivileged context or is deemed by section 2151.421 of the Revised Code to have waived any testimonial privilege under this division, the attorney may be compelled to testify on the same subject.

The testimonial privilege established under this division does not apply concerning either of the following:

. . . .

(2) An attorney, concerning a communication made to the attorney by a client in that relationship or the attorney's advice to a client, except that if the client is an insurance company, the attorney may be compelled to testify, subject to an in camera inspection by a court, about communications made by the client to the attorney or by the attorney to the client that are related to the attorney's aiding or furthering an ongoing or future commission of bad faith by the client, if the party seeking disclosure of the communications has made a prima-facie showing of bad faith, fraud, or criminal misconduct by the client.

Ohio Rev. Code § 2317.02. OneBeacon alleges that § 2317.02(A)(2) was expressly "modified . . . to provide for judicial review regarding the [attorney-client] privilege," and OneBeacon construes that statute as modified to require that a party must make "a prima facie showing of bad faith" before a claims file document protected by the attorney-client privilege will be subjected to an in camera review.[10] (Doc. 104 at PAGEID#: 2163-64). OneBeacon argues that the statute as amended "clearly applies to both testimony and discovery." (*Id*. at PAGEID#: 2164, citing *Jackson v. Geiger*, 854 N.E.2d 487, 490 n.1 (Ohio 2006) (stating that § 2317.02 provides a "testimonial privilege" and that such a privilege prohibits an attorney's testimony at trial concerning attorney-client communications and also applies to "protect the sought-after communications during the discovery process.")).

Powell disputes that *Boone* has been statutorily superseded by Ohio Rev. Code § 2317.02(A) such that a prima facie showing of bad faith is required before Powell is entitled to discover the documents at issue. (Doc. 108 at PAGEID#: 2626). Powell contends that the

---

[10] "The General Assembly declares that the attorney-client privilege is a substantial right and that it is the public policy of Ohio that all communications between an attorney and a client in that relation are worthy of the protection of privilege, and further that where it is alleged that the attorney aided or furthered an ongoing or future commission of insurance bad faith by the client, that the party seeking waiver of the privilege must make a prima facie showing that the privilege should be waived and the court should conduct an in camera inspection of disputed communications. The common law established in *Boone v. Vanliner Ins. Co.* (2001), 91 Ohio St.3d 209, *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, and *Peyko v. Frederick* (1986), 25 Ohio St.3d 164, is modified accordingly to provide for judicial review regarding the privilege." 2006 Ohio Laws File 198 (Am. Sub. S.B. 117)

statute creates only a "testimonial privilege precluding an attorney from testifying about confidential communications" and does not apply to documents, as multiple courts have held. (Doc. 108 at PAGEID#: 2626) (citing cases).

OneBeacon contends that numerous Ohio and federal courts have rejected Powell's position that the statute does not apply to the discovery of documents and "clearly hold to the contrary." (Doc. 111 at PAGEID#: 2681-2682, citing cases). OneBeacon also argues that "it is clear that Ohio law is in conflict on the application of R. C. 2317.02(A)(2) to discovery of documents in bad faith cases" and neither the Ohio Supreme Court nor the Sixth Circuit has issued a controlling decision on the issue. (*Id*. at PAGEID#: 2684). OneBeacon contends that resolution of whether the statute applies to the discovery of documents in bad faith cases is determinative of a "proceeding" as defined under Ohio law and the Court should therefore certify the following question to the Ohio Supreme Court pursuant to Ohio S. Ct. Prac. R. 9.01(A):

> Do[] the attorney client-privilege and related procedures set forth in R. C. 2317.02(A)(2) extend to the discovery of documents in insurance bad faith cases?

(Doc. 111 at PAGEID#: 2682, 2683).

Federal courts have the ability to certify questions of law to the Ohio Supreme Court when "there is a question of Ohio law that may be determinative of the proceeding and for which there is no controlling precedent in the decisions of this Supreme Court." S. Ct. Prac. R. 9.01(A). *See also Super Sulky, Inc. v. U.S. Trotting Ass'n,* 174 F.3d 733, 744 (6th Cir. 1999). The decision to certify a question to the state supreme court is within the district court's discretion. *Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 449-50 (6th Cir. 2009). Certification is not warranted simply because ascertaining what state law provides is somewhat difficult. *Metz v. Unizan Bank*, 416 F. Supp.2d 568, 574 (N.D. Ohio 2006) (citing *Duryee v. United States Dep't of the Treasury,* 6 F. Supp.2d 700, 704 (S.D. Ohio 1995)). Certification of

"[n]ovel or unsettled questions of state law" may be appropriate "where certification will save time, energy and resources, or where there are conflicting federal interpretations of an important state law question which would otherwise evade state court review."  *Id.* (citing *Arizonans for Official English v. Arizona,* 520 U.S. 43, 77 (1997); *Geib v. Amoco Oil Co.,* 29 F.3d 1050, 1060 (6th Cir. 1994)).  Thus, the court in *Metz* denied certification where it found there was "sufficient guidance in the current state and federal law to allow it to make a reasoned and principled decision" under Ohio law on the issue before it.  *Id.*

The Court exercises its discretion to decline OneBeacon's request to refer the question it presents to the Ohio Supreme Court for certification.  OneBeacon has failed to establish that resolution of the instant discovery dispute involving a claimed privilege "is determinative of a 'proceeding.'"  (Doc. 112 at PAGEID#: 2819, citing Ohio Rev. Code § 2505.02(B)).  Even assuming Ohio law defines the resolution of a discovery dispute such as this one as a potentially determinative "proceeding," resolution of the privilege issue would not be dispositive of the proceeding before this Court.  Whether Powell is entitled to discover claims file materials created prior to the denial of coverage under Ohio Rev. Code § 2317.02(A)(2) is only one aspect of the parties' discovery dispute.  The parties raise several additional issues, which are not reviewable on an interlocutory basis under 28 U.S.C. § 1292 or under the collateral order doctrine.  *See In re Professionals Direct Ins. Co.*, 578 F.3d at 438 (citing *John B. v. Goetz*, 531 F.3d 448, 458 (6th Cir. 2008)).  Thus, resolution of whether Ohio Rev. Code § 2317.02 is a testimonial privilege only would not be determinative of a motion or any other proceeding before the Court.

Assuming, *arguendo*, that the elements of the certification statute were satisfied, a review of the relevant authorities does not support OneBeacon's position that Ohio and federal courts

have "clearly held" that Ohio Rev. Code § 2317.02(A) applies to documents in addition to an attorney's testimony. Rather, the majority of courts to have addressed the issue have found that the statute is limited to attorney testimony and does not extend to documents related to coverage issues that were created prior to the denial of coverage. Courts that have explicitly addressed the issue have concluded that § 2317.02(A) applies to attorney testimony and *not* to documents held by defendants.[11] *See Mayer v. Allstate Vehicle & Prop. Ins. Co*., No. 2:15-cv-2896, 2016 WL 1632415, at *5 (S.D. Ohio Apr. 22, 2016), *objections overruled*, 2016 WL 2726658 (S.D. Ohio May 10, 2016) (finding "Ohio's testimonial privilege statute does not apply to documents" and rejecting the argument that the explanatory note to the amendment supported a different conclusion); *Tallmadge Spinning & Metal Co. v. Am. States Ins. Co.*, No. 5:15-cv-1763 (N.D. Ohio Feb. 11, 2016 Order, ECF No. 23 at *3) (plaintiffs were not required to make prima facie showing of bad faith to discover claims file documents because statute applies only to testimony, not documents); *Arrowood Indem. Co. v. The Lubrizol Corp*., No. 1:10-cv-2871, 2013 WL 12130641, at *3 (N.D. Ohio Aug. 6, 2013) ("Because Ohio Rev. Code § 2317.02(A)(2) does not apply to documents, Lubrizol does not need to make out a prima facie case of bad faith by Arrowood in order to view the documents it has requested during discovery. Such documents are discoverable under Ohio law insofar as 'they may cast light' on whether Arrowood acted in bad faith."); *Little Italy Dev., LLC v. Chicago Title Ins. Co*., No. 1:11-cv-112, 2011 WL 4944259, at *2 (N.D. Ohio Oct. 17, 2011) (concluding that "a plain reading of the language in subsection (A)(2) compels the same result" as subsection (A)(1) and "limits the statute's application to cases in which a party is seeking to compel testimony of an attorney").

---

[11] Powell relies on *In re Professionals Direct Ins. Co.*, 578 F.3d at 440, which held that subsection (A)(1) of § 2317.02 applied to attorney testimony and not documents held by plaintiffs. However, the Court declined to interpret the scope of subsection (A)(2) at issue here because that subsection was enacted after the suit was filed. *Id.* at 441.

OneBeacon cites a number of cases that purportedly "clearly hold" that § 2317.02(A)(2) applies to discovery disputes involving documents in bad faith cases: *Galion Community Hosp. v. The Hartford Life & Acc. Ins. Co.*, No. 1:08-cv-1635, 2010 WL 359126, at *2-3 (N.D. Ohio Jan. 29, 2010); *Chubb Custom Ins. Co. v. Grange Mut. Cas. Co.*, No. 2:07-cv-1285, 2012 WL 1340369, at *4-7 (S.D. Ohio Apr. 17, 2012); *Bausman v. Am. Fam. Ins. Group*, 60 N.E.3d 772, 773-76 (Ohio App. 2d Dist. 2016); and *Cobb v. Shipman*, No. 2011-T-0049, 2012 WL 1269128, at *10-11 (Ohio App. 2d Dist. March 4, 2016). (Doc. 111 at PageID#: 2672). A review of these cases does not support OneBeacon's position. In *Galion Community Hosp.*, 2010 WL 359126, at *2-3, the one federal court to require a prima facie showing that the attorney-client privilege should be waived as to documents sought in discovery did not expressly address the distinction between documents and testimony and has not been followed by subsequent courts. *See Arrowood Indem. Co.*, 2013 WL 12130641, at *2 (noting that the decision in *Galion* had been "rejected as unpersuasive" by two cases that addressed its analysis: *Little Italy Dev., LLC v. Chicago Title Insurance Co., et. al.*, No. 1:11-cv-112, 2011 WL 4944259, at *2 (N.D. Ohio Oct. 17, 2011), and *Creatore v. Assurance Co. of America*, No. 5:09-cv-1877, 2010 WL 4366093, at *2 (N.D. Ohio Oct. 28, 2010)). The remaining cases cited by OneBeacon are either inapplicable or do not support OneBeacon's assertion that § 2317.02(A)(2) applies to documents sought in connection with a bad faith claim. This Court in *Chubb Custom Ins. Co.*, 2012 WL 1340369, addressed § 2317.02(A) only as it applied to an attorney's deposition testimony, not documents. The Ohio appellate court in *Bausman*, 60 N.E.3d at 773-76, addressed whether emails in an "attorney" file, and not the "claims" file, were discoverable. The court of appeals determined that documents exclusively in the files of a client's attorneys were not discoverable and did not address whether § 2317.02(A)(2) prohibits the disclosure of documents in a claims file in the

absence of a prima facie showing. *Cobb*, 2012 WL 1269128, involved discovery from the file of an attorney in a prejudgment interest proceeding. The Ohio court of appeals did not address whether § 2317.02(A)(2) applies to documents, as opposed to attorney testimony. Rather, the court of appeals determined that the statute "does not apply in cases related to prejudgment interest proceedings and the determination of a lack of a good faith effort to settle. . . ." *Id*., at *11.

Thus, the overwhelming weight of authority holds that the testimonial privilege in bad faith insurance cases set forth in § 2317.02(A)(2) does not apply to documents. Certification is not warranted simply because the Ohio Supreme Court has not spoken on the issue. *See Duryee*, 6 F. Supp.2d at 704. The Court will deny OneBeacon's motion for certification of the question to the Ohio Supreme Court.

Under *Boone*, OneBeacon is not entitled to assert the attorney-client privilege as to those attorney communications from the claims file that "may cast light" on the bad faith insurance claim. (*See* Doc. 98, Exh. Q). To the extent OneBeacon also asserts such documents are protected under the work product doctrine, OneBeacon has failed to establish that such documents were prepared in anticipation of litigation as opposed to an ordinary business purpose. *Roxworthy*, 457 F.3d at 594. All of the documents listed in Exhibit Q either predate the date of coverage denial or were created on the date coverage was denied. Neither the privilege log nor the affidavit of OneBeacon's counsel alleges or gives any indication that the documents contained in Exhibit Q were prepared "because of" the subjective anticipation of litigation. *In re Professionals Direct Ins. Co.*, 578 F.3d at 439. The privilege summary in the privilege log simply states "concerning coverage analysis; concerning coverage determination" with no indication that the driving force for the creation of the documents was litigation, as opposed to

determining the issue of insurance coverage in the ordinary course of business. *Id.* OneBeacon

has not presented affidavits, deposition testimony, or other evidence to show these documents

were created in anticipation of litigation and has not met its burden for asserting work product

protection for the documents described in Exhibit Q. *Roxworthy*, 457 F.3d at 597. OneBeacon

must produce those communications identified in Exhibit Q to Powell. *See In re Powerhouse*

*Licensing, LLC*, 441 F.3d 467, 473 (6th Cir. 2006) (where objecting party fails to meet its burden

of showing document was prepared in anticipation of litigation, "the court's inquiry ends and the

documents must be produced").

### 4. Specific Rule 26(b)(5)(A) deficiencies

Powell has provided a list of the entries it challenges as "deficient" which includes

approximately 1,340 documents. (*Id.*, citing Exh. N). Aside from the documents covered by the

*Boone* exception, Powell identifies the following additional deficiencies in the privilege log: (1)

the privilege log is not supported by sufficient information to justify the privilege asserted, and

OneBeacon has therefore waived any privilege as to these documents; and (2) the withheld

documents are not entitled to protection because OneBeacon waived the privilege by sharing the

documents with third parties. (Doc. 98 at PAGEID#: 1605-06). Powell argues that OneBeacon

should be ordered to produce those documents identified in its deficient entries. (*Id.* at

PAGEID#: 1607).[12]

OneBeacon generally alleges in response to Powell's challenge to its privilege log that

the undersigned reviewed a prior version of the log at the September 22, 2016 informal discovery

conference and indicated that only minor revisions were needed, which OneBeacon subsequently

---

[12] Powell argues that the privilege log provided for Greg Gaines' desk file suffers from similar deficiencies. (*Id.* at PAGEID#: 1606). However, as OneBeacon has explained, it agreed to supplement its privilege log with respect to the Gaines file. Therefore, any alleged deficiencies in the Gaines' desk file are not before the Court. (Doc. 104 at PAGEID#: 2158 n. 9).

made.  (Doc. 104 at PAGEID#: 2157).[13]  OneBeacon further asserts that Powell challenges (1) a relatively few entries that do not list an author or recipient, and (2) entries that relate to correspondence regarding this litigation or the state court litigation.  (Doc. 104 at PAGEID#: 2157-58).  OneBeacon argues that it is entitled to a protective order and that the Court should perform an *in camera* inspection of any documents it has withheld that are specifically challenged by Powell.  (Doc. 111).

The Court declines OneBeacon's invitation to review *in camera* the 1,340 documents identified by Powell as deficient.  To do so would not promote "the just, speedy, and inexpensive determination" of this action.  Fed. R. Civ. P. 1.  Rather, the Court formulates general rules for the parties to follow in determining whether the challenged entries listed on OneBeacon's privilege log must be produced to Powell based on the arguments of the parties.

### a. Failure to provide sufficient identifying information

#### i. Authors "Not Available"

Powell contends that OneBeacon's privilege log is deficient because the privilege log does not identify the authors of certain documents.  (Doc. 98 at PAGEID#: 1605).  Instead, the author of the document is identified as "Not Available."  There are 12 such entries on OneBeacon's privilege log.  (Doc. 98, Ex. K at PageID#: 1890-1894).  With the exception of entry H13251-0004-001313, which asserts both the attorney-client privilege and work product protection, the remaining 11 documents were withheld solely on the basis of work product.

OneBeacon cannot validly claim the attorney-client privilege for entry H13251-0004-001313, which is an excel document described as "Bills from coverage litigation from Davis and

---

[13] To the extent OneBeacon suggests this Court indicated any ruling or determinations about the adequacy of the privilege log, it is incorrect.  The Court addressed with the parties the concerns raised by Powell but did not perform a comprehensive review of OneBeacon's privilege log.

Young." This entry identifies neither an author nor a recipient of the communication.[14] Without this information, the Court is unable to determine whether the documents relate to the seeking of legal advice from an attorney by someone at OneBeacon or Resolute. *Ohio House Fin. Agency*, 824 N.E.2d at 995. While billing records may qualify as protected work product to the extent the billing entries reflect the specific nature of the services provided by counsel and thus reveal the mental processes of counsel, *see Nesse v. Pittman*, 202 F.R.D. 344, 356 (D.D.C. 2001); *Lucas v. Gregg Appliances, Inc.*, No. 1:14-cv-70, 2014 WL 6901518, at *5 (S.D. Ohio Dec. 5, 2014), the Court lacks sufficient information to determine the nature of the entries contained within the excel document to conclude this document is protected as work product.

The other eleven entries which identify the author as "Not Available" have been withheld by OneBeacon on the basis of work product protection. These entries do not provide sufficient information to show the documents qualify as work product, which "protects from disclosure documents prepared *by or for an attorney* in anticipation of litigation." *Reg'l Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 713 (6th Cir. 2006) (emphasis added). The privilege log fails to include any information to indicate such documents were prepared by an attorney or by another individual at the request of an attorney for litigation purposes, and OneBeacon has provided no other argument or evidence showing why such documents are protected as work product. As such, OneBeacon has not met its burden of proof as to these documents for which it has not identified an author. Thus, OneBeacon must supply the missing author information and provide sufficient additional information in a revised privilege log to show the documents qualify as work product, or else produce these documents it has improperly withheld under the work product doctrine.

---

[14] This appears to be the only entry for which OneBeacon claims the attorney-client privilege and for which there is no identified author and recipient.

### ii. Authors not identified in privilege log legend

Powell takes issue with entries that list authors not included in OneBeacon's December 14, 2016 privilege log legend, including "M. Zyra," "B. Stroll," and "HCG." (Doc. 98 at PAGEID#: 1605). Powell's objection is well-taken.

OneBeacon must produce a legend identifying these and any other individuals who appear in OneBeacon's privilege log but who have not yet been identified.

### iii. Recipients omitted from email document entries

Powell argues that the privilege log is deficient because it fails to identify the recipients of numerous documents and omits the requisite information needed to determine whether such documents are privileged. Powell provides as examples the following entries that do not identify recipients:

- P. 1, entry H13251-0001-001012
- P. 1, entry H13251-0004-001012
- P. 1, entry H13251-0004-001016
- P. 1, entry H13251-0004-001321
- P. 5, entry H13251-0004-002633

(Doc. 98 at PAGEID#: 1605, citing Exh. K). Each of these entries is an email document found on pages one through five of the privilege log for which OneBeacon asserts attorney-client privilege and work product protection. OneBeacon has not satisfied its burden to show that the documents described in the entries Powell challenges and similar email entries are entitled to protection under the attorney-client privilege. *See Little Hocking Water Assn., Inc.,* 2013 WL 607969, at *8 ("As the party resisting production, [OneBeacon] bears the burden of establishing the attorney client privilege."). For instance, OneBeacon has withheld email communications authored by Michaud and by Brooke Kelley on the basis of the attorney-client privileges. (*See* p. 1, entries H13251-0001-001012, H13251-0004-001012). Michaud is not an attorney, and OneBeacon has not identified Kelley in the privilege log key and has not submitted an affidavit

or other evidence to show she is an attorney. More importantly, OneBeacon has not identified with whom these individuals communicated. OneBeacon is not entitled to withhold documents that were not exchanged between an attorney and his or her client or between client employees for the specific purpose of obtaining legal advice from counsel. *Upjohn*, 449 U.S. at 390; *Graff,* 2012 WL 5495514, at *7. As the privilege log lists no recipient indicating with whom the author communicated, the Court cannot conclude that these email communications are protected by the attorney-client privilege.

Thus, OneBeacon must either revise the privilege log to provide the missing recipient information and sufficient additional information to justify its withholding under the attorney-client privilege or produce those communications it has improperly withheld pursuant to an attorney-client privilege.

To the extent OneBeacon claims these email documents on pages one through six of the privilege log are protected from disclosure as work product, it has not carried its burden to show that the documents are protected with the exception of entries H13251-0004-001316 and H13251-0004-001321. These documents are authored by OneBeacon's outside counsel Richard Garner and concern pretrial reports for the state law action between Powell and OneBeacon. The privilege log adequately identifies the purpose for which counsel created each document and includes sufficient information to show the documents are protected as work product.[15] As such, OneBeacon need not disclose these documents.

As to the remaining email documents on pages one through six of the privilege log, OneBeacon has not presented any evidence, by affidavit or otherwise, to demonstrate that the email documents for which it has not identified a recipient were prepared in anticipation of

---

[15] H13251-0004-001319 is not an email but is a litigation activity report for the instant federal action between Powell and OneBeacon from outside counsel to in-house counsel for Resolute. This entry likewise contains sufficient information to show the document is protected as work product.

litigation or for trial. The Court is unable to discern from the cursory descriptions of the emails that they were prepared at the request of counsel and in anticipation of litigation so as to qualify for protection as work product. Thus, OneBeacon must either revise the privilege log to provide the missing information, or else it must produce those communications for which it has improperly asserted work product protection.

### iv. Non-email entries related to spreadsheets on the privilege log, pages 1-6, which fail to identify a recipient

Powell challenges as deficient the privilege log's identification of excel spreadsheets on pages one through six of the privilege log that OneBeacon asserts are protected as work product. (Doc. 98 at PAGEID#: 1605; Doc. 108 at PAGEID#: 2619-20). Powell contends that OneBeacon has failed to provide sufficient information to show that such documents were not prepared in the ordinary course of business but instead were prepared in anticipation of litigation. (Doc. 108 at PAGEID#: 2620).

OneBeacon acknowledges that there are no recipients identified for "entries for draft spreadsheets and related documents collected from OneBeacon's claims systems regarding exhaustion and other coverage issues" which are included on the first six pages of the privilege log. (Doc. 104 at PAGEID#: 2158, citing Horacek Decl., ¶¶ 30-31). However, OneBeacon argues that the "nature and location of the information [] gives [Powell] all of the indicia of documents protected by the work product privilege." (*Id.*, citing Horacek Decl., ¶¶ 30-31).

The entries that Powell challenges on this basis include: (1) entries that describe the withheld document as "William Powell Exhaustion Chart" or "GEARS report" and summarize the privilege as "concerning coverage determination and allocation methods"; (2) entries authored by B. Green described as "Significant Claim Report for WPC" and summarizing the privilege as "concerning coverage determination and allocation methods"; and (3) various other

entries that summarize the privilege as "concerning coverage determination and allocation methods" (Doc. 108 at PAGEID#: 2620, citing Exh. K- PAGEID# 1890-1894), for which OneBeacon asserts work product protection.

Whether OneBeacon may withhold from Powell those documents for which it claims work product protection depends on whether the documents were "prepared in anticipation of litigation or for trial," and "by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). OneBeacon bears the burden of showing that the documents were "prepared in anticipation of litigation or for trial." *Little Hocking Water Assn., Inc.,* 2013 WL 607969, at *9 (citing *Toledo Edison Co.*, 847 F.2d at 339). OneBeacon must show that anticipated litigation was the "driving force behind the preparation of each requested document." *Id.* (citing *In re Professionals Direct Ins. Co.*, 578 F.3d at 439) (citing *Roxworthy*, 457 F.3d at 595). OneBeacon can satisfy its burden by affidavit made on personal knowledge or other traditional methods of proof. *Id.* (citing *Roxworthy*, 457 F.3d at 597).

OneBeacon has not carried its burden to show that the excel documents challenged by Powell are protected from disclosure as work product. OneBeacon has not presented any evidence, by affidavit or otherwise, to demonstrate that the documents for which it has not identified a recipient were prepared in anticipation of litigation or for trial. OneBeacon generally alleges that the excel documents are "internal documents concerning coverage determination and allocation methods," and are "internal documents regarding coverage issues in dispute with [Powell]." (Doc. 104 at PAGEID#: 2158). OneBeacon alleges that "even if the corresponding log entries do not contain all of the information ideally provided in a privilege log, they nonetheless contain sufficient information to show them as protected by work-product privilege." (*Id.*). OneBeacon relies on counsel's affidavit wherein she states that the 171 entries on these

pages "were pulled from the V-Drive of Resolute and the RAPID claims system" and "[t]he nature and location of these documents indicated they were protected by the work-product privilege." (Doc. 105 at PAGEID#: 2173-74, Horacek Decl., ¶¶ 30, 31). However, these limited allegations as to where the information can be found fall far short of satisfying OneBeacon's burden to show that the "driving force behind the preparation" of these documents was anticipated litigation rather than an ordinary business purpose. *See In re Professionals Direct Ins. Co.*, 578 F.3d at 439; *see also Cooey*, 269 F.R.D. at 649 (setting forth the information that privilege logs should include). It is impossible to discern from the "location" and "nature" of many of the documents whether they were prepared in anticipation of litigation or for trial rather than in the ordinary course of business. Further, OneBeacon's description of the documents -- "draft spreadsheets and related documents collected from OneBeacon's claims systems regarding exhaustion and other coverage issues" -- does not assist the Court in ascertaining whether these documents were prepared in the ordinary course of business or for purposes of litigation. (Doc. 104 at PAGEID#: 2158).

Because OneBeacon has not carried its burden in this regard, OneBeacon is not entitled to withhold the documents as work product. However, the Court will not require OneBeacon to produce the documents at this time. OneBeacon will have an opportunity to supply the omitted information for the entries withheld under the work product doctrine which it describes as "concerning coverage determination and allocation methods." If OneBeacon fails to provide the necessary information to demonstrate the material is privileged, OneBeacon must produce the documents to Powell.

To the extent OneBeacon also lists the attorney-client privilege for some of these excel documents that fail to identify a recipient (*see,* e.g., H13251-0004-001453, H13251-0004-

001454, and H13251-0004-002635), the Court cannot discern from the limited information

provided on the privilege log whether these documents were confidential communications

involving legal advice that was sought by employees of Resolute.  *Ohio House Fin. Agency*, 824

N.E.2d at 995.  Therefore, these documents are not protected by the attorney-client privilege.

OneBeacon must supplement the privilege log with the required information or produce the

documents.

**b.  Entries where the privilege summary lists litigation between Powell and OneBeacon**

Powell also challenges as deficient an unspecified number of entries that purportedly do

not "substantiate the privilege asserted" or do not provide sufficiently detailed descriptions of the

documents but instead describe the privilege as: "concerning WPC v. OneBeacon (A1109350),"

"concerning WPC v. OneBeacon (1:14-cv-807-SJD)" or "concerning WPC v. OneBeacon (C

1300681)."  (Doc. 98 at PAGEID#: 1605, citing Exh. N).  Powell notes as examples the

following entries where sufficiently detailed descriptions of the documents allegedly are not

provided:

- P. 45 entry H13251-0008-001857
- P. 82 entry H13251-0008-003008
- P. 103 entry H13251-0008-003504

Powell argues that it is not sufficient to simply state that a communication "generally relates to

litigation" (Doc. 98 at PAGEID#: 1606) and contends that similarly vague descriptions have

been held to be insufficient to entitle a document to protection from disclosure.  (*Id.*, citing *Little

Hocking Water Assn., Inc.*, 2013 WL 607969; *Avis Rent A Car System, LLC v. City of Dayton,

Ohio*, No. 3:12-cv-399, 2013 WL 3781784, at *8 (S.D. Ohio July 18, 2013)).

OneBeacon responds that Powell's objections to the withholding of documents that

involve "active litigation" between Powell and OneBeacon are baseless because Powell

identifies the documents *en masse*, Powell's position contradicts one it took earlier as to these documents, and the burden is on Powell under these circumstances to show some identifiable benefit from itemizing these particular communications between their attorneys. (Doc. 104 at PAGEID#: 2158-2160, citing *Avis Rent A Car System, LLC*, 2013 WL 3781784, at *8).

> ### *i. Documents that do not list in-house counsel or outside counsel as an author or a recipient and for which the privilege summary lists litigation between Powell and OneBeacon*

Powell has clarified it is not challenging entries concerning litigation between Powell and OneBeacon that are described as pertaining to legal advice.[16] (Doc. 108 at PAGEID#: 2621, n.9 citing, e.g., H13251-0008-002080). Entry H13251-0008-002080 is an email and attachment authored by Michaud and sent to Elizabeth Sackett, former Resolute Associate General Counsel, concerning discovery production in the state court case between Powell and OneBeacon with the privilege summary description of "providing information for legal advice." This document, and others like it, need not be produced by OneBeacon.

To the extent Powell challenges OneBeacon's assertion of the attorney-client privilege or work product protection for documents that do not involve in-house counsel or outside counsel and for which the privilege summary lists litigation between Powell and OneBeacon without identifying the purpose of the communication, OneBeacon has failed to satisfy its burden to provide the requisite detail. OneBeacon asserts the attorney-client privilege and work product protection for a number of documents for which it provides a summary of the privilege that reads "concerning WPC v. OneBeacon ([case number])" and no description of the document. For example, entry H13251-0008-001857 is an email from Michaud to a Resolute employee that does not list a description of the email's subject and for which the only description provided in the privilege summary is "concerning WPC v. OneBeacon (A 1109350)." The nature and

---

[16] To the extent Powell does challenge these entries, it challenges them for reasons other than the deficient description of the documents. (Doc. 108 at PAGEID#: 2621, n.9).

purpose of this communication is not clear from the sparse information provided.  Further, the fact that OneBeacon has provided a more detailed summary for similar communications that specifies the purpose of the communication -- such as "providing legal advice" or "requesting legal advice" (documents which Powell does not challenge) -- raises questions about the purpose of those communications for which it has omitted this information.

OneBeacon has not adequately explained its failure to provide a description of the withheld communications.  Instead, OneBeacon notes that Powell's counsel stated at a prior conference with the Court that he did "not want Ms. Horacek's communication with Darilyn Michaud about this litigation" (Doc. 104 at PAGEID#: 2159, citing Sept. 22, 2016 Inf. Disc. Conf. Audio Recording at 1:38:38), which OneBeacon has construed to mean that Powell "was not seeking production of communications regarding the handling of the State Court Action or this action, and that no further detail about communications involving active litigation between the parties was required."  (Doc. 104 at PAGEID#: 2159).  While OneBeacon has accurately quoted Powell counsel's statement, counsel for Powell gave no indication that Powell was foregoing its right to more specific information on the privilege log with respect to any communications related to pending litigation.  To the contrary, counsel clarified that Powell wanted to discover communications between Michaud and counsel for OneBeacon about this litigation if there was a third party to the communication, as well as communications with counsel about the handling of underlying claims in other cases that predated the coverage determination under the *Boone* doctrine.  Therefore, OneBeacon is not entitled to withhold H13251-0008-001857 and like documents that do not involve in-house or outside counsel and that generally reference litigation between Powell and OneBeacon without providing the purpose of the communication, such as the provision of legal advice.

### *ii. Documents that list in-house counsel or outside counsel as an author or a recipient and for which the privilege summary lists litigation between Powell and OneBeacon*

OneBeacon contends that those communications it has withheld that relate to pending litigation carry indicia of privilege and the burden is on Powell to make a showing of "some identifiable benefit resulting from the considerable effort that would justify" requiring OneBeacon "to expend time and resources to itemize hundreds of communications *between their attorneys*, almost all of which occurred after" litigation between the parties commenced. (Doc. 104 at PAGEID#: 2159, citing *Avis Rent A Car System, LLC*, 2013 WL 3781784, at *8 (emphasis added)). The court in *Avis* observed that there are some circumstances where a nexus exists between the merits of a case and documents generated after the complaint has been filed that justifies a party's request for discovery of those documents; however, the defendant in the case before it had offered no connection between the breach of contract claim and counsel's post-complaint communications. *Id.*, at *8-9. Thus, the Court required the defendant to explain the relevance of the communications and provide a convincing rationale for why it was entitled to those communications. *Id.*

The Court is persuaded by the rationale of *Avis* to the extent Powell challenges the withholding of communications between in-house counsel or outside counsel that relate to pending cases between Powell and OneBeacon. OneBeacon is entitled to withhold communications between Resolute, OneBeacon and/or NICO employees and in-house counsel or outside counsel related to litigation between the parties (to the extent there is no waiver of the attorney-client privilege by disclosure to third parties or where the documents are subject to production under the *Boone* doctrine). The privilege log as to these entries provides sufficient indicia of privilege and information to enable the Court to conclude that the assertion of the attorney-client privilege or work product protection is satisfied. For example, Powell challenges

entry H1325-0004-001312 as deficient.  (Doc. 98, Exh. N, PAGEID#: 2058).  This entry is an excel spreadsheet authored by Michaud and is described as "Claimant Chart of settled claims prepared for coverage litigation to Richard Garner" [OneBeacon's outside counsel] "concerning coverage determination and concerning WPC v. OneBeacon (A 1109350)."  (Doc. 98, Exh. K, PAGEID#: 1890).  This description sufficiently apprises the Court that the communication was prepared for purposes of litigation between Powell and OneBeacon and transmitted to counsel for OneBeacon and is protected as work product.  Similarly, entry H13251-0008-001858 is an email from Resolute counsel to outside counsel Richard Garner on which Michaud and outside counsel or litigation support staff were copied "concerning WPC v. OneBeacon (A 1109350)."  (Doc. 98, Exh. K, PAGEID#: 1934).  Viewing the information provided in the privilege log for this entry in light of Powell's representation at the conference with the Court that Powell did not want communications between outside counsel and Michaud, the Court can find no basis for finding that this entry, and others like it, are not entitled to protection under the attorney-client privilege.  The Court can reasonably infer from the subject matter of the email (a pending lawsuit between the parties) and the participants (one of whom was an attorney who either prepared or received the communication) that the communication was made for the primary purpose of obtaining legal advice.  Likewise, Powell challenges entry H13251-0008-003008, which is an email chain from Resolute counsel John Matosky to Michaud and other Resolute employees "concerning WPC v. OneBeacon (C 1300681)" for which OneBeacon asserts protection under the attorney-client privilege and as work product.  (Doc. 98, Exh. K, PAGEID#: 1971).  Matosky testified that he is assigned to matters in active litigation to monitor and work with outside counsel.  (Doc. 98, Exh. 4- PAGEID#: 1841).  He was initially assigned responsibility for the state court declaratory judgment action by Powell against OneBeacon and testified that if a

request for a legal opinion is made with respect to the Powell account "it is almost certain to be assigned to me." (*Id.* at PAGEID#: 1842). He was also assigned responsibility for the instant federal action by Powell against OneBeacon and a separate state court action. (*Id.* at PAGEID#: 1843). He further testified that most of documents pertaining to the Powell account would be in email form, with the bulk of them from Michaud. (*Id.* at PAGEID#: 1844). Matosky also testified that he receives documents from outside counsel for Resolute regarding the Powell matter (*Id.* at PAGEID#: 1845) and communicates with others about the Powell litigations. (*Id.* at PAGEID#: 1846).[17] Given this testimony, the Court is persuaded that the privilege log entries involving communications by or to in-house counsel relating to active Powell litigation are protected by the asserted privilege or protection and need not be produced.[18]

### iii. Entry fails to identify the privilege

Powell identifies a single entry on the 140 page privilege log for which no privilege is identified. (Doc. 98, PAGEID#: 1605, citing Ex. K at 124 entry H13251-008-043298). This is clearly a typographical error. The letter "A" appears in the "Privilege Type" column, signifying the assertion of attorney-client privilege. The Court will not order production solely on the basis of a typographical error.

### b. Communications disclosed to third parties

Powell alleges that OneBeacon has improperly withheld "hundreds" of communications that are not protected by the attorney-client privilege because they were shared with third parties who do not appear to have an attorney-client relationship. (Doc. 98 at PAGEID#: 1607-08,

---

[17] Matosky also testified that he was asked to "weigh in on legal matters relating to [underlying asbestos litigation]." (*Id.* at PAGEID#: 1847). To the extent his communications on such underlying asbestos actions predated the coverage decision, the communications are discoverable under *Boone*.

[18] To the extent OneBeacon objects to the disclosure of emails between Matosky and Loxley from Armour on the basis of attorney-client privilege, OneBeacon has failed to show any attorney-client relationships between counsel for Resolute and Armour. Therefore, OneBeacon may not withhold such emails from disclosure.

citing Exh. O, OneBeacon privilege log legend). Powell alleges that OneBeacon has not carried

its burden to show that the attorney-client privilege was not waived as to (1) documents that it

shared with third parties who were not parties to the Joint Defense Agreement between

OneBeacon, Resolute and NICO, and (2) documents that were shared with parties to the Joint

Defense Agreement for reasons outside the scope of the agreement. (Doc. 98 at PAGEID#:

1608-09).

OneBeacon relies on the "functional employee" doctrine, the "common interest doctrine,"

and the Joint Defense Agreement to contend it did not waive any attorney-client privilege and

work product protection by disclosing documents to its "agents and contractual partners." (*Id*. at

PAGEID#: 2160-2162). OneBeacon alleges that it has pled and documented "special

relationships" between NICO, Resolute and itself. (*Id*. at PAGEID#: 2161). OneBeacon further

alleges that Armour and Trebuchet and other unnamed entities "occupy the same role" as NICO

and Resolute. (*Id*.). OneBeacon alleges that Powell should not be allowed to challenge the

communications with third parties as a whole rather than address them individually.

Powell alleges that it has recognized that OneBeacon executed a Joint Defense

Agreement with Resolute and NICO on December 3, 2014. (Doc. 108 at PAGEID#: 2623, n.10,

citing Doc. 98 at PAGEID#: 1608-09). Powell does not challenge privileges OneBeacon has

asserted as to communications exclusively between OneBeacon, Resolute, and NICO. (*Id*.).

However, Powell contends that OneBeacon has not satisfied its burden to show that the attorney-

client privilege was not waived as to communications that were disclosed to Berkshire

Hathaway, Inc., Armour Risk Management, Ltd., National Union Fire Insurance Company,

Continental Casualty Insurance Company, Trebuchet U.S. Holdings, Inc., Berkshire Reinsurance

Group, Charles Wagner, and the information technology service providers listed on the privilege log. (*Id.*). Powell argues that these communications must be produced.

A party may waive the attorney-client privilege by communicating information to a third party. *Travelers Cas. and Sur. Co.*, 197 F.R.D. at 606 (citing *State v. Post*, 513 N.E.2d 754 (Ohio 1987)). However, the "common interest doctrine" on which OneBeacon relies is recognized under Ohio law and is an exception to the waiver doctrine. *Avis Rent A Car System, LLC*, 2013 WL 3781784, at *3 (citing *State ex rel. Bardwell v. Ohio Atty. Gen.*, 910 N.E.2d 504 ¶¶ 87-88 (Ohio App. 10th Dist. 2009) ("expanding the attorney-client privilege, through application of the common interest doctrine, to allow the redaction of an email containing communications between two attorneys general discussing an interstate student loan investigation"). As the Court in *Avis Rent A Car System* explained, the common interest doctrine "typically arises in the context of litigation when two parties are either represented by the same attorney or are independently represented but have the same goal in the litigation. Under those circumstances, they may freely share otherwise privileged communications without waiving the [attorney-client] privilege." *Id.* (quoting *Fresenius Medical Care Holdings, Inc. v. Roxana Lab., Inc.*, No. 2:05-cv-0889, 2007 WL 895059 at *2 (S.D. Ohio Mar. 21, 2007)).

As Powell does not challenge OneBeacon's assertion of the attorney-client privilege as to communications shared exclusively with Resolute and NICO, there is no dispute that OneBeacon did not waive the privilege as to those communications. OneBeacon has not carried its burden to show that it is entitled to assert an attorney-client privilege as to communications disclosed to any other third parties. *Id.*, at *8 (quoting *In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 450 (6th Cir. 1983) ("The burden of establishing privilege rests with the person asserting it."). OneBeacon has not submitted any evidence to demonstrate the existence of a relationship

between OneBeacon and any of the other entities that would give rise to a common interest and entitle the parties to share attorney communications without waiving the attorney-client privilege. OneBeacon's unsupported and conclusory assertions as to the functions of Armour and Trebuchet and "other entities" to whom communications have been disclosed do not suffice. (*See* Doc. 104 at PAGEID#: 2161-62). OneBeacon has waived the attorney-client privilege for documents on the privilege log that were disclosed to third parties other than NICO and Resolute, and OneBeacon must produce those documents.

## V. OneBeacon's motion for protective order/sanctions (Doc. 111)

OneBeacon has filed a motion for a protective order and sanctions that is a duplicate of its memorandum in opposition to Powell's motion to compel and for sanctions. (Doc. 106). OneBeacon moves for a protective order against Powell pursuant to Fed. R. Civ. P. 26(c) because "counsel for OneBeacon have worked and conferred with WPC for months to resolve this discovery dispute - to no avail." *Id.* at PAGEID#: 2567. OneBeacon alleges that Powell's discovery approach should be rejected because it is not proportional to the needs of this case, and OneBeacon's protective order should be granted. (*Id.*). OneBeacon alleges that "this Court may well find that OneBeacon is entitled to sanctions against [Powell] for failing to act in good faith during the discovery process." (*Id.*). OneBeacon does not further address its sanctions request in its motion.

Fed. R. Civ. P. 26 authorizes a protective order limiting discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "The burden of establishing good cause for a protective order rests with the movant." *Smith v. Gen. Mills, Inc*., No. 2:04-cv-705, 2006 WL 7276959, at *2 (S.D. Ohio Apr. 13, 2006) (quoting *Nix*, 11 F. App'x at 500). "To show good cause, a movant for a protective

order must articulate specific facts showing a 'clearly defined and serious injury' resulting from the discovery sought and cannot rely on mere conclusory statements." *Id*. (quoting *Nix*, 11 F. App'x at 500). *See also Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540, 550 (6th Cir. 2004) (holding that to justify a protective order, one of Rule 26(c)(1)'s listed harms "must be illustrated with 'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements'") (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981)).

OneBeacon has not met its burden of establishing good cause for a protective order. OneBeacon's motion is supported by nothing more than conclusory assertions. The Court has found that Powell has substantiated the need for additional discovery through affidavits and deposition testimony, and OneBeacon has failed to provide the necessary information on its privilege log to show it is entitle to withhold many of the documents as to which Powell has challenged the claim of privilege. Further, OneBeacon has not alleged any facts or cited authority to demonstrate it is entitled to an award of sanctions under Fed. R. Civ. P. 37. The Court will therefore deny OneBeacon's motion for a protective order and sanctions.

## VI. Powell's request for its reasonable expense in making the motion

Powell moves the Court for an award of its attorney fees and expenses under Fed. R. Civ. P. 37(b)(2), which provides as follows:

> (A) *For Not Obeying a Discovery Order*. If a party . . . fails to obey an order to provide or permit discovery . . ., the court where the action is pending may issue further just orders. They may include the following:
> . . . .
>
> (C) *Payment of Expenses*. Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b)(2)(A), (C). (Doc. 98 at PAGEID#:1611-13).

Powell alleges that OneBeacon violated the Court's Order to complete its document production by August 19, 2016. (Doc. 98 at PAGEID#:1612, citing Doc. 97, August 2, 2016 Hrg. Tr. at 7; August 2, 2016 Docket Entry). Powell asserts it is undisputed that OneBeacon belatedly produced discovery following the deadline established by the Court consisting of: approximately 96,000 pages of Michaud documents produced on August 24, 2016; approximately 24,000 more pages of Michaud documents produced on September 15, 2016; an unspecified number of Loxley documents produced on November 11, 2016; the Gaines' desk file produced on December 16, 2016; and approximately 7,400 pages of Ryan and Green documents produced on four dates in December, 2016. (*Id*. at PAGEID#: 1612). Powell alleges that counsel's reasonable investigation would have disclosed the existence of these documents and that there are more outstanding documents to be collected. (*Id*. at PAGEID#: 1613). Powell alleges that OneBeacon's failure to timely complete its document production has caused Powell to incur unnecessary expenses to prepare for and attend several court hearings and conferences, obtain affidavit testimony, take depositions, and file this motion. (*Id*.).

In response, OneBeacon alleges that all of its actions have been "substantially justified" and that any award of sanctions would be unjust. (Doc. 104 at PAGEID#: 2141). OneBeacon contends that sanctions are not warranted because it has cooperated with Powell during the discovery process and the parties have worked under the Court's direction to resolve disagreements informally rather than by filing motions to compel.

Powell's request for an award of sanctions under Rule 37(b) is denied. While Powell has clearly been frustrated with the pace of OneBeacon's document production, the history of the discovery proceedings demonstrates that OneBeacon has not refused to abide by a Court Order or to permit discovery in the matter. Rather, OneBeacon has continued to cooperate in the

discovery process throughout the course of these proceedings. As Powell's summary of OneBeacon's document production shows, OneBeacon provided the bulk of the documents the Court ordered it to produce by August 19, 2016, within one month of that deadline and approximately four months before Powell filed its motion to compel. Although OneBeacon objected to a number of document requests made by Powell, OneBeacon continued to cooperate with Powell and the Court over the ensuing months to provide outstanding discovery and resolve areas of dispute extrajudicially or with the Court's guidance through the informal discovery process. As of the date of the last informal discovery conference at which Powell stated its intention to file a motion to compel, all extrajudicial means of resolving any remaining areas of dispute had not been exhausted. To the contrary, OneBeacon was continuing to provide documents in response to Powell's requests, and it did not appear that the parties had reached an impasse as to any outstanding discovery issues. The circumstances therefore make an award of sanctions under Fed. R. Civ. P. 37(b) unjust. *See* Fed. R. Civ. P. 37(b)(2)(C).

### IT IS THEREFORE ORDERED THAT:

1. Plaintiff Powell's motion to compel and for sanctions (Doc. 98) is **GRANTED** in part in accordance with the terms of the Court's analysis. OneBeacon is **ORDERED** to produce, within **thirty (30) days** of the date of this Order, the following information:

  i. Monthly emails Graham Loxley receives that contain financial data concerning Powell's account and emails between Loxley and Resolute employees concerning quarterly meetings.

  ii. Responsive, nonduplicative documents from the following custodians whose documents have not been searched: Clayton Budlong, Gregory Gaines, David Gold, and Peter Dinunzio.

  iii. Communications and other documents that relate to Powell's account generally that have not been produced, including documents from Darilyn Michaud, Tom Ryan, and Brooke Green.

iv.     Communications/documents described in Exhibit Q that either predate the decision to deny coverage or were created on the date coverage was denied.

v.      Communications listed on the privilege log for which OneBeacon has asserted an attorney-client privilege but which have been disclosed to third parties other than Resolute and NICO.

2.  OneBeacon is **ORDERED** to either revise the privilege log to correct the following deficiencies or produce the improperly withheld documents within **thirty (30) days** of the date of the Order:

i.  The privilege log must identify the authors of documents for which the entry lists the author as "Not Available" and for which OneBeacon has asserted work product protection and, in one instance, an attorney-client privilege, and provide sufficient additional information to show the documents qualify for the protection or privilege asserted.

ii.  OneBeacon must identify in the privilege log legend any individuals whose names appear in the privilege log but who are not included in the legend.

iii.  The privilege log must identify the recipients of email documents for entries listed on the log at pages one through six for which OneBeacon has asserted an attorney-client privilege or work product protection, with the exception of documents authored by OneBeacon outside counsel Richard Garner discussed at page 47, *supra*, and provide sufficient additional information to show the documents qualify for the protection or privilege asserted.

iv.  The privilege log must identify the recipients of non-email entries related to excel spread sheets that are listed on the log at pages one through six for which OneBeacon has asserted work product protection or an attorney-client privilege and provide sufficient additional information to show these documents qualify for the protection or privilege asserted.

v.  The privilege log must specify the purpose of communications for which the entry (1) does not list in-house counsel or outside counsel as an author or a recipient, and (2) only generally references litigation between Powell and OneBeacon.

3.  Powell's motion for sanctions is **DENIED**.

4. OneBeacon's motion for protective order and for sanctions (Doc. 106) is **DENIED**.

5. OneBeacon's motion to certify question to the Ohio Supreme Court (Doc. 112) is

**DENIED**.


Date:  4/11/2017                                           *s/Karen L. Litkovitz*
                                                         Karen L. Litkovitz
                                                         United States Magistrate Judge